**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

————————————————————   x

Natalie Orrico, individually and on behalf of all          :
others similarly situated,                                             :
                                                                                   :          Case No.
                                  Plaintiff,                                  :
v.                                                                                 :
                                                                                   :
                                                                                   :
 Nordic Naturals, Inc.                                              :          **CLASS ACTION COMPLAINT**
                                                                                   :
                                                                                   :          **JURY TRIAL DEMANDED**
                                  Defendant.                             :
                                                                                   :
                                                                                   :
————————————————————   x

Plaintiff, Natalie Orrico (hereinafter "Plaintiff"), individually and on behalf of all others similarly situated, by her attorneys, alleges the following upon information and belief, except for those allegations pertaining to Plaintiff, which are based on personal knowledge:

**NATURE OF THE ACTION**

1.     This action seeks to remedy the deceptive and misleading business practices of Nordic Naturals, Inc. (hereinafter "Defendant") with respect to the marketing and sales of Defendant's Nordic Naturals' products throughout the state of New York and throughout the country.  Nordic Naturals products include the following (hereinafter the "Products"):

- Nordic Naturals Nordic Omega-3 Gummies;

- Nordic Naturals Omega Blood Sugar;

- Nordic Naturals Omega Vision;

- Nordic Naturals Zero Sugar Vitamin D3 Gummies;

1

- Nordic Naturals Vitamin D3 Gummies Sport;

- Nordic Naturals Vitamin A + Carotenoids;

- Nordic Naturals Multi Minerals;

- Nordic Naturals Multi Minerals Without Iron & Copper;

- Nordic Naturals Omega Joint Xtra;

- Nordic Naturals Omega Memory with Curcumin;

- Nordic Naturals Omega Woman with Evening Primrose Oil;

- Nordic Naturals Vitamin C Gummies;

- Nordic Naturals Vitamin E Complex;

- Nordic Naturals Children's DHA;

- Nordic Naturals Kids Nordic Flora Probiotic Pixies;

- Nordic Naturals Nordic Omega-3 Gummy Worms;

- Nordic Naturals Ultimate Omega-D3 Sport;

- Nordic Naturals Arctic Cod Liver Oil;

- Nordic Naturals Nordic Flora Probiotic Comfort;

- Nordic Naturals Nordic Omega-3 Gummy Fish;

- Nordic Naturals Vitamin D3+K2 Gummies;

- Nordic Naturals Complete Omega-D3;

- Nordic Naturals EPA;

- Nordic Naturals Omega ONE;

- Nordic Naturals Ultimate Omega;

2

- Nordic Naturals Ultimate Omega 2X;

- Nordic Naturals Omega Focus Jr.;

- Nordic Naturals Ultimate Omega Sport 2X;

- Nordic Naturals Ultimate Omega 2x Mini;

- Nordic Naturals Algae DHA;

- Nordic Naturals Omega LDL;

- Nordic Naturals Ultimate Omega Jr.;

- Nordic Naturals Nordic Beauty Omega-3 + Borage Oil;

- Nordic Naturals Ultimate Omega + CoQ10;

- Nordic Naturals EPA Xtra;

- Nordic Naturals Nordic CoQ10 Ubiquinol Sport;

- Nordic Naturals DHA Xtra;

- Nordic Naturals Nordic CoQ10 Ubiquinol;

- Nordic Naturals Children's DHA Gummies;

- Nordic Naturals Algae Omega;

- Nordic Naturals Prenatal DHA;

- Nordic Naturals Prenatal DHA;

- Nordic Naturals COQ10 Gummies;

- Nordic Naturals Omega Focus;

- Nordic Naturals Magnesium Complex;

- Nordic Naturals Postnatal Omega-3;

3

- Nordic Naturals DHA;

- Nordic Naturals Nordic Flora Probiotic Daily;

- Nordic Naturals Omega-3;

- Nordic Naturals Zero Sugar Kids Multi Gummies;

- Nordic Naturals Ultimate Omega 2X Mini;

- Nordic Naturals Vitamin B Complex;

- Nordic Naturals Children's DHA Xtra;

- Nordic Naturals Vitamin D3 1000;

- Nordic Naturals Ultimate Omega 2X;

- Nordic Naturals Complete Omega Xtra;

- Nordic Naturals Ultimate Omega-D3;

- Nordic Naturals Nordic Berries Original Flavor Multivitamin Gummies for Adults & Kids Alike;

- Nordic Naturals Zero Sugar Melatonin Gummies;

- Nordic Naturals Complete Omega;

- Nordic Naturals Kids Nordic Flora Probiotic Gummies with Prebiotics;

- Nordic Naturals Vitamin D3 Gummies Kids;

- Nordic Naturals Complete Omega Jr.;

- Nordic Naturals Nordic Omega-3 Fishies;

- Nordic Naturals Ultimate Omega 2X Teen;

- Nordic Naturals Children's Eye Health Gummies;

4

- Nordic Naturals Ultimate Omega Xtra;

- Nordic Naturals Vitamin D3 5000;

- Nordic Naturals Omega-3D;

- Nordic Naturals Vitamin D3 Gummies;

- Nordic Naturals Omega Curcumin;

- Nordic Naturals Zero Sugar Curcumin Gummies;

- Nordic Naturals Nordic Immune Daily Defense.

2.      Defendant manufactures, sells, and distributes the Products using a marketing and advertising campaign centered around claims that appeal to health-conscious consumers, i.e., that its Products are "Natural;" however, Defendant's advertising and marketing campaign is false, deceptive, and misleading because the Products contain non-natural, synthetic ingredients.

3.      Plaintiff and those similarly situated ("Class Members") relied on Defendant's misrepresentations that the Products are "Natural" when purchasing the Products.  Plaintiff and Class Members paid a premium for the Products based upon their "Natural" representation.  Given that Plaintiff and Class Members paid a premium for the Products based on Defendant's misrepresentations that they are natural, Plaintiff and Class Members suffered an injury in the amount of the premium paid.

4.      Defendant's conduct violated and continues to violate, *inter alia*, New York General Business Law §§ 349 and 350.  Defendant breached and continues to breach its warranties regarding the Products.  Accordingly, Plaintiff brings this action against Defendant on behalf of

herself and Class Members who purchased the Products during the applicable statute of limitations period (the "Class Period").

## **FACTUAL BACKGROUND**

5.      Consumers have become increasingly concerned about the effects of synthetic and chemical ingredients in food, cleaning products, bath and beauty products and everyday household products.  Companies such as Defendant have capitalized on consumers' desire for purportedly "natural products."  Indeed, consumers are willing to pay, and have paid, a premium for products branded "natural" over products that contain synthetic ingredients.   In 2015, sales of natural products grew 9.5% to $180 billion.[1]  Reasonable consumers, including Plaintiff and Class Members, value natural products for important reasons, including the belief that they are safer and healthier than alternative products that are not represented as natural.

6.      Despite the Products containing a number of synthetic ingredients, Defendant markets the Products as "Natural."  The Products' labeling is depicted below:

---

[1] *Natural Products Industry Sales up 9.5% to $180bn Says NBJ,* FOOD NAVIGATOR, http://www.foodnavigator-usa.com/Markets/EXPO-WEST-trendspotting-organics-natural-claims/(page)/6; *see also*  Shoshanna Delventhal, *Study Shows Surge in Demand for "Natural" Products*, INVESTOPEDIA (February 22, 2017), http://www.investopedia.com/articles/investing/022217/study-shows-surge-demand-natural-products.asp (Study by Kline Research indicated that in 2016, the personal care market reached 9% growth in the U.S. and 8% in the U.K. The trend-driven natural and organic personal care industry is on track to be worth $25.1 million by 2025); *Natural living: The next frontier for growth? [NEXT Forecast 2017]*, NEW HOPE NTWORK (December 20, 2016), http://www.newhope.com/beauty-and-lifestyle/natural-living-next-frontier-growth-next-forecast-2017.

**Nordic Naturals Nordic Omega-3 Gummies**



**Synthetic Ingredients:**

Bovine Gelatin
Citric Acid
Pectin
Sodium Citrate

**Nordic Naturals Omega Blood Sugar**



**Synthetic Ingredients:**

Gelatin
Glycerin

**Nordic Naturals Omega Vision**



**Synthetic Ingredients:**

Gelatin
Glycerin

**Nordic Naturals Zero Sugar Vitamin D3 Gummies**



**Synthetic Ingredients:**

Pectin
Citric Acid
Sodium Citrate Dihydrate

10

**Nordic Naturals Vitamin D3 Gummies Sport**



**Synthetic Ingredients:**

Pectin
Citric Acid
Sodium Citrate Dihydrate

11

**Nordic Naturals Vitamin A + Carotenoids**



**Synthetic Ingredients:**

Vitamin A (as Beta-Carotene)
Gelatin
Glycerin

12

**Nordic Naturals Multi Minerals**



**Synthetic Ingredients:**

Potassium (as Potassium Chloride)
Microcrystalline Cellulose
Silica

**Nordic Naturals Multi Minerals Without Iron & Copper**



**Synthetic Ingredients:**

Potassium (as Potassium Chloride)
Microcrystalline Cellulose
Silica

**Nordic Naturals Omega Joint Xtra**



**Synthetic Ingredients:**

Gelatin
Glycerin
Potassium Chloride

**Nordic Naturals Omega Memory with Curcumin**



**Synthetic Ingredients:**

Gelatin
Glycerin
Stearic Acid
Soy Lecithin
Maltodextrin

**Nordic Naturals Omega Woman with Evening Primrose Oil**



**Synthetic Ingredients:**

Gelatin
Glycerin

**Nordic Naturals Vitamin C Gummies**



**Synthetic Ingredients:**

Vitamin C (as Ascorbic Acid)
Pectin
Sodium Citrate

18

**Nordic Naturals Vitamin E Complex**



**Synthetic Ingredients:**

Gelatin
Glycerin

**Nordic Naturals Children's DHA**



**Synthetic Ingredients:**

Gelatin
Glycerin

**Nordic Naturals Kids Nordic Flora Probiotic Pixies**



**Synthetic Ingredients:**

Xylitol
Citric Acid
Silicon Dioxide

21

**Nordic Naturals Nordic Omega-3 Gummy Worms**



**Synthetic Ingredients:**

Porcine Gelatin
Citric Acid
Pectin
Sodium Citrate

**Nordic Naturals Ultimate Omega-D3 Sport**



**Synthetic Ingredients:**

Gelatin
Glycerin

**Nordic Naturals Arctic Cod Liver Oil**



**Synthetic Ingredients:**

Gelatin
Glycerin

**Nordic Naturals Nordic Flora Probiotic Comfort**



**Synthetic Ingredients:**

Microcrystalline Cellulose
Magnesium Stearate
Silica

**Nordic Naturals Nordic Omega-3 Gummy Fish**



**Synthetic Ingredients:**

Bovine Gelatin
Citric Acid
Pectin
Sodium Citrate

26

**Nordic Naturals Vitamin D3+K2 Gummies**



**Synthetic Ingredients:**

Pectin
Citric Acid
Sodium Citrate

27

**Nordic Naturals Complete Omega-D3**



**Synthetic Ingredients:**

Pectin
Citric Acid
Sodium Citrate

**Nordic Naturals EPA**



**Synthetic Ingredients:**

Gelatin
Glycerin

**Nordic Naturals Omega ONE**



**Synthetic Ingredients:**

Gelatin
Glycerin

30

**Nordic Naturals Ultimate Omega**



**Synthetic Ingredients:**

Gelatin
Glycerin

**Nordic Naturals Ultimate Omega 2X**



**Synthetic Ingredients:**

Gelatin
Glycerin

**Nordic Naturals Omega Focus Jr.**



**Synthetic Ingredients:**

Fish Gelatin
Glycerin

**Nordic Naturals Ultimate Omega Sport 2X**



**Synthetic Ingredients:**

Gelatin
Glycerin

**Nordic Naturals Ultimate Omega 2x Mini**



**Synthetic Ingredients:**

Gelatin
Glycerin

**Nordic Naturals Algae DHA**



**Synthetic Ingredients:**

Glycerin
Sorbitol

36

**Nordic Naturals Omega LDL**



**Synthetic Ingredients:**

Gelatin
Glycerin

**Nordic Naturals Ultimate Omega Jr.**



**Synthetic Ingredients:**

Gelatin
Glycerin

**Nordic Naturals Nordic Beauty Omega-3 + Borage Oil**



**Synthetic Ingredients:**

Gelatin
Glycerin

**Nordic Naturals Ultimate Omega + CoQ10**



**Synthetic Ingredients:**

Gelatin
Glycerin

**Nordic Naturals EPA Xtra**



**Synthetic Ingredients:**

Gelatin
Glycerin

**Nordic Naturals Nordic CoQ10 Ubiquinol Sport**



**Synthetic Ingredients:**

Gelatin
Glycerin

**Nordic Naturals DHA Xtra**



**Synthetic Ingredients:**

Gelatin
Glycerin

**Nordic Naturals Nordic CoQ10 Ubiquinol**



**Synthetic Ingredients:**

Gelatin
Glycerin

**Nordic Naturals Children's DHA Gummies**



**Synthetic Ingredients:**

Xylitol
Sorbitol
Gelatin
Sodium Citrate
Malic Acid

45

**Nordic Naturals Algae Omega**



**Synthetic Ingredients:**

Glycerin
Sorbitol

**Nordic Naturals Prenatal DHA**



**Synthetic Ingredients:**

Gelatin
Glycerin

**Nordic Naturals Prenatal DHA**



**Synthetic Ingredients:**

Glycerin
Sorbitol

48

**Nordic Naturals COQ10 Gummies**



**Synthetic Ingredients:**

Pectin
Citric Acid
Sodium Citrate Dihydrate
Organic Maltodextrin

**Nordic Naturals Omega Focus**



**Synthetic Ingredients:**

Gelatin
Glycerin

**Nordic Naturals Magnesium Complex**



**Synthetic Ingredients:**

Citric Acid
Magnesium Stearate
Microcrystalline Cellulose
Silica

**Nordic Naturals Postnatal Omega-3**



**Synthetic Ingredients:**

Gelatin
Glycerin

**Nordic Naturals DHA**



**Synthetic Ingredients:**

Gelatin
Glycerin

**Nordic Naturals Nordic Flora Probiotic Daily**



**Synthetic Ingredients:**

Microcrystalline Cellulose
Silica

**Nordic Naturals Omega-3**



**Synthetic Ingredients:**

Gelatin
Glycerin

**Nordic Naturals Zero Sugar Kids Multi Gummies**



**Synthetic Ingredients:**

Vitamin A (as Beta-Carotene)
Vitamin C (as Ascorbic Acid)
Thiamin (as Thiamin Mononitrate)
Riboflavin
Folic Acid
Pectin
Citric Acid
Sodium Citrate

56

**Nordic Naturals Ultimate Omega 2X Mini**



**Synthetic Ingredients:**

Gelatin
Glycerin

**Nordic Naturals Vitamin B Complex**



**Synthetic Ingredients:**

Thiamine (as Thiamine Mononitrate)
Riboflavin
Niacin
Microcrystalline Cellulose
Silica
Magnesium Stearate

**Nordic Naturals Children's DHA Xtra**



**Synthetic Ingredients:**

Gelatin
Glycerin
Xylitol

**Nordic Naturals Vitamin D3 1000**



**Synthetic Ingredients:**

Gelatin
Glycerin

**Nordic Naturals Ultimate Omega 2X**



**Synthetic Ingredients:**

Gelatin
Glycerin

**Nordic Naturals Complete Omega Xtra**



**Synthetic Ingredients:**

Gelatin
Glycerin

**Nordic Naturals Ultimate Omega-D3**



**Synthetic Ingredients:**

Gelatin
Glycerin

**Nordic Naturals Nordic Berries Original Flavor Multivitamin Gummies for Adults & Kids Alike**



**Synthetic Ingredients:**

Vitamin A (as Beta-Carotene)
Vitamin C (as Ascorbic Acid)
Thiamin
Riboflavin
Folic Acid
Pectin
Citric Acid
Sodium Citrate

**Nordic Naturals Zero Sugar Melatonin Gummies**



**Synthetic Ingredients:**

Pectin
Citric Acid
Sodium Citrate Dihydrate

**Nordic Naturals Complete Omega**



**Synthetic Ingredients:**

Gelatin
Glycerin

**Nordic Naturals Kids Nordic Flora Probiotic Gummies with Prebiotics**



**Synthetic Ingredients:**

Pectin
Citric Acid
Sodium Citrate Dihydrate

**Nordic Naturals Vitamin D3 Gummies Kids**



**Synthetic Ingredients:**

Pectin
Citric Acid
Sodium Citrate Dihydrate

68

**Nordic Naturals Complete Omega Jr.**



**Synthetic Ingredients:**

Gelatin
Glycerin

**Nordic Naturals Nordic Omega-3 Fishies**



**Synthetic Ingredients:**

Xylitol
Sorbitol
Gelatin
Citric Acid
Trisodium Citrate

**Nordic Naturals Ultimate Omega 2X Teen**



**Synthetic Ingredients:**

Gelatin
Glycerin

**Nordic Naturals Children's Eye Health Gummies**



**Synthetic Ingredients:**

Xylitol
Sorbitol
Gelatin
Sodium Citrate
Malic Acid

72

**Nordic Naturals Ultimate Omega Xtra**



**Synthetic Ingredients:**

Gelatin
Glycerin

**Nordic Naturals Vitamin D3 5000**



**Synthetic Ingredients:**

Gelatin
Glycerin

**Nordic Naturals Omega-3D**



**Synthetic Ingredients:**

Gelatin
Glycerin

**Nordic Naturals Vitamin D3 Gummies**



**Synthetic Ingredients:**

Pectin
Citric Acid
Sodium Citrate Dihydrate

**Nordic Naturals Omega Curcumin**



**Synthetic Ingredients:**

Gelatin
Glycerin
Stearic Acid
Soy Lecithin
Maltodextrin

77

**Nordic Naturals Zero Sugar Curcumin Gummies**



**Synthetic Ingredients:**

Citric Acid
Stearic Acid
Pectin
Soy Lecithin
Maltodextrin
Sodium Citrate

78

**Nordic Naturals Nordic Immune Daily Defense**



**Synthetic Ingredients:**

Vitamin C (as Ascorbic Acid)
Gelatin
Glycerin
Organic Maltodextrin

7.    Defendant's representations that the Products are natural, are false, misleading, and deceptive because the Products contain multiple ingredients that are, as explained below, synthetic.

**a.   Gelatin** is a synthetic ingredient that is commercially processed using hydrolysis. See 9 C.F.R. §94.20.

**b.   Soy Lecithin** is a phospholipid that is widely used as an emulsifier in food industries.  Soy lecithin comprises of phosphatidylcholine, phosphatidylethanolamine, phosphatidylinositol, phosphatidic acid, other minor phospholipids, glycolipid, and neutral lipids.[2]  It is derived from GMO's and/or GE seeds in which DNA splicing has been used to place genes from another source into a plant.  Soy lecithin is heavily processed to remove the natural bean flavor so that the finished "soy" product no longer tastes like soy.  The soy is further refined through unnatural processes using chemical additives.  Soy lecithin is commonly refined through the use of a volatile, synthetic solvent called hexane, which is processed from petroleum.  *See* 40 C.F.R. 799.2155.

**c.   Maltodextrin** is recognized as a synthetic by federal regulations.  Maltodextrin is a saccharide polymer that is prepared as a white powder or concentrated solution by partial hydrolysis of corn starch, potato starch, or rice starch using acids and enzymes.  (72 Fed. Reg. 62149, 62166 (proposed Nov. 2, 2007); 21 C.F.R. § 184.1444).  Maltodextrin is primarily used as a carrier or bulking agent.  It is a synthetic factory-produced texturizer that is created by complex processing that

---

[2] http://www.davidpublishing.com/davidpublishing/Upfile/3/4/2013/2013030471047201.pdf

does not occur in nature.  To produce maltodextrin, acids and/or enzymes are applied in sequence to a starch to produce partial hydrolysis (saccharification). The acids or enzymes convert or depolymerize starch to glucose or maltose molecules.  Once maltose is high enough for maltodextrin, the acids or enzymes are neutralized, removed, or deactivated.  (57 Fed. Reg. 23989 (proposed June 5, 1992)).  *See also Maltodextrins*, GMO COMPASS, Dec. 10, 2008, available at http://www.gmo-compass.org/eng/database/ingredients/148.maltodextrins.html

d.  **Ascorbic Acid** is a chemical preservative and is synthetic.  *See* 21 C.F.R. § 182.3013.

e.  **Betacarotene** (CAS Reg. No. 7235-40-7) has the molecular formula C40H56. It is synthesized by saponification of vitamin A acetate.  The resulting alcohol is either reacted to form vitamin A Wittig reagent or oxidized to vitamin A aldehyde.  Vitamin A Wittig reagent and vitamin A aldehyde are reacted together to form betacarotene.  *See* 21 C.F.R. § 184.1245.

f.  **Riboflavin** (C17H20N4O6, CAS Reg. No. 83885) occurs as yellow to orange yellow needles that are crystallized from 2N acetic acid, alcohol, water, or pyridine.  It may be prepared by chemical synthesis, biosynthetically by the organism Eremothecium ashbyii, or isolated from natural sources.  21CFR § 184.1695.  Further, as set forth in 21 CFR § 73.450, riboflavin is a color additive. Riboflavin is synthetic.

g. **Niacin** (C6H5NO2, CAS Reg. No. 59-67-6) is the chemical 3-pyridinecarboxylic acid (nicotinic acid).  It is a non-hygroscopic, stable, white, crystalline solid that sublimes without decomposition at about 230 deg. C.  It is soluble in water and alcohol.  It is insoluble in ether.   21CFR § 184.1530.  Niacin is synthetic.

h. **Thiamine Mononitrate** (C12H17N5O4S, CAS Reg. No. 532-43-4) is the mononitrate salt of thiamine.  It occurs as white crystals or a white crystalline powder and is prepared from thiamine hydrochloride by dissolving the hydrochloride salt in alkaline solution followed by precipitation of the nitrate half-salt with a stoichiometric amount of nitric acid." (21 C.F.R. § 184.1878). Thiamine mononitrate is synthetic, and is chemically distinct from thiamine.  (47 Fed. Reg. 47438; 21 C.F.R. § 184.1878).  The amount of nitrates added to processed and preserved foods over the past several decades has exponentially increased.  The nitrates present in thiamine mononitrate can cause health problems.  "Exposure to higher levels of nitrates or nitrites has been associated with increased incidence of cancer in adults, and possible increased incidence of brain tumors, leukemia, and nasopharyngeal (nose and throat) tumors in children[.]"  (internal citations omitted).  Some studies have linked nitrate exposure in children to increased incidence of childhood diabetes, recurrent diarrhea, and recurrent respiratory tract infections.  (*Id*. at 3)**.**  Other reported effects of chronic exposure reported in adults include frequent urination and spleen hemorrhaging.  (*Id*. at 3).  "Health effects that were significantly associated

with nitrate or nitrite exposure during pregnancy include increased incidence of intrauterine growth retardation, cardiac defects, central nervous system defects, Sudden Infant Death Syndrome (SIDS), and miscarriage." (*Id*. at 4 (internal citations omitted)). Research has also connected the increased use of nitrates and nitrites in western societies with increased rates of cognitive impairment, Alzheimer's disease, and brain insulin resistance.

i. **Microcrystalline Cellulose** is a chemically modified form of naturally occurring cellulose. The hydrolysis process breaks the beta -1,4 glycosidic bonds causing a complete structural and functional change from its native form. Therefore, it is classified as a synthetic additive.[3]

j. **Citric Acid** is (2-hydroxy-propane-1, 2,3-tricarboxylic acid) is a synthetic substance. While the chemical's name has the word "citric" in it, citric acid is no longer extracted from the citrus fruit but industrially manufactured by fermenting certain genetically mutant strains of the black mold fungus, *Aspergillus niger*.

k. **Pectin (Trisodium Citrate)** is the sodium salt of citric acid synthesized by reacting sodium carbonate with citric acid, and is often used as an anticoagulant or blood thinner. It is a recognized synthetic chemical under federal regulations. *See* 7 C.F.R. §205.605(b). It is sometimes used in food as a preservative or to provide a tart flavor in drinks and sauces.

---

[3] https://foodadditives.net/anticaking-agent/microcrystalline-cellulose/

l.  **Sodium Citrate** is the sodium salt of citric acid synthesized by reacting sodium carbonate with citric acid, and is often used as an anticoagulant or blood thinner. It is a recognized synthetic chemical under federal regulations. *See* 7 C.F.R. §205.605(b).

m.  **Folic Acid** is the chemical N -[4-<(2-amino-1,4-dihydro-4-oxo-6-pteridinyl)methyl]amino]benzoyl]-L -glutamic acid.  21CFR172.345.  Folic acid is synthetic.

n.  **Silica** is also known as Silicon Dioxide and is an anticaking agent. *See* 21 C.F.R. §172.480.

o.  **Potassium Chloride** is a white, odorless solid prepared from source minerals by fractional crystallization or flotation.  It is soluble in water and glycerol and has a saline taste at low concentration levels.  *See* 21 C.F.R. § 184.1622.

p.  **Stearic Acid** is a mixture of variable proportions of glyceryl monostearate, glyceryl monopalmitate, and glyceryl esters of fatty acids present in commercial stearic acid.  It is recognized by federal regulations as synthetic.  *See* 7 C.F.R. § 205.605(b).

q.  **Silicon Dioxide** is an anticaking agent.  *See* 21 C.F.R. § 172.480.

r.  **Sorbitol** is a type of sugar alcohol used as a thickener and a skin conditioning agent.[4]

---

[4] http://www.ewg.org/skindeep/ingredient/706239/SORBITOL/

s.  **Malic Acid** is the common name for 1-hydroxy-1, 2-ethanedicarboxylic acid. L

(+) malic acid, referred to as L-malic acid, occurs naturally in various foods.

Racemic DL-malic acid does not occur naturally.  It is made commercially by

hydration of fumaric acid or maleic acid, and is therefore synthetic. *See* 21 C.F.R.

§184.1069.

t.  **Xylitol** is a synthetic ingredient. It is in fact is a sweetening agent derived from

the crushed fibers of sugar cane in birch wood and/or corn through a harsh multi-

step chemical reaction that involves the use of sulfuric acid, calcium oxide,

phosphoric acid, and active charcoal.  Typical production of xylitol begins from a

plant product xylan, which is hydrolyzed into xylose and catalytically

hydrogenated into xylitol, thought a comprehensive chemical process.   Moreover,

commercial production of xylitol often requires the use of genetically modified

corn, which cannot be described as natural.

u.  **Magnesium Stearate** is the magnesium salt of stearic acid.  It is produced as a

white precipitate by the addition of an aqueous solution of magnesium chloride to

an aqueous solution of sodium stearate derived from stearic acid. *See* 21 CFR §

184.1440.  Stearic acid occurs naturally as a glyceride in tallow and other animal

or vegetable fats and oils and is a principal constituent of most commercially

hydrogenated fats.  It is produced commercially from hydrolyzed tallow derived

from edible sources or from hydrolyzed, completely hydrogenated vegetable oil

derived from edible sources, and is therefore a synthetic. *See* 21 CFR § 184.1090.

85

**v. Glycerin** is a factory-produced texturizer that is created by complex processing. It is recognized by federal regulations as synthetic. *See* 7 C.F.R. § 205.605(b). It is commonly used as a filler and thickening agent. It requires multiple processing steps in an industrial environment to create glycerin, and therefore it cannot be described as "natural." A technical evaluation report compiled by the USDA AMS Agricultural Analytics Division for the USDA National Organic Program explains that glycerin is "produced by a hydrolysis of fats and oils" and is listed in the USDA Organic Program's National List as a "synthetic nonagricultural (nonorganic) substance." The same report lists several methods of producing glycerin, each of which involve numerous steps that include the use of high temperatures, pressure, and purification to get an end product.

| Processes for producing glycerin by hydrolysis of fats and oils[5] | |
|---|---|
| Lemmens Fryer's Process | Oil or fat is subjected in an autoclave to the conjoint action of heat and pressure (about 100 PSI) in the presence of an emulsifying and accelerating agent, e.g. zinc oxide or hydroxide (sodium hydroxide can be substituted) for about eight hours. The strong solution of glycerin formed is withdrawn and replaced by a quantity of hot, clean, and preferably distilled water equal to about one third to one fourth of the weight of the original charge of oil or fat and treatment continued for an additional four hours. The dilute glycerin obtained from the latter part of the process is drawn off and used for the initial treatment of the further charge of oil or fat. |
| Budde and Robertson's Process | The oils or fats are heated and mechanically agitated with water and sulphuric acid gas, under pressure in a closed vessel or autoclave. The advantage claimed for the process are that the contents of the vessel are free from foreign matter introduced by reagents and need |

---

[5] https://www.ams.usda.gov/sites/default/files/media/Glycerin%20Petition%20to%20remove%20TR%202013.pdf

|  | no purification; that the liberated glycerin is in the form of a pure and concentrated solution; that no permanent emulsion is formed and that the fatty acids are not discolored. |
|---|---|
| Ittner's Process | Coconut oil is kept in an autoclave in the presence of water at 70 atmospheres pressure and 225-245oC temperature and split into fatty acids and glycerin, both being soluble under these conditions in water. The glycerin solution separates in the bottom of the autoclave. The aqueous solution contains at the end of the splitting process more than 30 percent glycerin. |
| Continuous High-Pressure Hydrolysis | In this process a constant flow of fat is maintained flowing upward through an autoclave column tower against a downward counterflow of water at a pressure of 600 PSI maintained at temperature of 480-495oF. Under these conditions, the fat is almost completely miscible in water and the hydrolysis take place in a very short time. The liberated fatty acids, washed free of glycerin by the downward percolating water, leave the top of the column and pass through a flash tank while the liberated glycerin dissolves in the downward flow of water and is discharged from the bottom of the tower into the sweet-water storage tank. |

8.     Whether Defendant's labeling of the Products as natural is deceptive is judged by whether it would deceive or mislead a reasonable person.  To assist in ascertaining what a reasonable consumer believes the term natural means, one can look to the regulatory agencies for their guidance.

9.     In 2013, the United States Department of Agriculture ("USDA") issued a Draft Guidance Decision Tree for Classification of Materials as Synthetic or Nonsynthetic (Natural).  In accordance with this decision tree, a substance is natural—as opposed to synthetic—if: (a) it is manufactured, produced, or extracted from a natural source (i.e. naturally occurring mineral or biological matter); (b) it has not undergone a chemical change (i.e. a process whereby a substance is transformed into one or more other distinct substances) so that it is chemically or structurally

different than how it naturally occurs in the source material; or (c) the chemical change was created by a naturally occurring biological process such as composting, fermentation, or enzymatic digestion or by heating or burning biological matter.  **(Exhibit A).**

10.     Congress has defined "synthetic" to mean "a substance that is formulated or manufactured by a chemical process or by a process that chemically changes a substance extracted from naturally occurring plants, animals, or mineral sources . . . ." 7 U.S.C. § 6502 (21).

11.     Consumers lack the meaningful ability to test or independently ascertain or verify whether a product is natural, especially at the point of sale.  Consumers would not know the true nature of the ingredients merely by reading the ingredients label.

12.     Discovering that the ingredients are not natural and are actually synthetic requires a scientific investigation and knowledge of chemistry beyond that of the average consumer.  This is why, even though the ingredients listed above are identified on the back of the Products' packaging in the ingredients listed, the reasonable consumer would not understand – nor are they expected to understand - that these ingredients are synthetic.

13.     Moreover, the reasonable consumer is not expected or required to scour the ingredients list on the back of the Products in order to confirm or debunk Defendant's prominent claims, representations, and warranties that the Products are natural.

14.     Defendant did not disclose that the above listed ingredients are synthetic ingredients.  A reasonable consumer understands Defendant's "Natural" claims to mean that the Products are natural and do not contain synthetic ingredients.

15.     Defendant has thus violated, *inter alia*,  NY General Business Law § 392-b by: a) putting upon an article of merchandise, bottle, wrapper, package, label, or other thing containing or covering such an article, or with which such an article is intended to be sold, or is sold, a false description or other indication of or respecting the kind of such article or any part thereof; and b) selling or offering for sale an article which, to its knowledge, is falsely described or indicated upon any such package or vessel containing the same, or label thereupon, in any of the particulars specified.

16.     Consumers rely on label representations and information in making purchasing decisions.

17.     The marketing of the Products as "Natural" in a prominent location on the labels of all of the Products, throughout the Class Period, evidences Defendant's awareness that natural claims are material to consumers.

18.     Defendant's deceptive representations and omissions are material in that a reasonable person would attach importance to such information and would be induced to act upon such information in making purchase decisions.

19.     Plaintiff and the Class Members reasonably relied to their detriment on Defendant's misleading representations and omissions.

20.     Defendant's false, misleading, and deceptive misrepresentations and omissions are likely to continue to deceive and mislead reasonable consumers and the general public, as they have already deceived and misled Plaintiff and the Class Members.

21.     In making the false, misleading, and deceptive representations and omissions described herein, Defendant knew and intended that consumers would pay a premium for Products labeled as being "Natural" over comparable products not so labeled.

22.     As an immediate, direct, and proximate result of Defendant's false, misleading, and deceptive representations and omissions, Defendant injured Plaintiff and the Class Members in that they:

      **a.**     Paid a sum of money for Products that were not what Defendant represented;

      **b.**     Paid a premium price for Products that were not what Defendant represented;

      **c.**     Were deprived of the benefit of the bargain because the Products they purchased were different from what Defendant warranted;

      **d.**     Were deprived of the benefit of the bargain because the Products they purchased had less value than what Defendant represented;

      **e.**     Ingested a substance that was of a different quality than what Defendant promised; and

      **f.**     Were denied the benefit of the beneficial properties of the natural supplement Defendant promised.

23.     Had Defendant not made the false, misleading, and deceptive representations and omissions, Plaintiff and the Class Members would not have been willing to pay the same amount for the Products they purchased.

24.     Plaintiff and the Class Members paid for Products that are natural but received Products that are not natural.  The Products Plaintiff and the Class Members received were worth less than the Products for which they paid.

25.     Plaintiff and the Class Members all paid money for the Products; however, Plaintiff and the Class Members did not obtain the full value of the advertised Products due to Defendant's misrepresentations and omissions.  Plaintiff and the Class Members purchased, purchased more of, and/or paid more for the Products than they would have had they known the truth about the Products.  Consequently, Plaintiff and the Class Members have suffered injury in fact and lost money as a result of Defendant's wrongful conduct.

## JURISDICTION AND VENUE

26.     This Court has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. section 1332(d) in that: (1) this is a class action involving more than 100 class members; (2) Plaintiff is a citizen of the state of New York and Defendant Nordic Naturals is a citizen of the state of California; and (3) the amount in controversy is in excess of $5,000,000, exclusive of interests and costs.

27.     This Court has personal jurisdiction over Defendant because Defendant conducts and transacts business in the state of New York, contracts to supply goods within the state of New York, and supplies goods within the state of New York.

28.     Venue is proper because Plaintiff and many Class Members reside in the Eastern District of New York, and throughout the state of New York.  A substantial part of the events or omissions giving rise to the Classes' claims occurred in this district.

## PARTIES

### Plaintiff

29.     Plaintiff is an individual consumer who, at all times material hereto, was a citizen of New York State.  Plaintiff purchased Defendant's Nordic Naturals Omega 3 Gummies for her personal use on August 24, 2021 for a purchase price of $19.51 on Amazon.com.  Plaintiff purchased the Product in the state of New York and had the product shipped to her home in the state of New York.  The Product purchased by the Plaintiff is substantially and sufficiently similar to the Products that Plaintiff did not purchase (i.e. each of Defendant's Products set forth herein in paragraph 1).

30.     Had Defendant not made the false, misleading, and deceptive representation that the Products were "Natural," Plaintiff would not have been willing to pay the same amount, and, consequently, she would not have been willing to purchase the product.  Plaintiff purchased, purchased more of, and/or paid more for, the Product than she would have had she known the truth about the Product.  The Product Plaintiff received was worth less than the product for which she paid.  Plaintiff was injured in fact and lost money as a result of Defendant's improper conduct. Plaintiff would purchase the Products again if the ingredients were changed so that they were "Natural," as represented by Defendant.

### Defendant

31.     Defendant Nordic Naturals, Inc. is a corporation with its principal place of business in Watsonville, California.  Defendant manufactures, markets, advertises, and distributes the

Products throughout the United States.  Defendant created and/or authorized the false, misleading, and deceptive advertisements, packaging, and labeling for the Products.

## CLASS ALLEGATIONS

32.     Plaintiff brings this matter on behalf of herself and those similarly situated.  As detailed at length in this Complaint, Defendant orchestrated deceptive marketing and labeling practices.  Defendant's customers were uniformly impacted by and exposed to this misconduct. Accordingly, this Complaint is uniquely situated for class-wide resolution.

33.     The Class is defined as all consumers who purchased the Products anywhere in the United States during the Class Period (the "Class").

34.     Plaintiff also seeks certification, to the extent necessary or appropriate, of a subclass of individuals who purchased the Products in the state of New York at any time during the Class Period (the "New York Subclass").

35.     The Class and New York Subclass shall be referred to collectively throughout the Complaint as the Class.

36.     The Class is properly brought and should be maintained as a class action under Rule 23(a), satisfying the class action prerequisites of numerosity, commonality, typicality, and adequacy because:

37.     <u>Numerosity</u>: Class Members are so numerous that joinder of all members is impracticable.  Plaintiff believes that there are thousands of consumers who are Class Members described above who have been damaged by Defendant's deceptive and misleading practices.

38.   <u>Commonality</u>: The questions of law and fact common to the Class Members which predominate over any questions which may affect individual Class Members include, but are not limited to:

a.   Whether Defendant is responsible for the conduct alleged herein which was uniformly directed at all consumers who purchased the Products;

b.   Whether Defendant's misconduct set forth in this Complaint demonstrates that Defendant has engaged in unfair, fraudulent, or unlawful business practices with respect to the advertising, marketing, and sale of their Products;

c.   Whether Defendant made false and/or misleading statements to the Class and the public concerning the contents of its Products;

d.   Whether Defendant's false and misleading statements concerning its Products were likely to deceive the public; and

e.   Whether Plaintiff and the Class are entitled to money damages under the same causes of action as the other Class Members?

39.   <u>Typicality</u>: Plaintiff is a member of the Class.  Plaintiff's claims are typical of the claims of each Class Member in that every member of the Class was susceptible to the same deceptive, misleading conduct and purchased Defendant's Products.  Plaintiff is entitled to relief under the same causes of action as the other Class Members.

40.   <u>Adequacy</u>: Plaintiff is an adequate Class representative because her interests do not conflict with the interests of the Class Members she seeks to represent, her consumer fraud claims are common to all members of the Class and she has a strong interest in vindicating her rights, she

has retained counsel competent and experienced in complex class action litigation, and counsel intends to vigorously prosecute this action.

41. <u>Predominance</u>: Pursuant to Rule 23(b)(3), the common issues of law and fact identified above predominate over any other questions affecting only individual members of the Class. The Class issues fully predominate over any individual issue because no inquiry into individual conduct is necessary; all that is required is a narrow focus on Defendant's deceptive and misleading marketing and labeling practices.

42. <u>Superiority</u>: A class action is superior to the other available methods for the fair and efficient adjudication of this controversy because:

a. The joinder of thousands of individual Class Members is impracticable, cumbersome, unduly burdensome, and a waste of judicial and/or litigation resources;

b. The individual claims of the Class Members may be relatively modest compared with the expense of litigating the claim, thereby making it impracticable, unduly burdensome, and expensive—if not totally impossible—to justify individual actions;

c. When Defendant's liability has been adjudicated, all Class Members' claims can be determined by the Court and administered efficiently in a manner far less burdensome and expensive than if it were attempted through filing, discovery, and trial of all individual cases;

d.   This class action will promote orderly, efficient, expeditious, and appropriate adjudication and administration of Class claims;

e.   Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action;

f.   This class action will assure uniformity of decisions among Class Members;

g.   The Class is readily definable and prosecution of this action as a class action will eliminate the possibility of repetitious litigation;

h.   Class Members' interests in individually controlling the prosecution of separate actions is outweighed by their interest in efficient resolution by single class action; and

i.   It would be desirable to concentrate in this single venue the litigation of all plaintiffs who were induced by Defendant's uniform false advertising to purchase its Products as "Natural."

43.   Accordingly, this Class is properly brought and should be maintained as a class action under Rule 23(b)(3) because questions of law or fact common to Class Members predominate over any questions affecting only individual members, and because a class action is superior to other available methods for fairly and efficiently adjudicating this controversy.

96

**FIRST CAUSE OF ACTION**
**VIOLATION OF NEW YORK GBL § 349**
**(On Behalf of Plaintiff and New York Subclass Members)**

44.    Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

45.    New York General Business Law Section 349 ("GBL § 349") declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in this state . . ."

46.    There is no adequate remedy at law.

47.    Defendant misleadingly, inaccurately, and deceptively advertise and market their Products to consumers.

48.    Defendant's improper consumer-oriented conduct—including labeling and advertising the Products as being "Natural" —is misleading in a material way in that it, *inter alia*, induced Plaintiff and the New York Subclass Members to purchase and pay a premium for Defendant's Products and to use the Products when they otherwise would not have. Defendant made its untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

49.    Plaintiff and the New York Subclass Members have been injured inasmuch as they paid a premium for products that were—contrary to Defendant's representations— not natural. Accordingly, Plaintiff and the New York Subclass Members received less than what they bargained and/or paid for.

50.     Defendant's advertising and Products' packaging and labeling induced Plaintiff and the New York Subclass Members to buy Defendant's Products and to pay a premium price for them.

51.     Defendant's deceptive and misleading practices constitute a deceptive act and practice in the conduct of business in violation of New York General Business Law §349(a) and Plaintiff and the New York Subclass Members have been damaged thereby.

52.     As a result of Defendant's recurring, "unlawful" deceptive acts and practices, Plaintiff and the New York Subclass Members are entitled to monetary, statutory, compensatory, treble and punitive damages, restitution, and disgorgement of all moneys obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

**SECOND CAUSE OF ACTION**
**VIOLATION OF NEW YORK GBL § 350**
**(On Behalf of Plaintiff and the New York Subclass Members)**

53.     Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

54.     N.Y. Gen. Bus. Law § 350 provides, in part, as follows:

> False advertising in the conduct of any business, trade, or commerce or in the furnishing of any service in this state is hereby declared unlawful.

55.     N.Y. Gen. Bus. Law § 350a(1) provides, in part, as follows:

> The term 'false advertising, including labeling, of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect. In determining whether any advertising is misleading, there shall be taken into account (among other things) not only representations made by statement, word, design, device, sound or any combination

98

thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity or employment to which the advertising relates under the conditions proscribed in said advertisement, or under such conditions as are customary or usual . . .

56.   Defendant's labeling and advertisements contain untrue and materially misleading statements concerning Defendant's Products inasmuch as they misrepresent that the Products are "Natural."

57.   Plaintiff and the New York Subclass Members have been injured inasmuch as they relied upon the labeling, packaging, and advertising and paid a premium for the Products which were—contrary to Defendant's representations—not natural.  Accordingly, Plaintiff and the New York Subclass Members received less than what they bargained and/or paid for.

58.   Defendant's advertising, packaging, and Products' labeling induced Plaintiff and the New York Subclass Members to buy Defendant's Products.

59.   Defendant made its untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

60.   Defendant's conduct constitutes multiple, separate violations of N.Y. Gen. Bus. Law § 350.

61.   Defendant made the material misrepresentations described in this Complaint in Defendant's advertising and on the Products' packaging and labeling.

62.   Defendant's material misrepresentations were substantially uniform in content, presentation, and impact upon consumers at large.  Moreover, all consumers purchasing the Products were and continue to be exposed to Defendant's material misrepresentations.

63.     As a result of Defendant's recurring, "unlawful" deceptive acts and practices, Plaintiff and New York Subclass Members are entitled to monetary, statutory, compensatory, treble and punitive damages, restitution, and disgorgement of all moneys obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

## THIRD CAUSE OF ACTION
## BREACH OF EXPRESS WARRANTY
### (On Behalf of Plaintiff and All Class Members)

64.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

65.     Defendant provided Plaintiff and Class Members with an express warranty in the form of written affirmations of fact promising and representing that the Products are "Natural."

66.     The above affirmations of fact were not couched as "belief" or "opinion," and were not "generalized statements of quality not capable of proof or disproof."

67.     These affirmations of fact became part of the basis for the bargain and were material to Plaintiff's and Class Members' transactions.

68.     Plaintiff and Class Members reasonably relied upon Defendant's affirmations of fact and justifiably acted in ignorance of the material facts omitted or concealed when they decided to buy Defendant's Products.

69.     Within a reasonable time after knowing of Defendant's breach, Plaintiff, on behalf of herself and Class Members, placed Defendant on notice of its breach, giving Defendant an opportunity to cure its breach, which it refused to do.  More specifically, on or about September 21, 2021, Plaintiff -- by way of counsel -- sent a letter via overnight mail to Defendant along with

100

a Draft Complaint (which included a breach of express warranty cause of action and which was materially and substantively similar to the Complaint that was ultimately filed).  The letter indicated, among other things, that Defendant was engaging in deceptive acts and practices by falsely warranting that its Products were "Natural," when in fact they were not "Natural."  The letter also indicated that the Draft Complaint or a version thereof would be filed if Defendant did not cure its breach within 30 days.  Defendant received the letter and Draft Complaint and retained counsel, who responded to the letter and Draft Complaint.

70.     Defendants thereby breached the following state warranty laws:

a.     Code of Ala. § 7-2-313;

b.     Alaska Stat. § 45.02.313;

c.     A.R.S. § 47-2313;

d.     A.C.A. § 4-2-313;

e.     Cal. Comm. Code § 2313;

f.     Colo. Rev. Stat. § 4-2-313;

g.     Conn. Gen. Stat. § 42a-2-313;

h.     6 Del. C. § 2-313;

i.     D.C. Code § 28:2-313;

j.     Fla. Stat. § 672.313;

k.     O.C.G.A. § 11-2-313;

l.     H.R.S. § 490:2-313;

m.     Idaho Code § 28-2-313;

101

n.      810 I.L.C.S. 5/2-313;

o.      Ind. Code § 26-1-2-313;

p.      Iowa Code § 554.2313;

q.      K.S.A. § 84-2-313;

r.      K.R.S. § 355.2-313;

s.      11 M.R.S. § 2-313;

t.      Md. Commercial Law Code Ann. § 2-313;

u.      106 Mass. Gen. Laws Ann. § 2-313;

v.      M.C.L.S. § 440.2313;

w.      Minn. Stat. § 336.2-313;

x.      Miss. Code Ann. § 75-2-313;

y.      R.S. Mo. § 400.2-313;

z.      Mont. Code Anno. § 30-2-313;

aa.     Neb. Rev. Stat. § 2-313;

bb.     Nev. Rev. Stat. Ann. § 104.2313;

cc.     R.S.A. 382-A:2-313;

dd.     N.J. Stat. Ann. § 12A:2-313;

ee.     N.M. Stat. Ann. § 55-2-313;

ff.     N.Y. U.C.C. Law § 2-313;

gg.     N.C. Gen. Stat. § 25-2-313;

hh.     N.D. Cent. Code § 41-02-30;

ii.     II. O.R.C. Ann. § 1302.26;

jj.     12A Okl. St. § 2-313;

kk.    Or. Rev. Stat. § 72-3130;

ll.     13 Pa. Rev. Stat. § 72-3130;

mm.   R.I. Gen. Laws § 6A-2-313;

nn.    S.C. Code Ann. § 36-2-313;

oo.    S.D. Codified Laws, § 57A-2-313;

pp.    Tenn. Code Ann. § 47-2-313;

qq.    Tex. Bus. & Com. Code § 2.313;

rr.     Utah Code Ann. § 70A-2-313;

ss.     9A V.S.A. § 2-313;

tt.     Va. Code Ann. § 59.1-504.2;

uu.    Wash. Rev. Code Ann. § 6A.2-313;

vv.    W. Va. Code § 46-2-313;

ww.   Wis. Stat. § 402.313; and

xx.    Wyo. Stat. § 34.1-2-313.

71.    Defendant breached the express warranty because the Products are not "Natural" because they contain synthetic ingredients.

72.    As a direct and proximate result of Defendant's breach of the express warranty, Plaintiff and Class Members were damaged in the amount of the price they paid for the Products, in an amount to be proven at trial.

## <u>JURY DEMAND</u>

Plaintiff demands a trial by jury on all issues.

**WHEREFORE**, Plaintiff, on behalf of herself and the Class, prays for judgment as follows:

(a) Declaring this action to be a proper class action and certifying Plaintiff as the representative of the Class under Rule 23 of the FRCP;

(b) Enjoining Defendant from continuing its unlawful practices described herein;

(c) Awarding monetary damages and treble damages;

(d) Awarding statutory damages of $50 per transaction, and treble damages for knowing and willful violations, pursuant to N.Y. GBL § 349;

(e) Awarding statutory damages of $500 per transaction pursuant to N.Y. GBL § 350;

(f) Awarding punitive damages;

(g) Awarding Plaintiff and Class Members their costs and expenses incurred in this action, including reasonable allowance of fees for Plaintiff's attorneys and experts, and reimbursement of Plaintiff's expenses; and

(h) Granting such other and further relief as the Court may deem just and proper.

Dated: May 31, 2022

THE SULTZER LAW GROUP P.C.

Jason P. Sultzer /s/

By: _____
Jason P. Sultzer, Esq.
Joseph Lipari, Esq.
Daniel Markowitz, Esq.
85 Civic Center Plaza, Suite 200

104

Poughkeepsie, NY 12601
Tel: (845) 483-7100
Fax: (888) 749-7747
sultzerj@thesultzerlawgroup.com
liparij@thesultzerlawgroup.com
markowitzd@thesultzerlawgroup.com

Nick Suciu III*
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN PLLC**
6905 Telegraph Rd., Suite 115
Bloomfield Hills, MI 48301
Telephone: (313) 303-3472
Email:  nicksuciu@milberg.com

Gary M. Klinger*
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Phone: 866.252.0878
Email: gklinger@milberg.com

Zoe Aaron*
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN PLLC**
405 E. 50th Street
New York, NY 10023
Telephone: (212) 594-5300
Fax: (865) 522-0049
Email: zaaron@milberg.com


*Pro Hac Vice Forthcoming*


*Counsel for Plaintiff and the Class*