## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

NATALIE ORRICO,

                    Plaintiff,

      v.

NORDIC NATURALS, INC,

                    Defendant.

Civil Action No.: 1:22-cv-03195 (NRM)(CLP)

### PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

Dated: March 27, 2023

**THE SULTZER LAW GROUP P.C.**
Jason P. Sultzer
Philip J. Furia
85 Civic Center Plaza, Suite 200
Poughkeepsie, NY 12601
Telephone: 845-483-7100
sultzerj@thesultzerlawgroup.com
furiap@thesultzerlawgroup.com

**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN PLLC**
Nick Suciu III (*pro hac vice forthcoming*)
6905 Telegraph Rd., Suite 115
Bloomfield Hills, MI 48301
Telephone: (313) 303-3472
nsuciu@milberg.com

**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN PLLC**
Gary M. Klinger (admitted *pro hac vice*)
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Phone: 866.252.0878
gklinger@milberg.com

*Attorneys for Plaintiff Natalie Orrico*

## TABLE OF CONTENTS

Table of Contents…………………………………………………………………….…………i

Table of Authorities………………………………………………………………..ii-v

INTRODUCTION…………………………………………………………………...1

    A.  Plaintiff's Allegations……………………………………………………2

STANDARD OF REVIEW…………………………………………………………4

ARGUMENT………………………………………………………………………...4

I.    PLAINTIFF HAS STATED VALID CLAIMS UNDER GBL §§ 349 AND 350………………………………………………………………4

    A.  Plaintiff has validly alleged a material misrepresentation by Defendant in its Product Marketing………………………………………………...5

        1.  A "reasonable consumer" analysis should not be performed at the pleading stage………………………………………………………....5

        2.  Defendant's product label, when reviewed in context, is materially deceiving…………………………………………………………6

    B.  Plaintiff has alleged a cognizable injury under GBL §§ 349 and 350…………...11

II.    PLAINTIFF STATED VALID CLAIMS FOR BREACH OF EXPRESS WARRANTY…………………………………………………………...12

III.    PLAINTIFF HAS STANDING TO ASSERT CLAIMS AS TO EACH OF THE PRODUCTS…………………………………………………14

IV.    IF THIS COURT IS INCLINED TO GRANT DEFENDANT'S MOTION, LEAVE SHOULD BE GRANTED TO PERMIT PLAINTIFF TO REPLEAD…..18

CONCLUSION……………………………………………………………19

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ackerman v. Coca-Cola Co.*,
    No. CV-09-0395 (JG),
    2010 U.S. Dist. LEXIS 73156 (E.D.N.Y. Jul. 21, 2010) ........................................................14

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ........................................................................................................4

*Ault v. J.M. Smucker Co.*,
    No. 13 CIV. 3409 PAC,
    2014 U.S. Dist. LEXIS 67118 (S.D.N.Y. May 15, 2014) .................................13, 14

*Avola v. Louisiana–Pacific Corp.*,
    991 F.Supp.2d 381 (E.D.N.Y.2013) ........................................................................12

*Axon v. Citrus World, Inc.*,
    354 F. Supp. 3d 170 (E.D.N.Y. Dec. 10, 2018) ...................................................9, 10

*Axon v. Florida's Nat. Growers, Inc.*,
    813 F. App'x 701 (2d Cir. 2020) ........................................................................9, 10

*Barton v. Pret A Manger (USA) Ltd.*,
    535 F. Supp. 3d 225 (S.D.N.Y. 2021) .........................................................................11

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) .........................................................................................................4

*Brady v. Bayer Corp.*,
    26 Cal. App. 5th 1156, 237 Cal. Rptr. 3d 683 (2018) .............................................14

*Buonasera v. Honest Co., Inc.*,
    208 F. Supp. 3d 555 (S.D.N.Y. 2016) ...........................................................5, 15, 16

*Casey v. Odwalla, Inc.*,
    338 F. Supp. 3d 284 (S.D.N.Y. 2018) ........................................................................4

*CBS Inc. v. Ziff–Davis Pub. Co.*,
    75 N.Y.2d 496, 554 N.Y.S.2d 449, 553 N.E.2d 997 (1990) ...................................12

*de Lacour v. Colgate-Palmolive Co.*,
    338 F.R.D. 324 (S.D.N.Y. 2021) .......................................................................15, 16

*DiMuro v. Clinique Lab'ys, LLC*,
    572 F. App'x 27 (2d Cir. 2014) ..................................................................15, 16, 17

*Duran v. Henkel of Am., Inc.*,
    450 F. Supp. 3d 337 (S.D.N.Y. 2020)............................................................................5

*In re Frito–Lay N. Am., Inc. All Nat. Litig.*,
    12-MD-2413 (RRM)(RLM),
    2013 U.S. Dist. LEXIS 123824 (E.D.N.Y. Aug 29, 2013)......................................14

*Gold v. Eva Naturals, Inc.*,
    No. 21-CV-2842 (GRB)(AYS), 586 F. Supp. 3d 158 (E.D.N.Y. 2022)................................10

*Goldemberg v. Johnson & Johnson Consumer Cos.*,
    8 F. Supp. 3d 467 (S.D.N.Y. 2014) ..............................................................6, 7, 13

*Grossman v. Simply Nourish Pet Food Co.*
    LLC, 516 F. Supp. 3d 261 (E.D.N.Y. 2021)............................................................11, 15, 17

*Hidalgo v. Johnson & Johnson Consumer Companies, Inc.*,
    148 F. Supp. 3d 285 (S.D.N.Y. 2015)..............................................................5, 14

*Jou v. Kimberly-Clark Corp.*,
    No. C-13-03075 (JSC),
    2013 U.S. Dist. LEXIS 173216 (N.D. Cal. Dec. 10, 2013) ..................................8

*In re Kind LLC "Healthy & All Nat. Litig.*,
    337 F.R.D. 581 (S.D.N.Y. 2021) ..............................................................................6

*Kurtz v. Kimberly-Clark Corp.*,
    321 F.R.D. 482 (E.D.N.Y. 2017) ............................................................................15

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*,
    797 F.3d 160 (2d Cir. 2015)....................................................................................18

*Luib v. Henkel Consumer Goods, Inc.*,
    2018 U.S. Dist. LEXIS 18598 (E.D.N.Y. Feb. 5, 2018)..........................................9

*Mason v. Reed's Inc.*,
    18-cv-10826 (JGK),
    2021 U.S. Dist. LEXIS 16556 (S.D.N.Y. Jan. 28 2021)........................................12

*Mogull v. Pete and Gerry's Organics, LLC*,
    2022 U.S. Dist. LEXIS 35237 (S.D.N.Y. Feb. 28, 2022)........................................5

*Morales v. Unilever U.S., Inc.*,
    No. 13-CV-2213 (WBS)(EFB),
    2014 U.S. Dist. LEXIS 49336 (E.D. Cal. Apr. 9, 2014)..........................................8

*In re MPM Silicones, L.L.C.*,
    596 B.R. 416 (S.D.N.Y. 2019)..................................................................................4

*Mustakis v. Chattem, Inc*.
    No. 20-CV-5895,
    2022 U.S. Dist. LEXIS 45070 (E.D.N.Y. Mar. 9, 2022)........................................10

*NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co*.,
    693 F.3d 145 (2012)........................................................................................16, 17

*Noto v. 22nd Century Grp., Inc.*,
    35 F.4th 95 (2d Cir. 2022) .......................................................................................18

*Orlander v. Staples, Inc.*,
    802 F.3d 289 (2d Cir. 2015).......................................................................................4

*Paulino v. Conopco*, Inc.,
    No. 14-CV-5145 (JG)(RML),
    2015 U.S. Dist. LEXIS 108165, at *9 (E.D.N.Y. Aug. 17, 2015)…………………….……7, 8

*Petrosino v. Stearn's Prod., Inc.*,
    No. 16-cv-7735 (NSR),
    2018 U.S. Dist. LEXIS 55818 (S.D.N.Y. Mar. 30, 2018) .....................................11

*Porat v. Lincoln Towers Cmty. Ass'n*,
    464 F.3d 274 (2d Cir. 2006) (per curiam) .............................................................18

*Quinn v. Walgreen Co.*,
    958 F. Supp. 2d 533 (S.D.N.Y. 2013)....................................................................14

*Rivera v. S.C. Johnson & Son, Inc.*,
    No. 20-CV-3588 (RA),
    2021 U.S. Dist. LEXIS 183759 (S.D.N.Y. Sept. 24, 2021)...................................15

*Segedie v. Hain Celestial Grp., Inc.*,
    No. 14-cv-5029 (NSR),
    2015 U.S. Dist. LEXIS 60739 (S.D.N.Y. May 7, 2015)....................................5, 11

*Shaya Eidelman v. Sun Prods. Corp.*,
    No. 21-1046-cv,
    2022 U.S. App. LEXIS 15480 (2d Cir. 2022) .......................................................11

*Silva v. Smucker Natural Foods, Inc.*,
    2015 U.S. Dist. LEXIS 122186 (E.D.N.Y. Sept. 14, 2015)...................................13

*Singleton v. Fifth Generation, Inc.*,
   No. 515CV474BKSTWD,
   2016 U.S. Dist. LEXIS 14000 (N.D.N.Y. Jan. 12, 2016)......................................................13

*Sitt v. Nature's Bounty, Inc.*,
   No. 15-cv-4199 (MKB),
   2016 U.S. Dist. LEXIS 131564 (E.D.N.Y. Sept. 26, 2016)....................................................8

**Statutes**

New York General Business Law §§ 349 and 350 ............................................................. *passim*

Rule 12(b)(6)....................................................................................................................4, 8, 18

## INTRODUCTION

Plaintiff Natalie Orrico ("Plaintiff") respectfully submits this memorandum in opposition to Defendant Nordic Naturals, Inc. ("Defendant") Motion to Dismiss Plaintiff's Complaint (ECF No. 1) (hereinafter "Motion" or "MTD").

This is a civil class action brought individually by Plaintiff on behalf of consumers who purchased Defendant's Nordic Natural Gummies[1] (collectively "Products"). Plaintiff alleges in her Complaint (ECF No. 1, hereinafter "Complaint"), that Defendant mislead her, and other consumers into believing its Products are natural when the Products contain non-natural, synthetic ingredients. Defendant chose to label the Products in this way to impact consumer choices and gain market dominance, as it is aware that all consumers who purchased the Products were exposed to, and would be impacted by, the natural representation and would reasonably believe from this

---

[1] Plaintiff has alleged the following products are mislabeled: Nordic Naturals Nordic Omega-3 Gummies, Nordic Naturals Omega Blood Sugar, Nordic Naturals Omega Vision, Nordic Naturals Zero Sugar Vitamin D3 Gummies, Nordic Naturals Vitamin D3 Gummies Sport, Nordic Naturals Vitamin A + Carotenoids, Nordic Naturals Multi Minerals, Nordic Naturals Multi Minerals Without Iron & Copper, Nordic Naturals Omega Joint Xtra, Nordic Naturals Omega Memory with Curcumin, Nordic Naturals Omega Woman with Evening Primrose Oil, Nordic Naturals Vitamin C Gummies, Nordic Naturals Vitamin E Complex, Nordic Naturals Children's DHA, Nordic Naturals Kids Nordic Flora Probiotic Pixies, Nordic Naturals Nordic Omega-3 Gummy Worms, Nordic Naturals Ultimate Omega-D3 Sport, Nordic Naturals Arctic Cod Liver Oil, Nordic Naturals Nordic Flora Probiotic Comfort, Nordic Naturals Nordic Omega-3 Gummy Fish, Nordic Naturals Vitamin D3+K2 Gummies, Nordic Naturals Complete Omega-D3, Nordic Naturals EPA, Nordic Naturals Omega ONE, Nordic Naturals Ultimate Omega, Nordic Naturals Ultimate Omega 2X, Nordic Naturals Omega Focus Jr., Nordic Naturals Ultimate Omega Sport 2X, Nordic Naturals Ultimate Omega 2x Mini, Nordic Naturals Algae DHA, Nordic Naturals Omega LDL, Nordic Naturals Ultimate Omega Jr., Nordic Naturals Nordic Beauty Omega-3 + Borage Oil, Nordic Naturals Ultimate Omega + CoQ10, Nordic Naturals EPA Xtra, Nordic Naturals Nordic CoQ10 Ubiquinol Sport, Nordic Naturals DHA Xtra, Nordic Naturals Nordic CoQ10 Ubiquinol, Nordic Naturals Children's DHA Gummies, Nordic Naturals Algae Omega, Nordic Naturals Prenatal DHA, Nordic Naturals Prenatal DHA, Nordic Naturals COQ10 Gummies, Nordic Naturals Omega Focus, Nordic Naturals Magnesium Complex, Nordic Naturals Postnatal Omega-3, Nordic Naturals DHA, Nordic Naturals Nordic Flora Probiotic Daily, Nordic Naturals Omega-3, Nordic Naturals Zero Sugar Kids Multi Gummies, Nordic Naturals Ultimate Omega 2X Mini, Nordic Naturals Vitamin B Complex, Nordic Naturals Children's DHA Xtra, Nordic Naturals Vitamin D3 1000, Nordic Naturals Ultimate Omega 2X, Nordic Naturals Complete Omega Xtra, Nordic Naturals Ultimate Omega-D3, Nordic Naturals Nordic Berries Original Flavor Multivitamin Gummies for Adults & Kids Alike, Nordic Naturals Zero Sugar Melatonin Gummies, Nordic Naturals Complete Omega, Nordic Naturals Kids Nordic Flora Probiotic Gummies with Prebiotics, Nordic Naturals Vitamin D3 Gummies Kids, Nordic Naturals Complete Omega Jr., Nordic Naturals Nordic Omega-3 Fishies, Nordic Naturals Ultimate Omega 2X Teen, Nordic Naturals Children's Eye Health Gummies, Nordic Naturals Ultimate Omega Xtra, Nordic Naturals Vitamin D3 5000, Nordic Naturals Omega-3D, Nordic Naturals Vitamin D3 Gummies, Nordic Naturals Omega Curcumin, Nordic Naturals Zero Sugar Curcumin Gummies, and Nordic Naturals Nordic Immune Daily Defense. ECF No. 1 ¶ 1.

representation that the Products only contain natural ingredients. However, the Products are not natural as they contain a number of synthetic ingredients such as Bovine Gelatin, Citric Acid, Pectin, Sodium Citrate, Gelatin, Glycerin, Sodium Citrate Dihydrate, Vitamin A (as Beta-Carotene), Potassium (as Potassium Chloride), Microcrystalline Cellulose, Silica, Soy Lecithin, Maltodextrin, among many others.

In its Motion, Defendant contends that it's company name "Nordic Naturals" conveys nothing about the contents or ingredients of the Products and would not mislead a reasonable consumer into thinking the Products are natural and do not contain synthetic ingredients. However, the overwhelming weight of caselaw within this District and the Second Circuit tells a very different story.  Indeed, courts have repeatedly held that reasonable consumers *can* be deceived when the term "natural" or "naturals" is used in a product name where that product contains synthetic ingredients.  Cases cited by Defendant, where the term "natural" was not found to be an actionable representation, are the exception, not the rule, and each of those decisions is easily distinguished from the instant matter.  For these reasons, and others discussed below, Defendant's Motion should be denied entirely.

### A. Plaintiff's Allegations

On August 24, 2021, Plaintiff Natalie Orrico purchased a dietary supplement from Amazon.com labeled as "Nordic Naturals Nordic Omega-3 Gummies" for $19.51 and had it shipped to her home in New York. ECF No. 1 ¶ 1. Had the Defendant not made the false, misleading, and deceptive representation that the product she purchased was "Natural," she would not have paid the same price and would not have been willing to purchase the product. *Id.* ¶ 30. Plaintiff received a product that was worth far less than the product for which she paid due to this misrepresentation. *Id.* Plaintiff was injured and lost money as a result of Defendant's improper

conduct, i.e., labeling the product as "Natural" despite containing a litany of synthetic ingredients. *Id.* Plaintiff seeks to represent all consumers who purchased the Products in the United States and within New York. *Id.* ¶ 32-34.

Plaintiff alleges the Products contain a number of synthetic ingredients as set forth in the Complaint: Gelatin (9 C.F.R. §94.20), Soy Lecithin (40 C.F.R. 799.2155), Maltodextrin (21 C.F.R. § 184.1444), Ascorbic Acid (1 C.F.R. § 182.3013), Betacarotene (21 C.F.R. § 184.1245), Riboflavin (21 CFR § 184.1695, 21 CFR § 73.450), Niacin (1 CFR § 184.1530), Thiamine Mononitrate (21 C.F.R. § 184.1878, 47 Fed. Reg. 47438, 21 C.F.R. § 184.1878), Pectin (7 C.F.R. §205.605(b)), Sodium Citrate (7 C.F.R. §205.605(b)), Folic Acid (21 CFR §172.345), Silica e 21 (C.F.R. §172.480), Potassium Chloride (21 C.F.R. § 184.1622), Stearic Acid (7 C.F.R. § 205.605(b)), Silicon Dioxide (21 C.F.R. § 172.480), Malic Acid (21 C.F.R. §184.1069), Magnesium Stearate (21 CFR § 184.1090), and Glycerin (7 C.F.R. § 205.605(b)). *Id.* ¶ 7. Further, determining whether the Products contain synthetic ingredients is beyond the capabilities of the average consumer, *Id.* ¶¶ 11-12, and the Defendant did not disclose that the Products contain synthetic ingredients when making the "Natural" claim on the Products' front label. *Id.* ¶ 14.

Plaintiff alleges the "Natural" representation on the products, "Nordic Naturals," is in a prominent location on each of the Products' labels, which illustrates that Defendant is aware that the "Natural" claim is material. *Id.* ¶ 17. Plaintiff alleges that she and other Class Members paid for Products that are natural but instead received Products that are not natural and are worth less than the purchase price. *Id.* ¶ 24.

Plaintiff asserts claims under New York General Business Law ("GBL") §§ 349 and 350 (Counts One and Two, respectively) and for breach of express warranty pursuant to the laws of all fifty states (Count Three). *Id.* at 44-72

## STANDARD OF REVIEW

Under Rule 12(b)(6), when a defendant seeks to dismiss a complaint for failure to state a claim upon which relief can be granted, this Court has emphasized that it "must take all material factual allegations as true and draw reasonable inferences in the non-moving party's favor[.]" *In re MPM Silicones, L.L.C.,* 596 B.R. 416, 427 (S.D.N.Y. 2019); *see also Casey v. Odwalla, Inc.*, 338 F. Supp. 3d 284, 291 (S.D.N.Y. 2018). A complaint will survive a Rule 12(b)(6) motion so long as it articulates "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "'The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 557, 127 S.Ct. 1955).

## <u>ARGUMENT</u>

## I. **PLAINTIFF HAS STATED VALID CLAIMS UNDER GBL §§ 349 AND 350**

To state a claim under New York General Business Law ("GBL") Section 349 or Section 350, "a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice." *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015). An act is materially misleading if it is "likely to mislead a reasonable consumer acting reasonably under the circumstances." *Id*. Defendant sets forth several bases to dismiss Plaintiff's GBL claims, each of which is addressed and refuted herein.

### A. Plaintiff has validly alleged a material misrepresentation by Defendant in its Product marketing.

#### 1. A "reasonable consumer" analysis should not be performed at the pleading stage.

Defendant's primary argument in support of dismissal of Plaintiff's GBL claims is its assertion that "no reasonable consumer would have been deceived." MTD at pg. 13. "While it is possible for a court to decide this question as a matter of law, this inquiry is generally a question of fact not suited for resolution at the motion to dismiss stage." *Duran v. Henkel of Am., Inc.*, 450 F. Supp. 3d 337, 346 (S.D.N.Y. 2020) (citation omitted). Indeed, the vast majority of courts to have considered this issue have agreed to defer resolution of this question beyond the pleading stage. *See Buonasera v. Honest Co., Inc.*, 208 F. Supp. 3d 555, 566 (S.D.N.Y. 2016) ("Courts have generally held that since this second factor requires a reasonableness analysis, it cannot be resolved on a motion to dismiss."); *Segedie v. Hain Celestial Grp., Inc.*, No. 14-cv-5029 (NSR), 2015 U.S. Dist. LEXIS 60739, at *12 (S.D.N.Y. May 7, 2015) ("Whether the labels would mislead a reasonable consumer is a question of fact for the jury."); *Hidalgo v. Johnson & Johnson Consumer Companies, Inc.*, 148 F. Supp. 3d 285, 295 (S.D.N.Y. 2015) ("A court may make [the reasonable consumer determination] as a matter of law, although usually such a determination is a question of fact.").

"Consequently, '[d]ismissal [at the motion to dismiss stage] is warranted only in a rare situation where it is impossible for the plaintiff to prove that a reasonable consumer was likely to be deceived.'" *Mogull v. Pete and Gerry's Organics, LLC*, 2022 U.S. Dist. LEXIS 35237 at *3 (S.D.N.Y. Feb. 28, 2022). As detailed in Section A(2), *below*, this is plainly not an instance where it will be "impossible" for Plaintiff to prove that a reasonable consumer was likely to be deceived by Defendant's conduct.

5

**2.  Defendant's product label, when reviewed in context, is materially deceiving.**

If this Court is intent to examine the reasonableness of Plaintiff's assertion that reasonable consumers would be deceived by Defendant's marketing, prevailing case law dictates that Defendant's product labeling is deceiving in view of the inclusion of synthetic ingredients in its Products.  As detailed above, the Products are explicitly and prominently labeled as being "Naturals."  The Complaint and Defendant's own motion papers also depict a Product prominently labeled as being "non-gmo," which is tantamount to a further representation that the Products are natural.  *See In re Kind LLC "Healthy & All Nat. Litig*., 337 F.R.D. 581, 599 (S.D.N.Y. 2021) (noting that "the differences between 'Non-GMO' and 'No Genetically Engineered Ingredients' on one hand, and 'All Natural' on the other, are minute.").  Thus, Plaintiff contends that reasonable consumers would view Defendant's Products as being entirely natural and containing no synthetic ingredients.

Defendant contends that its Product labels are not deceiving because they "do not state that the Products are all natural or free from synthetic ingredients."  MTD at pg. 7.  Defendant asserts that even though the word "Naturals" appears in its brand name and features prominently on its Products, this Court should conclude that "the Product label does not contain the representation alleged: that it is 'Natural,' nor does it claim to be 'all natural,' '100% natural,' or 'free of synthetic ingredients.' Defendant is, in essence, asking this Court to ignore its brand name in assessing the viability of Plaintiff's GBL claims.  However, case law in this Circuit does not support Defendant's argument.

*Goldemberg v. Johnson & Johnson Consumer Cos*., 8 F. Supp. 3d 467, 478 (S.D.N.Y. 2014), is a nearly identical case, which involved claims defendant's labels and advertisements for cosmetic products that were labeled as "Active Naturals" were deceptive and materially

6

misleading because it "conveys to consumers that the [products] are completely natural, yet the products contain synthetic ingredients." 8 F. Supp. at 478. In *Goldemberg*, the defendants also argued that it was unreasonable to assume the products contained exclusively natural ingredients *Id.* at 479. However, the court rejected the argument and denied defendant's motion to dismiss holding "the Court cannot hold as a matter of law that the product labels are not misleading to a reasonable consumer." *Id.* at 480.

Seeking to preemptively avoid the negative impact of the *Goldemberg* decision, Defendant argues that the facts in that case are different from those herein because in *Goldemberg*, "the defendant's website 'focuse[d] exclusively on the natural ingredients found in Aveeno products and the Facebook page tout[ed] the 'power' of nature,' and the labels described the products as 'Natural' and/or 'Pure' or 'Nourishing.'" MTD at pg. 10. This is a deliberate misreading of the *Goldemberg* decision. The Court in *Goldemberg* determined that product labeling at issue was deceiving *before* ever discussing the deceptive nature of website or Facebook advertising. Thus, the Court first determined that the product labeling was independently misleading, separate and apart from any analysis of internet marketing. *Goldemberg*, 8 F. Supp at 480 (the Court cannot hold as a matter of law that *the product labels* are not misleading to a reasonable consumer.") (emphasis added). Moreover, the Court did not in any way focus on the fact that Product advertising contained the words "Pure" or "Nourishing." Defendant cannot, in good faith, conclude that the inclusion of those two terms are what tipped the scales in favor of the plaintiff when the court in *Goldemberg* was rendering its motion to dismiss decision. *Goldemberg*, thus, remains a highly persuasive and apposite ruling which completely undercuts Defendant's position.

Another similar matter is *Paulino v. Conopco*, Inc., No. 14-CV-5145 (JG)(RML), 2015 U.S. Dist. LEXIS 108165, at *9 (E.D.N.Y. Aug. 17, 2015), where plaintiff alleged that defendant misled

consumers about the ingredients of its shampoos, conditioners, body washes, body lotions, and other personal care products sold under the "Suave NATURALS" brand name because the products contained the representation "NATURALS" when in fact they contain unnatural and synthetic ingredients. 2015 U.S. Dist. LEXIS 108165, at *1. While upholding plaintiff's claims under NY GBL, the court explained:

> At this stage, the difference between the plural 'Naturals' and the descriptive 'Natural' is too elusive to require dismissal. That the label makes no explicit claim of being 'All Natural,' '100% natural,' or 'free from synthetics' is beside the point. A reasonable juror could reach the conclusion that the label 'Naturals' means that the product is at least mostly comprised of natural ingredients.

*Id.* at *14; *see also Morales v. Unilever U.S., Inc*., No. 13-CV-2213 (WBS)(EFB), 2014 U.S. Dist. LEXIS 49336 at *7 (E.D. Cal. Apr. 9, 2014) ("The court therefore cannot conclude at this stage of the litigation that a reasonable consumer would not be misled by the term 'natural' or 'Naturals.'"); *Sitt v. Nature's Bounty, Inc.*, No. 15-cv-4199 (MKB), 2016 U.S. Dist. LEXIS 131564, *43 (E.D.N.Y. Sept. 26, 2016) ("Although Defendants are correct that these representations do not promise that the Product is "all" or "100%" natural, a reasonable consumer could assume that the Product contains only natural ingredients."); *Jou v. Kimberly-Clark Corp*., No. C-13-03075 (JSC), 2013 U.S. Dist. LEXIS 173216, at *26 (N.D. Cal. Dec. 10, 2013) ("Whether one labels a product 'natural' or 'all natural,' the same plausible inference can be drawn — that the product is natural, meaning it is not made with any non-natural ingredients. While the use of 'all' in 'all natural' may make the inference *even more* plausible than the inference arising from the use of just 'natural,' the use of 'natural' still provides the plausible inference required to defeat a Rule 12(b)(6) motion." (emphasis in original)).

In fact, even at the summary judgment phase, Courts have ruled that the question of whether or not a natural representation is deceiving is a question of fact not to be determined as a

matter of law.  Judge  Brian Cogan denied a motion for summary judgment in a "natural" labeling case.  *See Luib v. Henkel Consumer Goods, Inc.*, 2018 U.S. Dist. LEXIS 18598 (E.D.N.Y. Feb. 5, 2018).  There, the defendant was a manufacturer of laundry detergent with the label "Natural Elements" and moved for summary judgment arguing that no reasonable consumer could be deceived by the labeling because a large percentage of the ingredients were natural, and the synthetic ingredients were disclosed on the back label of the products.  Judge Cogan disagreed, holding that "[w]hether or not the 'Natural Elements' label is materially misleading turns on whether a factfinder determines that a reasonable person would be misled by this label into thinking that the Products contain no synthetic elements . . . I cannot say that it would unreasonable as a matter of law for a factfinder to come out one way or the other on this issue, and thus the inquiry is a factual one."  *Id* at * 6.

The cases cited by Defendant to support its motion to dismiss are all inapposite.  Defendant cites to *Axon v. Florida's Nat. Growers, Inc.*, 813 F. App'x 701, 705 (2d Cir. 2020) as an instance where the Second Circuit ruled that "'the use of the term 'natural' in Defendant's brand name . . . appears nowhere else on Defendant's products or packaging' and therefore the plaintiff had not plausibly alleged that a reasonable consumer would read the product label to mean '100% natural.'"  MTD at pg. 9 (quoting *Axon*, 813 F. App'x at 703).  Yet, Defendant omits crucial details, which are discerned from a review of both the Second Circuit and trial court rulings.  In *Axon*, it was alleged that the term "natural" on Florida's Natural orange juice was misleading because the juice contained "trace amounts of glyphosate, an herbicide used to kill weeds."  *Axon v. Citrus World, Inc*., 354 F. Supp. 3d 170, 173 (E.D.N.Y. Dec. 10, 2018).  At the trial court level, Judge Allyne Ross dismissed that case, finding that herbicide use is "widespread" and, as such, it is "implausible that a reasonable consumer would believe that a product labeled ['Florida's Natural']

could not contain a trace amount of glyphosate that is far below the amount' deemed tolerable by the FDA." *Id*. at 183.  However, Judge Ross noted that it would be "*far more misleading* to call a product 'natural' when the defendant has introduced unnatural ingredients than it is to call a product 'natural' when it contains trace amounts of a commonly used pesticide introduced early in the production process." *Id*. (emphasis added).  Thus, the *Axon* decision is of no help to Defendant.

Defendant also cites to *Mustakis v. Chattem, Inc*. No. 20-CV-5895, 2022 U.S. Dist. LEXIS 45070, at *1 (E.D.N.Y. Mar. 9, 2022).  In *Mustakis*, the plaintiff alleged that the marketing of "Selsun Blue Naturals" shampoo was misleading due it its inclusion of synthetic ingredients. Judge Gary R. Brown dismissed that action based on the fact that "the front label clearly states that the Product contains 'Salicylic acid 3%' directly besides the words 'Antidandruff Shampoo' in font that is the same size, style, color and visual prominence." *Id*. at *6.  There is no analogous allegation in the instant matter, as none of Defendant's Products are alleged to have conspicuously alerted the consumer to the inclusion of synthetic ingredients on the front label.  When faced with a fact pattern that more closely resembles the instant matter in *Gold v. Eva Naturals,* Judge Brown *denied* a motion to dismiss.  In *Gold*, Judge Brown ruled that the plaintiff stated valid N.Y. GBL claims where "[a]lthough the brand name 'Eva Naturals' is prominently displayed on product labels, the ingredient list purportedly reveals a number of synthetic ingredients."  *Gold v. Eva Naturals, Inc.*, No. 21-CV-2842 (GRB)(AYS), 586 F. Supp. 3d 158, 160 (E.D.N.Y. 2022).

In sum, the case law dictates that Defendant's labeling of its products as "Naturals," in addition to its use of the term "non-gmo" creates the false representation that its products are free from synthetic ingredients.  Here, Plaintiff has plausibly alleged that consumers would be deceived by Defendant's advertisement as Courts have consistently determined that "[i]t is not unreasonable

as a matter of law for a consumer to expect that a product labeled 'natural' to contain ***only natural***, and not synthetic ingredients." *Grossman v. Simply Nourish Pet Food Co.* LLC, 516 F. Supp. 3d 261, 279-80 (E.D.N.Y. 2021) (emphasis added); *see also Petrosino v. Stearn's Prod., Inc.*, No. 16-cv-7735 (NSR), 2018 U.S. Dist. LEXIS 55818 at *7 (S.D.N.Y. Mar. 30, 2018) ("[A] reasonable consumer acting reasonably very well could be misled because they could conclude that the 'natural' label on the cosmetics means that they are made with all natural products"); *Segedie*, 2015 U.S. Dist. LEXIS 60739, at *29 ("It is not unreasonable as a matter of law to expect that a product labeled "natural" or "all natural" contains only natural ingredients.).

Accordingly, Defendant's motion to dismiss must be denied.

**B. Plaintiff has alleged a cognizable injury under GBL §§ 349 and 350.**

Defendant also argues the Plaintiff failed to sufficiently allege she suffered an injury. Plaintiff validly pleads that she incurred damages by way of a "price premium theory." As recently explained by the Second Circuit, "[o]ne method of demonstrating actual injury in the consumable goods context is by showing that the plaintiff paid a 'price premium'—that is, as a result of the defendant's deception, the plaintiff paid more for a product than he otherwise would have." *Shaya Eidelman v. Sun Prods. Corp.*, No. 21-1046-cv, 2022 U.S. App. LEXIS 15480, at *2-3 (2d Cir. 2022). There is a vast body of case law in this Circuit applying the price premium theory of damages to GBL matters involving deceptive "natural" representations. *See e.g., Barton v. Pret A Manger (USA) Ltd.*, 535 F. Supp. 3d 225, 244 (S.D.N.Y. 2021) (plaintiff alleged in the complaint that "'[p]laintiff and the New York Subclass Members . . . paid a premium for products that were—contrary to [d]efendant's representations—not 'Natural.' Accordingly, [p]laintiff and the New York Subclass Members received less than what they bargained and/or paid for.' Therefore, [p]laintiff has adequately pleaded that she suffered an injury."); *Segedie*, 2015 U.S. Dist. LEXIS

11

60739 at *31 ("Plaintiffs have also adequately alleged injury by claiming that they paid a price premium that they would not have paid if the products were not labeled 'natural' or 'all natural.'"); *Mason v. Reed's Inc.*, 18-cv-10826 (JGK), 2021 U.S. Dist. LEXIS 16556 at *4-5 (S.D.N.Y. Jan. 28 2021) (finding a cognizable injury under Sections 349 and 350 of the GBL where "the plaintiff allege[d] injury in that she paid a price premium for the product that she thought was all natural and without preservatives").

In this case, Plaintiff alleges in multiple places in the Complaint that she and other class members paid a price premium, or more than she would have otherwise been willing to pay, because of Defendant's false, misleading, and deceptive representations and that she and other class members received a product that was worth less than what was paid.  Plaintiff alleges that she and the Class Members "paid for Products that are natural but received Products that are not natural."  Complaint ¶ 24.  Plaintiff also sufficiently alleges that "consumers are willing to pay, and have paid, a premium for products branded 'natural' over products that contain synthetic ingredients" supported by the fact that in 2015, "sales of natural products grew 9.5% to $180 billion" Complaint at ¶ 5  Thus, Plaintiff contends that the Products she received were "worth less than the Products for which they paid."  Complaint at ¶ 24.  These allegations are more than enough to establish an injury pursuant to a price premium theory of damages.

## II.    PLAINTIFF STATED VALID CLAIMS FOR BREACH OF EXPRESS WARRANTY

"New York breach of express warranty claims require (i) a *material statement* amounting to a warranty; (ii) the buyer's *reliance* on this warranty as a basis for the contract with his immediate seller; (iii) the *breach* of this warranty; and (iv) injury to the buyer *caused* by the breach." *Avola v. Louisiana–Pacific Corp.,* 991 F.Supp.2d 381, 391 (E.D.N.Y.2013) (citing *CBS Inc. v. Ziff–Davis Pub. Co.,* 75 N.Y.2d 496, 554 N.Y.S.2d 449, 553 N.E.2d 997, 1000–01 (1990)).

The Complaint alleges that Defendant advertised and marketed the Products with the "Natural" warranty and statements. ECF No. 1 ¶¶ 1, 17, 21, 24. Plaintiff alleges she relied upon these representations, *Id.* ¶¶ 3, 19, 57, 68, and such representations were false because the Products contain synthetic ingredients. *Id.* ¶¶ 2, 6, 7, 14, 71. Plaintiff would have paid less for the Nordic Naturals Nordic Omega-3 Gummies, or would not have purchased the product at all, had she known the truth about the Products, i.e. that the Products contain synthetic ingredients and are not "Natural." *Id.* ¶ 30. Nothing more is required at this stage for Plaintiff's breach of express warranty claim.

Defendant argues that Plaintiff's breach of express warranty claim should be dismissed because the Complaint identifies no express promise that the Products are "all natural" or "100% natural." MTD at 18-19. As detailed in Plaintiff's Complaint, the issue is whether the "Naturals" representation on the Products' label could reasonably lead consumers to believe that the Products are in fact natural. Importantly, this is a question of fact for a jury to decide. *See Singleton v. Fifth Generation, Inc.*, No. 515CV474BKSTWD, 2016 U.S. Dist. LEXIS 14000 at *11 (N.D.N.Y. Jan. 12, 2016); *Ault v. J.M. Smucker Co.*, No. 13 CIV 3409 PAC, 2014 U.S. Dist. LEXIS 67118 at *6 (S.D.N.Y. May 15, 2014) (ruling that the plaintiff alleged actionable warranty where "it cannot be said that a reasonable consumer cannot interpret 'All Natural' as a factual claim about Crisco oil"); *Goldemberg*, 8 F. Supp. 3d at 483.

Defendant also improperly asserts that the Products' "Nordic Naturals" label cannot be considered a warranty since "a tradename is not a warranty." MTD at 18. Defendant is incorrect, and courts have held that breach of express warranty claims can be based on tradenames appearing on product labels. *Silva v. Smucker Natural Foods, Inc.*, 2015 U.S. Dist. LEXIS 122186 (E.D.N.Y. Sept. 14, 2015), (rejecting defendant's argument that, as a matter of law, no reasonable consumer

could be misled by "Natural Brew," which is a trademarked brand name for root beer.); *Brady v. Bayer Corp.,* 26 Cal. App. 5th 1156, 1178, 237 Cal. Rptr. 3d 683, 700 (2018), (holding that consumers who purchased multivitamin gummies under brand name "One A Day," stated a proper breach of express warranty claim based on the product's label because the daily serving was actually double what the product's label and brand name implied); *Ackerman v. Coca-Cola Co.*, No. CV-09-0395 (JG), 2010 U.S. Dist. LEXIS 73156 at *15 (E.D.N.Y. Jul. 21, 2010) ("product names such as 'vitaminwater' can be deceptive in that such names may mislead consumers into believing the listed ingredients are the sole components of a beverage."). Based on the foregoing, Defendant's motion to dismiss Plaintiff's breach of express warranty claim should be denied because the claim is adequately pled, and Defendant's arguments hinge on a question of fact that cannot properly be decided at this stage of litigation.

### III.    PLAINTIFF HAS STANDING TO ASSERT CLAIMS AS TO EACH OF THE PRODUCTS.

Defendant argues Plaintiff lacks standing to assert claims regarding Products she did not purchase (MTD at 14-16), but "the appropriate time to consider whether Plaintiffs can bring claims on behalf of purchasers of all of the [products] is at the class certification stage, not on a motion to dismiss." *Quinn v. Walgreen Co.*, 958 F. Supp. 2d 533, 542 (S.D.N.Y. 2013); *see also Hidalgo v. Johnson & Johnson Consumer Companies, Inc.*, 148 F.Supp.3d 285, 292 (S.D.N.Y. 2015) (explaining Article III standing is a separate issue from that of class standing); *Ault*, 2014 U.S. Dist. LEXIS 67118 at *7; *In re Frito–Lay N. Am., Inc. All Nat. Litig.*, 12-MD-2413 (RRM)(RLM), 2013 U.S. Dist. LEXIS 123824 at *12 (E.D.N.Y. Aug 29, 2013) (explaining that "because plaintiffs have satisfied the Article III standing inquiry, their ability to represent putative class members who purchased products plaintiffs have not themselves purchased is a question for a class certification motion."). Plaintiff has satisfied the Article III standing requirement, and "concerns

14

regarding the specific differences between the products can be addressed at the class-certification stage." *Rivera v. S.C. Johnson & Son, Inc*., No. 20-CV-3588 (RA), 2021 U.S. Dist. LEXIS 183759 at *9 (S.D.N.Y. Sept. 24, 2021). Moreover, the prevailing view in the Second Circuit is that class representatives have standing to assert claims for class products they did not purchase when two conditions are met: (1) the products they did not purchase are substantially similar to the products that they did purchase; and (2) the alleged misrepresentation is the same. *Id.* (*citing de Lacour v. Colgate-Palmolive Co*., 338 F.R.D. 324, 335 (S.D.N.Y. 2021); *Grossman v. Simply Nourish Pet Food Co. LLC*, 516 F. Supp. 3d 261, 277 (E.D.N.Y. 2021); *Kurtz v. Kimberly-Clark Corp.*, 321 F.R.D. 482, 544 (E.D.N.Y. 2017); *Buonasera*, 208 F. Supp. 3d at 563.

The first condition is satisfied because the purchased Product (Nordic Naturals Omega-3 Gummies) is substantially similar to the unpurchased Products: (1) all the Products are marketed and sold as dietary supplements; (2) each Products' label contains the challenged representation of "Natural;" and (3) each of the Products contain synthetic ingredients. ECF No. 1 ¶ ¶ 1, 29. The second condition is satisfied because the alleged misrepresentation is the same for every Product, and Defendant has not "made different advertising claims for each product." MTD at 19 (*citing DiMuro v. Clinique Lab'ys, LLC*, 572 F. App'x 27, 29 (2d Cir. 2014), which is inapplicable). "Natural" is uniformly misleading because each and every Product contains synthetic ingredients that do not render them "Natural" despite the Products' labels and Defendant's representations. *Id.* ¶ 1. Accordingly, Plaintiff has satisfied both requirements and has standing with respect to each of the Products.

Plaintiff has alleged that every Product contains synthetic ingredients, and—contrary to Defendant's assertion—Plaintiff need not demonstrate that the Products contain identical ingredients because this fact is not dispositive when determining whether allegations for non-

purchased products are sufficiently similar to the purchased products. *See Buonasera*, 208 F. Supp. 3d at 563 ("Although the unpurchased products may contain different ingredients compared to the purchased products, the Court finds that the Amended Complaint adequately alleges that the misrepresentation claimed with respect to the unpurchased products is sufficiently similar to the misrepresentation for the purchased products."); *de Lacour v. Colgate-Palmolive Co.*, 338 F.R.D. 324, 335–36 (S.D.N.Y. 2021) ("But the fact that the deodorant and toothpaste products at issue contain different ingredients is not dispositive, particularly when the sole alleged misrepresentation—that each product is "natural"—is the same…[i]n light of the above, the Court holds that each named plaintiff has class standing with respect to the 17 deodorant products and 34 toothpaste products identified in the list of products included in this action."). Moreover, Defendant's reliance on *DiMuro* is futile because that case can be distinguished on several grounds.

A plaintiff in a putative class action has class standing if "he plausibly alleges (1) that he personally has suffered some actual. . . injury as a result of the putatively illegal conduct of the defendant. . . and (2) that such conduct implicates the same set of concerns as the conduct alleged to have caused injury to other members of the putative class by the same defendants[.]" *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co*., 693 F.3d 145, 162 (2012) (internal citations omitted). "Whether that conduct implicates the same set of concerns for distinct sets of plaintiffs, however, will depend on the nature and content of the specific misrepresentation alleged." *Id.* (emphasis added). *Buonasera,* 208 F. Supp. 3d at 563, is particularly instructive because the defendant in that case argued the products were not sufficiently similar since they contained different ingredients. The Court ruled that the plaintiff had class standing for unpurchased products despite the products having different ingredients. *Id.* The court reasoned:

> First, Buonasera has alleged injury by his purchase of the two hair care products that were allegedly misrepresented. Regarding the second requirement, "the nature and content of the specific misrepresentation alleged," *NECA-IBEW Health & Welfare Fund*, 693 F.3d at 162, is similar with respect to the unpurchased products in that Buonasera alleges that these products were also labeled as "all natural," "natural," "plant-based," and contain "no harsh chemicals." Although the unpurchased products may contain different ingredients compared to the purchased products, *see, e.g., DiMuro*, 572 F. App'x at 29, the Court finds that the Amended Complaint adequately alleges that the misrepresentation claimed with respect to the unpurchased products is sufficiently similar to the misrepresentation for the purchased products. *Id.*

Here, like *Buonasera*, the nature and content of the specific misrepresentation alleged is the same for all Products (purchased and unpurchased), namely that the Products were all labeled as "natural" although they all contain non-natural, synthetic ingredients. This is all that is necessary to establish class standing for all of Defendant's Products. *See Grossman*, 2021 U.S. Dist. LEXIS 15864, at *18 n.6 (class standing is appropriate because "the Products here contain substantially similar 'advertising claims' and raise 'nearly identical' concerns regarding the validity of defendants' 'natural' representation."); *compare with DiMuro*, 572 F. Appx. 27 (no class standing because each of the products have different ingredients "and Clinique made different advertising claims for each product."). Defendant does not argue—nor can it—that qualitatively different advertising claims were made in connection with the different Products. This is because, as the Complaint plainly shows, the advertising claim at issue is the claim that the Products are "naturals"—notwithstanding the existence of synthetics in each of the products. Thus, Plaintiff has standing at this stage for all products listed in the Complaint and Plaintiff should be permitted to proceed with respect to all Products included in this action.

**IV.    IF THIS COURT IS INCLINED TO GRANT DEFENDANT'S MOTION, LEAVE SHOULD BE GRANTED TO PERMIT PLAINTIFF TO REPLEAD**

Though Plaintiff contends her pleadings state valid causes of action against Defendant, should this Court be inclined to grant Defendant's motion to dismiss, Plaintiff should be allowed to replead.  "[T]his circuit strongly favors liberal grant of an opportunity to replead after dismissal of a complaint under Rule 12(b)(6)."  *Noto v. 22nd Century Grp., Inc*., 35 F.4th 95, 107 (2d Cir. 2022) (quoting *Porat v. Lincoln Towers Cmty. Ass'n*, 464 F.3d 274, 276 (2d Cir. 2006) (per curiam)).

In the event this Court finds that Plaintiff's claims against Defendant fail to allege valid claims under GBL §§ 349 and 350, Plaintiff intends to replead to add factual allegations further detailing the context of Defendant's deceptive marketing and the contours and specifics of Plaintiff's price premium theory of damages.  As the Second Circuit has noted, providing liberal leave to amend is appropriate after dismissal because "[w]ithout the benefit of a ruling, many a plaintiff will not see the necessity of amendment or be in a position to weigh the practicality and possible means of curing specific deficiencies."  *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015).

Accordingly, should this Court be inclined to grant Defendant's motion to dismiss, it should instead grant Plaintiff an opportunity to replead.

## <u>CONCLUSION</u>

For the foregoing reasons, Defendant's Motion should be denied in its entirety.


Dated: March 27, 2023

Respectfully submitted,

**THE SULTZER LAW GROUP P.C.**

By:  _/s/ Philip J. Furia_
          Philip J. Furia

Jason Sultzer, Esq.
Philip J. Furia, Esq.
85 Civic Center Plaza, Suite 200
Poughkeepsie, NY 12601
Tel: (845) 483-7100
Fax: (888) 749-7747
sultzerj@thesultzerlawgroup.com
furiap@thesultzerlawgroup.com

**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN PLLC**
Nick Suciu III (*pro hac vice forthcoming*)
6905 Telegraph Rd., Suite 115
Bloomfield Hills, MI 48301
Telephone: (313) 303-3472
nsuciu@milberg.com

**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN PLLC**
Gary M. Klinger (admitted *pro hac vice*)
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Phone: 866.252.0878
gklinger@milberg.com

*Attorneys for Plaintiff Natalie Orrico*
