UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
NATALIE ORRICO,

                Plaintiff,                    **MEMORANDUM & ORDER**

    -against-                               22-cv-03195-NRM-CLP

NORDIC NATURALS, INC.,

                Defendant.
-----------------------------------------------------------------X

NINA R. MORRISON, United States District Judge:

Plaintiff Natalie Orrico ("Plaintiff") brings this putative class action against defendant Nordic Naturals, Inc. ("Defendant"), alleging that it misled consumers about the ingredients of vitamins and supplements sold under the "Nordic Naturals" brand name (the "Products"). Specifically, Plaintiff alleges that Defendant violated New York laws precluding deceptive business practices, false advertising, and breach of express warranty, since the Products' packaging contains the representation "Naturals," when in fact the Products contain synthetic ingredients.

Defendant moves to dismiss the Complaint. For the reasons stated below, the motion is DENIED in full.

    **I.    Background**

The following facts are taken from the Complaint and are accepted as true for the purposes of deciding the motion. Defendant is a California Corporation that manufactures, markets, advertises, and distributes the Products—including many types of vitamins and supplements, *see* Compl., ECF No. 1, ¶¶ 1, 6—in the United States. *Id.* ¶¶ 2, 31. Plaintiff, a citizen of New York who resides in this District,

purchased Defendant's "Nordic Naturals Omega 3 Gummies" for her personal use. *Id.* ¶¶ 28–29. Plaintiff purchased the product "on August 24, 2021 for a purchase price of $19.51 on Amazon.com." *Id.* ¶ 29. Plaintiff alleges that, had Defendant "not made the false, misleading, and deceptive representation that the Products were 'Natural,' Plaintiff would not have been willing to pay the same amount, and, consequently, she would not have been willing to purchase the product." *Id.* ¶ 30. She sues on behalf of a putative class of Defendant's customers. *Id.* ¶¶ 32–33.

Plaintiff provides a list of Defendant's products, all of which are identified with the brand name "Nordic Naturals" on the top of the front label. *See id.* ¶¶ 1, 6. She alleges that, despite being marketed under the brand name "Nordic Naturals," all of the listed Products in fact contain one or more of the following synthetic ingredients: gelatin, soy lecithin, maltodextrin, ascorbic acid, beta-carotene, riboflavin, niacin, thiamine mononitrate, microcrystalline cellulose, citric acid, pectin, sodium citrate, folic acid, silica, potassium chloride, stearic acid, silicon dioxide, sorbitol, malic acid, xylitol, magnesium stearate, and/or glycerin. *Id.* ¶¶ 6–7. Plaintiff alleges that consumers "lack the meaningful ability to test or independently ascertain or verify whether a product is natural" and "would not know the true nature of the ingredients merely by reading the ingredients label." *Id.* ¶ 11.

Plaintiff alleges that the "prominent location" of the word "Naturals" on the product label is a deceptive, false, and misleading representation of the Products' true character, *i.e.*, that they actually contain synthetic ingredients. *Id.* ¶¶ 15, 17, 20.

2

As a result, Plaintiff alleges that she and putative class members were injured by (1) paying a "sum of money for Products that were not what Defendant represented," (2) paying "a premium price" for those Products, (3) being "deprived of the benefit of the bargain because the Products they purchased were different from what Defendant warranted" and "had less value than what Defendant represented," (4) having "[i]ngested a substance that was of a different quality than what Defendant promised," and (5) were consequently "denied the beneficial properties of the natural supplement Defendant promised." *Id.* ¶ 22; *see id.* ¶¶ 24–25.

On May 31, 2022, Plaintiff commenced this putative class action in this Court. Plaintiff asserts subject matter jurisdiction under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), asserting claims on behalf of herself and all consumers who purchased Defendant's Products. *See* Compl. ¶¶ 26, 32–33. Plaintiff seeks damages,[1] claiming violations of the New York General Business Law §§ 349 and 350, and breach of express warranty under the laws of New York and all fifty states.

## II. Legal Standard

When deciding a motion to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief can be granted, the district court must (1) accept as true all the plaintiff's factual allegations and (2) draw all reasonable inferences in the plaintiff's favor. *See Teichmann v. New York*, 769 F.3d 821, 825 (2d Cir. 2014). A complaint must, however, plead "sufficient factual matter . . . to 'state a claim to

---

[1] Plaintiff's complaint also seeks injunctive relief, *see* Compl. at 104 ("Wherefore" clauses), but she voluntarily withdrew her request for injunctive relief without prejudice in her response to Defendant's request for a pre-motion conference on its motion to dismiss. *See* ECF No. 13 at 1 n.1.

3

relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (explaining that the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully").

At the motion to dismiss stage, the Court accepts as true the well-pled factual allegations for purposes of deciding the motion to dismiss. *See N.Y. Pet Welfare Ass'n, Inc. v. City of New York*, 850 F.3d 79, 86 (2d Cir. 2017). However, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Pension Benefit Guar. Corp. ex rel. St. Vincent Cath. Med. Ctr. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 717 (2d Cir. 2013) (citations omitted). In considering a motion to dismiss for failure to state a claim, courts "may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010).

### III. Analysis

#### A. N.Y. Gen. Bus. Law §§ 349 and 350

New York's General Business Law prohibits the use of "[d]eceptive acts or practices" and "[f]alse advertising" "in the conduct of any business, trade or commerce." N.Y. Gen. Bus. Law §§ 349, 350. To state a claim under either statute, "a plaintiff must allege (1) that defendant was engaged in a 'consumer-oriented' business practice or act; (2) the act or practice was misleading in a material respect;

4

and (3) the plaintiff was injured as a result." *Silva v. Smucker Nat. Foods, Inc.*, No. 14-cv-6154, 2015 WL 5360022, at *9 (E.D.N.Y. Sept. 14, 2015) (quoting *Spagnola v. Chubb Corp.*, 574 F.3d 64, 74 (2d Cir. 2009)); *DeAngelis v. Timberpeg E., Inc.*, 858 N.Y.S.2d 410, 414 (3d Dep't 2008) (quoting *Andre Strishak & Assocs., P.C. v. Hewlett Packard Co.*, 752 N.Y.S.2d 400, 403 (2d Dep't 2002)). Courts apply an objective standard in determining whether acts or practices are materially deceptive or misleading to "a reasonable consumer acting reasonably under the circumstances." *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 647 N.E.2d 741, 745 (N.Y. 1995); *Andre Strishak & Assocs.*, 752 N.Y.S.2d at 403.

Accordingly, to survive a motion to dismiss, a plaintiff "must plausibly allege 'that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled'" by the relevant statements. *Jessani v. Monini N. Am., Inc.*, 744 F. App'x 18, 19 (2d Cir. 2018) (quoting *Ebner v. Fresh Inc.*, 838 F.3d 958, 965 (9th Cir. 2016)). And "in determining whether a reasonable consumer would have been misled by a particular advertisement, context is crucial." *Fink v. Time Warner Cable,* 714 F.3d 739, 742 (2d Cir. 2013). "Notably, whether an interpretation is unreasonable as a matter of law is generally reached at [the motion to dismiss] stage only where, for instance, a plaintiff's claims as to the impressions that a reasonable consumer might draw are 'patently implausible' or unrealistic." *Eidelman v. Sun Prods. Corp.*, No. 16-CV-3914, 2017 WL 4277187, at *4 (S.D.N.Y. Sept. 25, 2017) (quoting

5

*Stoltz v. Fage Dairy Processing Indus., S.A.*, No. 14-CV-3826, 2015 WL 5579872, at *20 (E.D.N.Y. Sept. 22, 2015)).

### i. Materially misleading conduct

Plaintiff alleges that the product name "Nordic Naturals," which Defendant features at the top of each Product's label, is misleading to a reasonable consumer because the products actually contain non-natural, synthetic ingredients. *See* Compl. ¶ 2. Defendant counters that no reasonable consumer would have been deceived by the brand name "Nordic Naturals" emblazoned at the top of each product label.

First, Defendant argues that the products are not labeled as "all natural" or "100% natural," and therefore no reasonable consumer would be deceived based on the presence of synthetic ingredients. Courts in this Circuit have rejected this argument, concluding that products labeled as "naturals" can be deceiving to consumers if they contain synthetic ingredients. *See Paulino v. Conopco, Inc.*, No. 14-CV-5145 (JG)(RML), 2015 WL 4895234, at *4–5 (E.D.N.Y. Aug. 17, 2015) (denying motion to dismiss claim as to "Suave Naturals" branding as to products that "contain primarily unnatural, synthetic ingredients"); *Goldemberg v. Johnson & Johnson Consumer Cos. Inc.*, 8 F. Supp. 3d 467, 471–72, 479–80 (S.D.N.Y. 2014) (denying motion to dismiss claim that Aveeno's line of "'Active Naturals' is deceptive because it conveys to consumers that Aveeno products are completely natural"); *cf. Sitt v. Nature's Bounty, Inc.*, No. 15-cv-4199, 2016 WL 5372794, at *14 (E.D.N.Y. Sept. 26, 2016) ("[T]he breadth of the representation that the 'relief' offered is

6

'natural' could lead a consumer to reasonably conclude that all ingredients are natural.");

Defendant appears to concede (as it must) that if the Products were labeled as "all natural" or "100% natural," they would be misleading to a reasonable consumer. *See, e.g.*, *Buonasera v. Honest Co.*, 208 F. Supp. 3d 555, 559 (S.D.N.Y. 2016) (denying motion to dismiss claim that shampoo labelled "all natural," "plant-based," and "no harsh chemicals ever!" violated §§ 349 and 350); *In re Frito-Lay N. Am., Inc. All Nat. Litig.*, No. 12-MD-2413 (RRM) (RLM), 2013 WL 4647512, at *1 (E.D.N.Y. Aug. 29, 2013) (same, for snacks labelled "all natural"); *Silva*, 2015 WL 5360022, at *1 (E.D.N.Y. Sept. 14, 2015) (same, for root beer labelled "[o]ur brew blends tradition and quality, naturally"); *Grossman v. Simply Nourish Pet Food Co.*, 516 F. Supp. 3d 261, 279–80 (E.D.N.Y. 2021) ("[P]laintiff plausibly alleged that a reasonable consumer viewing the Products' label may interpret the 'natural' claim to mean that the Products do not contain synthetic ingredients and that all of the Products' ingredients—including the 'added vitamins and minerals'—are natural.");.

Defendant attempts to distinguish these cases by arguing that a representation that the products are "Naturals" is not misleading in the way that a representation that the products are "all natural" or "100% natural" would be, and thus no reasonable consumer would be misled into thinking that Defendant's Products are free of synthetic ingredients. *See* Def.'s Mot. to Dismiss ("Def.'s Mot."), ECF No. 20-1, at 10–11. This argument relies on too fine a distinction to succeed at the motion to dismiss stage. *See Paulino*, 2015 WL 4895234, at *5 ("That the label makes no explicit claims of being 'All Natural,' '100% natural,' or 'free from

7

synthetics' is beside the point."); *see also Morales v. Unilever U.S., Inc.*, No. 13-cv-2213 (WBS) (EFB), 2014 WL 1389613, at *7 (E.D. Cal. Apr. 9, 2014) ("The court therefore cannot conclude at this stage of the litigation that a reasonable consumer would not be misled by the term 'natural' or 'Naturals.'"); *Petrosino v. Stearn's Prod., Inc.*, No. 16-cv-7735 (NSR), 2018 WL 1614349, at *7 (S.D.N.Y. Mar. 30, 2018) ("[T]he Court cannot find that it is unreasonable as a matter of law for a person to expect that a product labeled 'natural' contain[s] only non-synthetic ingredients."). Here, the Court agrees with the numerous other courts that have found this distinction unpersuasive at the motion to dismiss stage. Defendants have failed to show, as a matter of law, that while a reasonable consumer *would* be deceived by an "all natural" or "100% natural" representation, she would not be deceived by a prominent representation of "Naturals" on the label.[2]

Defendant points to *Randolph v. Mondelez*, No. 21-CV-10858, 2022 WL 953301 (S.D.N.Y. Mar. 30, 2022), but that case involved very different representations. There, the plaintiff challenged the product label for "stoned wheat thins" as deceptive, since the product did not contain stone-ground, whole-wheat flour. *Id.* at *4. The court held that the plaintiff had not satisfactorily alleged that a reasonable consumer "would interpret 'stoned wheat' to mean 'stoneground whole wheat.'" *Id.*; *see id.* at *1 ("The . . . Complaint nowhere makes factual allegations

---

[2] The Court is aware that in *Mustakis v. Chattem, Inc.*, a district court granted a motion to dismiss similar claims as to the product "Selsun Blue Naturals" because, although the product had the moniker "Naturals," it "predominantly display[ed], on both the front and back labels, the presence of a synthetic ingredient." No. 20-cv-5895, 2022 WL 714095, at *3 (E.D.N.Y. Mar. 9, 2022) (distinguishing *Paulino,* and *Goldemberg*).

8

that give rise to a plausible inference that consumers reasonably interpret the phrase 'stoned wheat' to mean that the crackers are made with whole wheat."). Here, no such logical leap is required—if the Products are labeled as "Naturals," it is a much more straightforward (and reasonable) inference for a consumer to conclude they are comprised entirely of natural ingredients. At the very least, the Court cannot conclude at this stage that, as a matter of law, no reasonable consumer would draw this inference.

Second, Defendant argues that the "back label discloses the presence of any synthetic ingredients," and therefore a reasonable consumer would not think "that Nordic Naturals' Products are entirely natural." Def.'s Mot. at 11.[3] However, the Second Circuit has concluded that "a reasonable consumer should not be expected to consult the Nutrition Facts panel on the side of the box to correct misleading information set forth in large bold type on the front of the box." *Mantikas v. Kellogg Co.*, 910 F.3d 633, 637 (2d Cir. 2018) ("Reasonable consumers should not be expected to look beyond misleading representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box." (alterations and citation omitted)). This is because, as the Second Circuit concluded, "reasonable consumers expect that the ingredient list contains more detailed information about the product that confirms other representations on the packaging." *Id.* But where the ingredient list contradicts a prominent

---

[3] Although the back label of the Product is not included in the Complaint, but rather attached as an exhibit to defendant's motion to dismiss, the Court may consider it because it is incorporated by reference in the complaint. *See* Compl. ¶ 6 (listing synthetic ingredients named on back label); *Bellin v. Zucker*, 6 F.4th 463, 473 (2d Cir. 2021); *see Mustakis*, 2022 WL 714095, at *1 n.2.

9

representation on the front label, an argument that a reasonable consumer should have looked at the ingredient list in order to correct that misimpression does not warrant dismissal. Indeed, in a similar context, courts have held that the "fact that the fine print on the back of the labeling could indicate to a consumer that other ingredients were not 'natural' does not render another conclusion so patently or objectively unreasonable so as to warrant dismissal as a matter of law." *Sitt*, 2016 WL 5372794 at *14.

This is particularly so where, as here, many ingredients in Defendant's Products, such as citric acid, pectin, or bovine gelatin, are ones that a reasonable consumer may believe are natural. A reasonable consumer may not be aware that these ingredients, with references to flora or fauna in their names, are actually synthetic. *See* Compl. ¶¶ 11–12 ("Discovering that the ingredients are not natural and are actually synthetic requires a scientific investigation and knowledge of chemistry beyond that of the average consumer."). Therefore, even if a consumer *were* to turn to the back label and see these ingredients, they may be no less in the dark as to whether the composition of Defendant's product is entirely "natural."

This case is therefore unlike *Hoffman v. Kraft Heinz Foods Co.*, where the court dismissed plaintiff's claim that the label of a "flavored liquid beverage concentrate" that stated "natural flavors with other natural flavor" was deceptive. 22-cv-397 (KMK), 2023 WL 1824795, at *1 (S.D.N.Y. Feb. 7, 2023). There, the court was working within a line of cases—commonly referred to within the Second Circuit as "the Vanilla Cases"—which "distinguish[] 'flavors' from 'ingredients' in food and beverage products" for the purpose of deceptive labeling analysis. *Id.* at *6.

10

Plaintiff had "conced[ed] that there are likely *some* natural flavors" and the back of the bottle listed "less than 2% of natural flavor." *Id.* at *7. Since at no point did the product proclaim it was "*only* filled with natural flavors," the court held a reasonable consumer would not be materially misled. *Id.* (emphasis in original). Defendant highlights the *Hoffman* court's statement that "consumers interested in the ingredients . . . will turn to the back side of the bottle that lists 'less than 2% of natural flavor," *id.*, arguing that the label "Nordic Naturals" was not materially misleading because the consumer here could also turn to the back of the label, which disclosed the presence of synthetics. Def.'s Mot. at 12–13.

However, as *Hoffman* made clear, the "Vanilla Cases established a distinct line of cases within the district courts in the Second Circuit, distinguishing 'flavors' from 'ingredients' in food and beverage products." 2023 WL 1824795, at *6. Here, Plaintiff does not challenge the source of flavoring in the Products, but instead the ingredients the products contain. Thus, the line of cases relied on in *Hoffman* relied on is not controlling. Indeed, *Hoffman* clarified that the case was distinct from *Mantikas*, which assessed whether a "reasonable consumer could be misled into believing that a particular ingredient (rather than specific flavors) exists inside of a product." *Hoffman*, 2023 WL 1824795, at *6 (citing *Mantikas*, 910 F.3d at 637). Moreover, in *Hoffman*, the back label clarified the general assertions made on the front label, rather than contradicting the front label. *Hoffman*, 2023 WL 1824795, at *7 ("[T]he only two representations that a reasonable consumer would see are two matching statements: that the Product contains 'natural flavors.'"). But here, the back label, which discloses the product's synthetic ingredients, may fairly be

11

read to contradict the "Naturals" representation on the front label.  Under *Mantikas*, "a reasonable consumer should not be expected to consult the Nutrition Facts panel" to "correct misleading information" advertised on the front label.  910 F.3d at 637.  The Court cannot conclude as a matter of law that reasonable consumers would not be deceived by this labeling.

Finally, Defendant argues that no reasonable consumer would be misled by a brand's name, as opposed to some other affirmative representation on the label. Def.'s Mot. at 14.  However, the Second Circuit has endorsed the approach taken by district courts that have considered brand names in context when evaluating such claims.  *See Axon v. Florida's Nat. Growers*, 813 F. App'x 701, 705–06 (2d. Cir. 2020) (affirming a grant of a motion to dismiss where the district court "did not conclude that a brand name can never be misleading, but merely performed the requisite objective reasonable consumer inquiry under the circumstances of the case").  And, indeed, courts in this district have held that brand names can be misleading to a reasonable consumer.  *Paulino*, 2015 WL 4895234, at *6 ("[P]laintiffs have sufficiently alleged that Conopco's 'Naturals' representations on the Products' labeling misled them into believing that Conopco's Products were natural . . . ."); *see Goldemberg*, 8 F. Supp. 3d at 479–80 ("The Court cannot hold as a matter of law that the product labels ["Active Naturals"] are not misleading to a reasonable consumer.").

Here, the "Nordic Naturals" brand name is the only representation on the front label as to whether the Products' ingredients are natural or artificial, and it is not contradicted by any other representation on the front label that the Products

12

contain synthetic ingredients. *Compare, e.g.*, *Mustakis v. Chattem*, No. 20-cv-5895 (GRB) (AYS), 2022 WL 714095, at *3 (E.D.N.Y. Mar. 9, 2022) (granting a motion to dismiss where the Product had "the moniker 'Naturals'" but "the Product . . . prominently displays, on both the front and back labels, the presence of a synthetic ingredient"). In this context, the Court cannot conclude that no reasonable consumer would interpret the brand name "Nordic Naturals" to indicate that Defendant's Products were, in fact, comprised entirely of natural ingredients.

The Second Circuit's unpublished decision in *Axon v. Florida's Naturals* does not counsel a different result. 813 F. App'x at 705. The Second Circuit affirmed the district court's dismissal of Plaintiff's claim that the brand name "Florida's Natural" was deceptive because the orange juice "contain[ed] trace amounts of glyphostate, an herbicide used to kill weeds that is not a natural ingredient." *Id.* at 703. The Second Circuit explained that it was "'not plausible to allege that a reasonable consumer would interpret the brand label . . . as meaning that the product contains no traces of glyphostate' as a result of the planting and cultivation of oranges in its product." *Id.* at 705 (quoting *Axon v. Citrus World*, 354 F. Supp. 3d 170, 183 (E.D.N.Y. 2018)). In *Axon*, there was no allegation that the orange juice contained synthetic ingredients, but only that they contained trace amounts of an herbicide used in the farming process. *Id.* at 703. Indeed, the district court noted that it "is far more misleading to call a product 'natural' when the defendant introduced unnatural ingredients than it is to call a product 'natural' when it contains trace amounts of a commonly used pesticide introduced early in the production process." *Axon*, 354 F. Supp. 3d at 183 (describing cases where "the defendant is accused of

13

introducing unnatural ingredients into a product labeled 'natural'" as "distinguishable"). The Second Circuit, in affirming, highlighted that glyphostate was a "contaminant" as opposed to an "ingredient," "bolster[ing] the conclusion that a reasonable consumer . . . would not make assumptions regarding the presence or absence of trace amounts of glyphostate." *Axon*, 813 F. App'x at 705.

The residual presence of trace amounts of herbicides used in fruit farming at issue in *Axon* is entirely different from the instant case, where Defendant consciously created and sold a Product that contained synthetic ingredients. *See Barton v. Pret A Manger (USA) Ltd.*, 535 F. Supp. 3d 225, 240 (S.D.N.Y. 2021) (distinguishing *Axon* on the ground that "there is a distinction between contaminants and synthetic substances included in a product as an ingredient," and there was "no allegation regarding the intentional addition of synthetic ingredients" in *Axon*).[4]

Accordingly, the Court cannot conclude as a matter of law at this stage that reasonable consumers would not be misled by Defendant's labeling their products as "Naturals." Plaintiff has adequately pled that Defendant's acts were "misleading in a material way." *Silva*, 2015 WL 5360022, at *9.

---

[4] Defendant further argues that "as a matter of common sense," a reasonable consumer would not believe that a "shelf-stable gummy" is entirely natural. Def.'s Mot. at 15. However, the court cannot conclude as a matter of law that no reasonable consumer could expect that these features could be achieved through natural ingredients alone. What a reasonable consumer would expect in this circumstance is a question of fact for the jury to decide. *Cf. Paulino*, 2015 WL 4895234, at *6 ("Reasonable consumers could very well expect that natural products might have natural color additives and whether [the defendant's] colors are not achievable in nature and whether an average consumer would know whether a vibrant color can be created with natural ingredients are questions of fact for the jury.").

14

### ii. Injury

Defendant argues that Plaintiff's N.Y. Gen. Bus. Law claims should be dismissed because she has not demonstrated she was injured as a result of the deceptive act. Def.'s Mot. at 16. Plaintiff alleges that she "paid a premium for the Products based upon their 'Natural' representation." Compl. ¶ 3; *see also id.* ¶¶ 22, 49, 57. It is true that Plaintiff does not allege how *much* of a premium she paid for the product she purchased, or what comparable products not marketed as "natural" might cost. However, courts in this circuit have found that such allegations are not necessary at the motion to dismiss stage to plausibly allege injury under N.Y. Gen. Bus. Law §§ 349 and 350. *Paulino*, 2015 WL 4895234, at *9 ("[T]he complaint alleges plaintiffs paid a price premium for the Products as a result of [Defendant's] misrepresentations. This is sufficient to state a claim under New York's consumer protection statutes."); *Ackerman*, 2010 WL 2925955, at *23 ("Injury is adequately alleged under GBL §§ 349 or 350 by a claim that a plaintiff paid a premium for a product based on defendants' inaccurate representation."); *Goldemberg*, 8 F. Supp. 3d at 482 ("[W]hile identifying the prices of competing products in the Complaint would strengthen Plaintiff's allegation of injury, the failure to do so is not fatal to Plaintiff's claim."); *Grossman*, 516 F. Supp. 3d at 278, 282 (finding plausible the plaintiff's allegations they "paid a premium for the Products" "caused plaintiff harm," denying motion to dismiss).

Defendant identifies one case, *Colella v. Atkins Nutritionals*, 348 F. Supp. 3d 120 (E.D.N.Y. 2018), that concludes differently, holding that where a plaintiff "pleaded no facts to support his assertion that [he] paid a premium price," his

15

allegations were "insufficient to identify a cognizable injury." *Id*. at 143. However, the Second Circuit spoke to this precise issue more recently in *Axon*, finding that a plaintiff's "failure to identify the prices of competing products to establish the premium that she paid is not fatal to her claim at this stage of the proceedings." 813 F. App'x at 704 (internal quotation marks and alterations omitted). Here, Plaintiff has plausibly alleged injury by stating that she paid a premium for the product she purchased. Although Plaintiff may need to show more to satisfy this requirement at summary judgment or trial, for the purpose of a motion to dismiss, Plaintiff's allegations are sufficient.

Accordingly, Defendant's motion to dismiss Plaintiff's N.Y. Gen. Bus. Law claims is denied.

### B. Breach of Express Warranty

Plaintiff's third cause of action alleges that Defendant breached an express warranty in violation of New York Law by making a "written affirmation of fact promising and representing that the Products are 'Natural.'" Compl. ¶ 65.

Under New York law, to plead a breach of an express warranty, a plaintiff must allege "an affirmation of fact or promise by the seller, the natural tendency of which was to induce the buyer to purchase." *Sitt*, 2016 WL 5372794, at *15 (unintended pun in original) (quoting *Factory Assocs. & Exps., Inc. v. Lehigh Safety Shoes Co.*, 382 F. App'x 110, 111–12 (2d Cir. 2010) (summary order)); *Grossman*, 516 F. Supp. 3d at 282. "Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or

16

promise." N.Y. U.C.C. § 2-313(1)(a). Further, "[a]ny description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description." *Id.* § 2-313(1)(b); *see also Sci. Components Corp. v. Sirenza Microdevices, Inc.*, 399 F. App'x 637, 639 (2d Cir. 2010).

"Generalized statements by a defendant, however, do not support an express warranty claim if they are 'such that a reasonable consumer would not interpret the statement as a factual claim upon which he or she could rely.'" *Paulino*, 2015 WL 4895234, at *2 (quoting *Hubbard v. Gen. Motors Corp.*, No. 95-CV-4362, 1996 WL 274018, at *6 (S.D.N.Y. May 22, 1996)); *Sitt*, 2016 WL 5372794, at *15.

"There is authority within this Circuit for the proposition that labeling a product 'Naturals' can constitute an actionable warranty under New York law." *Paulino*, 2015 WL 4895234, at *3 (concluding that labeling a product "Suave NATURALS" constituted an express warranty); *see Ault v. J.M. Smucker Co.*, No. 13-cv-3409 (PAC), 2014 WL 1998235, at *7 (S.D.N.Y. May 15. 2014) ("Defendant's labeling of Crisco Oil as 'All Natural' is an actionable warranty."); *Goldemberg*, 8 F. Supp. 3d at 482–83 (allowing breach of warranty claim based on "Active Naturals" labeling to proceed). Indeed, given that a reasonable consumer would likely conclude that the Products were "natural" based on Defendant's labeling them as "Naturals," as analyzed *supra*, the Court similarly concludes that Plaintiff's complaint satisfies the breach of express warranty standard. *See Paulino*, 2015 WL 4895234, at *3 ("I cannot say that a reasonable consumer could not interpret 'Naturals' to be a factual claim about the Suave NATURALS line of products.").

## C. Standing

Defendant argues that Plaintiff lacks standing to assert claims based on products that she herself did not purchase. Def.'s Mot. at 19–20. A plaintiff in a putative class action may assert claims based on products she did not purchase if she "plausibly alleges (1) that [she] personally has suffered some actual . . . injury as a result of the putatively illegal conduct of the defendant . . . and (2) that such conduct implicates the same set of concerns as the conduct alleged to have caused injury to other members of the putative class by the same defendants." *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145, 162 (2d Cir. 2012) (citations omitted). Courts have acknowledged that, where a consumer plaintiff raises "a 'set of concerns' nearly identical to that of a purchaser of another" product, she can assert standing over products that they did not purchase. *DiMuro v. Clinique Labs., LLC*, 572 F. App'x 27, 29 (2d Cir. 2014) (summary order) (quoting *NECA*, 693 F.3d at 163); *see Buonasera*, 208 F. Supp. 3d at 561–63.

Defendant argues that Plaintiff does not meet this standard, since the products Plaintiff did not purchase are "comprised of different ingredients," and the product that she purchased "contains only four of the allegedly twenty two synthetic ingredients." Def.'s Mot. at 19. Defendant also argues that the unpurchased products include not only gummies (which Plaintiff purchased), but also capsules and soft gels. *Id.*

The Court is unpersuaded by these arguments. Plaintiff raises the identical allegation as to each of the Products identified: that the label holds them out to be "Naturals," but that they in fact contain synthetic ingredients. Even if the specific synthetic ingredients are different, the allegations are the same. *Buonasera*, 208 F.

18

Supp. 3d at 563 ("Although the unpurchased products may contain different ingredients compared to the purchased products, the . . . misrepresentation claimed with respect to the unpurchased products is sufficiently similar to the misrepresentation for the purchased products."); *Gold v. Eva Nats., Inc.*, 586 F. Supp. 3d 158, 162 (E.D.N.Y. 2022) (finding standing with respect to unpurchased products where "[e]ach of the twenty-five products prominently featured the brand name 'Eva Naturals' on the product label although in reality these products allegedly contain synthetic ingredients").  This is true regardless of the form the supplements took—capsule, gummy, or soft gel.  Discovery may reveal differences as to the nature of the alleged misrepresentations—for example, with respect to the reasonable consumer's expectation of each of these products or defendant's advertising claims with respect to the different products.  *See Gold*, 586 F. Supp. 3d at 162; *cf. DiMuro*, 572 F. App'x at 29.  However, Plaintiff has alleged sufficient facts to survive a motion to dismiss her class action allegations for lack of standing.

## IV. Conclusion

For the foregoing reasons, Defendant's motion to dismiss Plaintiff's complaint is DENIED in full.

SO ORDERED.

                                         */s/ Nina R. Morrison*
                                         NINA R. MORRISON
                                         United States District Judge

Dated:       September 28, 2023
              Brooklyn, New York