# EXHIBIT C

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
### Eastern District of New York

| | | |
|---|---|---|
| Natalie Orrico | ) | |
| _Plaintiff_ | ) | |
| v. | ) | Civil Action No. 1:22-cv-03195 |
| Nordic Naturals, Inc. | ) | |
| _Defendant_ | ) | |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:
Amazon.com, Inc.
_____
_(Name of person to whom this subpoena is directed)_

☑ _Production:_ **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:
See attached as "Attachment A" Definitions, Instructions, and Documents Requested.

| Place: Gibbons P.C., One Gateway Center, Newark, NJ 07102, or via email at clabruno@gibbonslaw.com | Date and Time: 09/03/2024 7:05 pm |
|---|---|

☐ _Inspection of Premises:_ **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: _____

|  CLERK OF COURT | | |
|---|---|---|
| _____ | OR | _____ |
| _Signature of Clerk or Deputy Clerk_ | | _Attorney's signature_ |

The name, address, e-mail address, and telephone number of the attorney representing _(name of party)_ _____
Nordic Naturals, Inc._____ , who issues or requests this subpoena, are:
Michael McDonald; One Gateway Center, Newark, NJ 07102; mmcdonald@gibbonslaw.com; (973)-596-4827

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❏  I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____ ; or

❏  I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

# Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

  **(1) *For a Trial, Hearing, or Deposition.*** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
   **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
   **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
      **(i)** is a party or a party's officer; or
      **(ii)** is commanded to attend a trial and would not incur substantial expense.

  **(2) *For Other Discovery.*** A subpoena may command:
   **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
   **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

  **(1) *Avoiding Undue Burden or Expense; Sanctions.*** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

  **(2) *Command to Produce Materials or Permit Inspection.***
   **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
   **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
      **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

  **(3) *Quashing or Modifying a Subpoena.***
   **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
      **(i)** fails to allow a reasonable time to comply;
      **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
      **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
      **(iv)** subjects a person to undue burden.
   **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
      **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

      **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
   **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
      **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
      **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

  **(1) *Producing Documents or Electronically Stored Information.*** These procedures apply to producing documents or electronically stored information:
   **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
   **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
   **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
   **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

  **(2) *Claiming Privilege or Protection.***
   **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
      **(i)** expressly make the claim; and
      **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
   **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## Attachment A

### Definitions

The following definitions apply to each of the Requests.  The defined terms below shall have the meaning given to them herein, regardless of whether such terms are written in lower case or upper case.

1.    Complaint.  As used herein, the term "Complaint" means the Class Action Complaint, ECF No. 1 in Civil Action No. 1:22-cv-03195, filed on May 31, 2022 in the United States District Court for the Eastern District of New York, attached hereto as "Attachment B."

2.    You and Your.  As used herein, the terms "You" and "Your" means Amazon.com, Inc., as well as representatives, attorneys, and/or any other person acting in or on Your behalf.

3.    Plaintiff:  As used herein, the term "Plaintiff" means Natalie Orrico, as well as Plaintiff's agents, representatives, attorneys, and/or other person acting in or on Plaintiff's behalf.

4.    Plaintiff's Account:  As used herein, the term "Plaintiff's Account" means all Amazon accounts associated with Plaintiff Natalie Orrico, including but not limited to the account associated with Amazon.com Visa Signature card ending in 2971 which account was used to purchase Order Number 111-1200294-5313833 entered on August 24, 2021, as shown in "Attachment C."

5.    Defendant:  As used herein, the term "Defendant" means Nordic Naturals, Inc., as well as Defendant's agents, representatives, attorneys, and/or any other person acting in or on Defendant's behalf.

6.    Person.  As used herein, the term "Person" is defined as any natural person or any business, legal, or governmental entity or association.

7.    Document.  As used herein, the term "Document" is defined to be synonymous in meaning and equal in scope to the usage of this term in Fed. R. Civ. P. 34(a). A draft or nonidentical copy is a separate document within the meaning of this term.

8.    Whenever used herein, the singular includes the plural and vice versa.

9.    Whenever used herein, "and" may be understood to mean "or" and vice versa whenever such construction results in a broader request for information.

## **Instructions**

A.    Documents and things that are produced for inspection must be produced as they are kept in the usual course of business or, alternatively, must be organized and labeled to correspond to each request and any subpart(s) thereof to which the documents or things are responsive. In addition, if You elect not to produce documents or things as they are kept in the usual course of business, for each document or thing, specify in writing its source (i.e., person or entity responsible for maintaining the files, location, or from whom custody of the files were taken), and its author(s) or creator(s), recipients, and the date of preparation, if not apparent from the face of the document or thing.

B.    To the extent that a document or thing is sought herein and such document or thing was but no longer is in Your possession, or subject to Your control, or in existence, state whether it (i) is missing or lost; (ii) has been destroyed; (iii) has been transferred, voluntarily or involuntarily to others; (iv) has been otherwise disposed of, and, in each instance, explain the circumstances surrounding and authorization for such disposition thereof; (v) the date or proximate date thereof; (vi) the contents of said document or thing; and (vii) the person who authorized the transfer, destruction or other disposition of said document or thing.

C.    To the extent that You believe any of the following requests call for any information subject to a claimed privilege, You are still required to answer so much of each response and each part thereof as does not request, in Your view, allegedly objectionable or privileged information. If, because of a claim of privilege, You do not respond to any request or subpart thereof, or You withhold any document or thing, specifically set forth the privilege claimed, the facts that You rely on to support the claim of privilege, and furnish a log identifying each document and thing for which the privilege is claimed, together with the following information:

1.    A brief description of the nature and subject matter of the document or thing, including the title and type of the document (i.e., whether it is a letter, memorandum, drawing) or thing;

2.    The document's or thing's date of creation;

3.    The name and title of the author(s) or creator(s);

4.    The name and title of the person(s) to whom the document is addressed or to whom the thing has been provided, including all person(s) who received copies, photographs, or other representations of the document or thing;

5.    The name and title of the person(s) to whom the document or thing was sent;

6.    The number of pages; and

7.    The request or subpart to which the document, withheld information, or thing is otherwise responsive.

D.    If objection is made to part of an item or category of documents or things requested, the part shall be specified and production shall be made of the remaining parts. The reasons for the objection shall be stated with specificity and particularity.

E.    Each Request that seeks information relating in any way to communications to, from, or within a business and/or corporate entity is hereby designated to mean, and should be construed to include, all communications by and between representatives, employees, agents, and/or servants of the business and/or corporate entity.

F.    These Requests shall be deemed continuing in nature so as to require further and supplemental production if additional documents are received, generated or discovered after the time of original production.

G.    Documents or things gathered from electronically stored information ("ESI") should be provided via reasonable and proportional industry-standard methodologies, subject to any agreement the Parties may enter as to the collection and production of ESI.

H.    Unless otherwise stated, the applicable time period for each Request shall be January 2016 through the present.

**<u>Documents Requested</u>**

1.     The retail purchase history from 2016 through the present associated with Plaintiff's Account, including all data showing the orders placed and the date and amount of each order, all orders not yet shipped, and all canceled orders.

2.     All purchases, including orders not yet shipped and canceled orders, from 2016 through the present, of products containing the words "natural" or "naturals" on their label associated with Plaintiff's Account.

3.     All purchases, including orders not yet shipped and canceled orders, from 2016 through the present, of food products associated with Plaintiff's Account.

4.     All purchases, including orders not yet shipped and canceled orders, from 2016 through the present, of vitamins associated with Plaintiff's Account.

5.     All purchases, including orders not yet shipped and canceled orders, from 2016 through the present, of dietary supplements associated with Plaintiff's Account.

4

**Attachment B**

Orrico v. Nordic Naturals, Inc., Docket No. 1:22-cv-03195 (E.D.N.Y. May 31, 2022), Court Docket

## Multiple Documents

| Part | Description |
|------|-------------|
| 1 | Main Document |
| 2 | Exhibit |
| 3 | Proposed Summons |
| 4 | Civil Cover Sheet |

**Bloomberg Law** ®

© 2022 The Bureau of National Affairs, Inc. All Rights Reserved. Terms of Service

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Natalie Orrico, individually and on behalf of all others similarly situated, | x : : |
| Plaintiff, | : Case No. : |
| v. | : : |
| Nordic Naturals, Inc. | : **CLASS ACTION COMPLAINT** : |
| Defendant. | : **JURY TRIAL DEMANDED** : : : |
| | x |

Plaintiff, Natalie Orrico (hereinafter "Plaintiff"), individually and on behalf of all others similarly situated, by her attorneys, alleges the following upon information and belief, except for those allegations pertaining to Plaintiff, which are based on personal knowledge:

## NATURE OF THE ACTION

1.      This action seeks to remedy the deceptive and misleading business practices of Nordic Naturals, Inc. (hereinafter "Defendant") with respect to the marketing and sales of Defendant's Nordic Naturals' products throughout the state of New York and throughout the country.  Nordic Naturals products include the following (hereinafter the "Products"):

- Nordic Naturals Nordic Omega-3 Gummies;

- Nordic Naturals Omega Blood Sugar;

- Nordic Naturals Omega Vision;

- Nordic Naturals Zero Sugar Vitamin D3 Gummies;

1

- Nordic Naturals Vitamin D3 Gummies Sport;

- Nordic Naturals Vitamin A + Carotenoids;

- Nordic Naturals Multi Minerals;

- Nordic Naturals Multi Minerals Without Iron & Copper;

- Nordic Naturals Omega Joint Xtra;

- Nordic Naturals Omega Memory with Curcumin;

- Nordic Naturals Omega Woman with Evening Primrose Oil;

- Nordic Naturals Vitamin C Gummies;

- Nordic Naturals Vitamin E Complex;

- Nordic Naturals Children's DHA;

- Nordic Naturals Kids Nordic Flora Probiotic Pixies;

- Nordic Naturals Nordic Omega-3 Gummy Worms;

- Nordic Naturals Ultimate Omega-D3 Sport;

- Nordic Naturals Arctic Cod Liver Oil;

- Nordic Naturals Nordic Flora Probiotic Comfort;

- Nordic Naturals Nordic Omega-3 Gummy Fish;

- Nordic Naturals Vitamin D3+K2 Gummies;

- Nordic Naturals Complete Omega-D3;

- Nordic Naturals EPA;

- Nordic Naturals Omega ONE;

- Nordic Naturals Ultimate Omega;

2

- Nordic Naturals Ultimate Omega 2X;

- Nordic Naturals Omega Focus Jr.;

- Nordic Naturals Ultimate Omega Sport 2X;

- Nordic Naturals Ultimate Omega 2x Mini;

- Nordic Naturals Algae DHA;

- Nordic Naturals Omega LDL;

- Nordic Naturals Ultimate Omega Jr.;

- Nordic Naturals Nordic Beauty Omega-3 + Borage Oil;

- Nordic Naturals Ultimate Omega + CoQ10;

- Nordic Naturals EPA Xtra;

- Nordic Naturals Nordic CoQ10 Ubiquinol Sport;

- Nordic Naturals DHA Xtra;

- Nordic Naturals Nordic CoQ10 Ubiquinol;

- Nordic Naturals Children's DHA Gummies;

- Nordic Naturals Algae Omega;

- Nordic Naturals Prenatal DHA;

- Nordic Naturals Prenatal DHA;

- Nordic Naturals COQ10 Gummies;

- Nordic Naturals Omega Focus;

- Nordic Naturals Magnesium Complex;

- Nordic Naturals Postnatal Omega-3;

3

- Nordic Naturals DHA;

- Nordic Naturals Nordic Flora Probiotic Daily;

- Nordic Naturals Omega-3;

- Nordic Naturals Zero Sugar Kids Multi Gummies;

- Nordic Naturals Ultimate Omega 2X Mini;

- Nordic Naturals Vitamin B Complex;

- Nordic Naturals Children's DHA Xtra;

- Nordic Naturals Vitamin D3 1000;

- Nordic Naturals Ultimate Omega 2X;

- Nordic Naturals Complete Omega Xtra;

- Nordic Naturals Ultimate Omega-D3;

- Nordic Naturals Nordic Berries Original Flavor Multivitamin Gummies for Adults
  & Kids Alike;

- Nordic Naturals Zero Sugar Melatonin Gummies;

- Nordic Naturals Complete Omega;

- Nordic Naturals Kids Nordic Flora Probiotic Gummies with Prebiotics;

- Nordic Naturals Vitamin D3 Gummies Kids;

- Nordic Naturals Complete Omega Jr.;

- Nordic Naturals Nordic Omega-3 Fishies;

- Nordic Naturals Ultimate Omega 2X Teen;

- Nordic Naturals Children's Eye Health Gummies;

4

- Nordic Naturals Ultimate Omega Xtra;

- Nordic Naturals Vitamin D3 5000;

- Nordic Naturals Omega-3D;

- Nordic Naturals Vitamin D3 Gummies;

- Nordic Naturals Omega Curcumin;

- Nordic Naturals Zero Sugar Curcumin Gummies;

- Nordic Naturals Nordic Immune Daily Defense.

2.  Defendant manufactures, sells, and distributes the Products using a marketing and advertising campaign centered around claims that appeal to health-conscious consumers, i.e., that its Products are "Natural;" however, Defendant's advertising and marketing campaign is false, deceptive, and misleading because the Products contain non-natural, synthetic ingredients.

3.  Plaintiff and those similarly situated ("Class Members") relied on Defendant's misrepresentations that the Products are "Natural" when purchasing the Products. Plaintiff and Class Members paid a premium for the Products based upon their "Natural" representation. Given that Plaintiff and Class Members paid a premium for the Products based on Defendant's misrepresentations that they are natural, Plaintiff and Class Members suffered an injury in the amount of the premium paid.

4.  Defendant's conduct violated and continues to violate, *inter alia*, New York General Business Law §§ 349 and 350. Defendant breached and continues to breach its warranties regarding the Products. Accordingly, Plaintiff brings this action against Defendant on behalf of

5

herself and Class Members who purchased the Products during the applicable statute of limitations period (the "Class Period").

## FACTUAL BACKGROUND

5.      Consumers have become increasingly concerned about the effects of synthetic and chemical ingredients in food, cleaning products, bath and beauty products and everyday household products.  Companies such as Defendant have capitalized on consumers' desire for purportedly "natural products."  Indeed, consumers are willing to pay, and have paid, a premium for products branded "natural" over products that contain synthetic ingredients.  In 2015, sales of natural products grew 9.5% to $180 billion.[1]  Reasonable consumers, including Plaintiff and Class Members, value natural products for important reasons, including the belief that they are safer and healthier than alternative products that are not represented as natural.

6.      Despite the Products containing a number of synthetic ingredients, Defendant markets the Products as "Natural."  The Products' labeling is depicted below:

---

[1] *Natural Products Industry Sales up 9.5% to $180bn Says NBJ,* FOOD NAVIGATOR, http://www.foodnavigator-usa.com/Markets/EXPO-WEST-trendspotting-organics-natural-claims/(page)/6; *see also*  Shoshanna Delventhal, *Study Shows Surge in Demand for "Natural" Products*, INVESTOPEDIA (February 22, 2017), http://www.investopedia.com/articles/investing/022217/study-shows-surge-demand-natural-products.asp (Study by Kline Research indicated that in 2016, the personal care market reached 9% growth in the U.S. and 8% in the U.K. The trend-driven natural and organic personal care industry is on track to be worth $25.1 million by 2025); *Natural living: The next frontier for growth? [NEXT Forecast 2017]*, NEW HOPE NTWORK (December 20, 2016), http://www.newhope.com/beauty-and-lifestyle/natural-living-next-frontier-growth-next-forecast-2017.

**Nordic Naturals Nordic Omega-3 Gummies**



**Synthetic Ingredients:**

Bovine Gelatin
Citric Acid
Pectin
Sodium Citrate

**Nordic Naturals Omega Blood Sugar**



**Synthetic Ingredients:**

Gelatin
Glycerin

**Nordic Naturals Omega Vision**



**Synthetic Ingredients:**

Gelatin
Glycerin

**Nordic Naturals Zero Sugar Vitamin D3 Gummies**



**Synthetic Ingredients:**

Pectin
Citric Acid
Sodium Citrate Dihydrate

10

**Nordic Naturals Vitamin D3 Gummies Sport**



**Synthetic Ingredients:**

Pectin
Citric Acid
Sodium Citrate Dihydrate

**Nordic Naturals Vitamin A + Carotenoids**



**Synthetic Ingredients:**

Vitamin A (as Beta-Carotene)
Gelatin
Glycerin

**Nordic Naturals Multi Minerals**



**Synthetic Ingredients:**

Potassium (as Potassium Chloride)
Microcrystalline Cellulose
Silica

**Nordic Naturals Multi Minerals Without Iron & Copper**



**Synthetic Ingredients:**

Potassium (as Potassium Chloride)
Microcrystalline Cellulose
Silica

**Nordic Naturals Omega Joint Xtra**



**Synthetic Ingredients:**

Gelatin
Glycerin
Potassium Chloride

15

**Nordic Naturals Omega Memory with Curcumin**



**Synthetic Ingredients:**

Gelatin
Glycerin
Stearic Acid
Soy Lecithin
Maltodextrin

**Nordic Naturals Omega Woman with Evening Primrose Oil**



**Synthetic Ingredients:**

Gelatin
Glycerin

17

**Nordic Naturals Vitamin C Gummies**



**Synthetic Ingredients:**

Vitamin C (as Ascorbic Acid)
Pectin
Sodium Citrate

**Nordic Naturals Vitamin E Complex**



**Synthetic Ingredients:**

Gelatin
Glycerin

**Nordic Naturals Children's DHA**



**Synthetic Ingredients:**

Gelatin
Glycerin

**Nordic Naturals Kids Nordic Flora Probiotic Pixies**



**Synthetic Ingredients:**

Xylitol
Citric Acid
Silicon Dioxide

21

**Nordic Naturals Nordic Omega-3 Gummy Worms**



**Synthetic Ingredients:**

Porcine Gelatin
Citric Acid
Pectin
Sodium Citrate

22

**Nordic Naturals Ultimate Omega-D3 Sport**



**Synthetic Ingredients:**

Gelatin
Glycerin

**Nordic Naturals Arctic Cod Liver Oil**



**Synthetic Ingredients:**

Gelatin
Glycerin

**Nordic Naturals Nordic Flora Probiotic Comfort**



**Synthetic Ingredients:**

Microcrystalline Cellulose
Magnesium Stearate
Silica

**Nordic Naturals Nordic Omega-3 Gummy Fish**



**Synthetic Ingredients:**

Bovine Gelatin
Citric Acid
Pectin
Sodium Citrate

**Nordic Naturals Vitamin D3+K2 Gummies**



**Synthetic Ingredients:**

Pectin
Citric Acid
Sodium Citrate

**Nordic Naturals Complete Omega-D3**



**Synthetic Ingredients:**

Pectin
Citric Acid
Sodium Citrate

**Nordic Naturals EPA**



**Synthetic Ingredients:**

Gelatin
Glycerin

**Nordic Naturals Omega ONE**



**Synthetic Ingredients:**

Gelatin
Glycerin

**Nordic Naturals Ultimate Omega**



**Synthetic Ingredients:**

Gelatin
Glycerin

**Nordic Naturals Ultimate Omega 2X**



**Synthetic Ingredients:**

Gelatin
Glycerin

**Nordic Naturals Omega Focus Jr.**



**Synthetic Ingredients:**

Fish Gelatin
Glycerin

33

**Nordic Naturals Ultimate Omega Sport 2X**



**Synthetic Ingredients:**

Gelatin
Glycerin

**Nordic Naturals Ultimate Omega 2x Mini**



**Synthetic Ingredients:**

Gelatin
Glycerin

**Nordic Naturals Algae DHA**



**Synthetic Ingredients:**

Glycerin
Sorbitol

**Nordic Naturals Omega LDL**



**Synthetic Ingredients:**

Gelatin
Glycerin

**Nordic Naturals Ultimate Omega Jr.**



**Synthetic Ingredients:**

Gelatin
Glycerin

**Nordic Naturals Nordic Beauty Omega-3 + Borage Oil**



**Synthetic Ingredients:**

Gelatin
Glycerin

39

**Nordic Naturals Ultimate Omega + CoQ10**



**Synthetic Ingredients:**

Gelatin
Glycerin

40

**Nordic Naturals EPA Xtra**



**Synthetic Ingredients:**

Gelatin
Glycerin

**Nordic Naturals Nordic CoQ10 Ubiquinol Sport**



**Synthetic Ingredients:**

Gelatin
Glycerin

**Nordic Naturals DHA Xtra**



**Synthetic Ingredients:**

Gelatin
Glycerin

**Nordic Naturals Nordic CoQ10 Ubiquinol**



**Synthetic Ingredients:**

Gelatin
Glycerin

**Nordic Naturals Children's DHA Gummies**



**Synthetic Ingredients:**

Xylitol
Sorbitol
Gelatin
Sodium Citrate
Malic Acid

45

**Nordic Naturals Algae Omega**



**Synthetic Ingredients:**

Glycerin
Sorbitol

**Nordic Naturals Prenatal DHA**



**Synthetic Ingredients:**

Gelatin
Glycerin

47

**Nordic Naturals Prenatal DHA**



**Synthetic Ingredients:**

Glycerin
Sorbitol

48

**Nordic Naturals COQ10 Gummies**



**Synthetic Ingredients:**

Pectin
Citric Acid
Sodium Citrate Dihydrate
Organic Maltodextrin

**Nordic Naturals Omega Focus**



**Synthetic Ingredients:**

Gelatin
Glycerin

**Nordic Naturals Magnesium Complex**



**Synthetic Ingredients:**

Citric Acid
Magnesium Stearate
Microcrystalline Cellulose
Silica

**Nordic Naturals Postnatal Omega-3**



**Synthetic Ingredients:**

Gelatin
Glycerin

**Nordic Naturals DHA**



**Synthetic Ingredients:**

Gelatin
Glycerin

**Nordic Naturals Nordic Flora Probiotic Daily**



**Synthetic Ingredients:**

Microcrystalline Cellulose
Silica

**Nordic Naturals Omega-3**



**Synthetic Ingredients:**

Gelatin
Glycerin

**Nordic Naturals Zero Sugar Kids Multi Gummies**



**Synthetic Ingredients:**

Vitamin A (as Beta-Carotene)
Vitamin C (as Ascorbic Acid)
Thiamin (as Thiamin Mononitrate)
Riboflavin
Folic Acid
Pectin
Citric Acid
Sodium Citrate

56

**Nordic Naturals Ultimate Omega 2X Mini**



**Synthetic Ingredients:**

Gelatin
Glycerin

**Nordic Naturals Vitamin B Complex**



**Synthetic Ingredients:**

Thiamine (as Thiamine Mononitrate)
Riboflavin
Niacin
Microcrystalline Cellulose
Silica
Magnesium Stearate

58

**Nordic Naturals Children's DHA Xtra**



**Synthetic Ingredients:**

Gelatin
Glycerin
Xylitol

**Nordic Naturals Vitamin D3 1000**



**Synthetic Ingredients:**

Gelatin
Glycerin

60

**Nordic Naturals Ultimate Omega 2X**



**Synthetic Ingredients:**

Gelatin
Glycerin

**Nordic Naturals Complete Omega Xtra**



**Synthetic Ingredients:**

Gelatin
Glycerin

**Nordic Naturals Ultimate Omega-D3**



**Synthetic Ingredients:**

Gelatin
Glycerin

**Nordic Naturals Nordic Berries Original Flavor Multivitamin Gummies for Adults & Kids Alike**



**Synthetic Ingredients:**

Vitamin A (as Beta-Carotene)
Vitamin C (as Ascorbic Acid)
Thiamin
Riboflavin
Folic Acid
Pectin
Citric Acid
Sodium Citrate

**Nordic Naturals Zero Sugar Melatonin Gummies**



**Synthetic Ingredients:**

Pectin
Citric Acid
Sodium Citrate Dihydrate

65

**Nordic Naturals Complete Omega**



**Synthetic Ingredients:**

Gelatin
Glycerin

**Nordic Naturals Kids Nordic Flora Probiotic Gummies with Prebiotics**



**Synthetic Ingredients:**

Pectin
Citric Acid
Sodium Citrate Dihydrate

67

**Nordic Naturals Vitamin D3 Gummies Kids**



**Synthetic Ingredients:**

Pectin
Citric Acid
Sodium Citrate Dihydrate

68

**Nordic Naturals Complete Omega Jr.**



**Synthetic Ingredients:**

Gelatin
Glycerin

**Nordic Naturals Nordic Omega-3 Fishies**



**Synthetic Ingredients:**

Xylitol
Sorbitol
Gelatin
Citric Acid
Trisodium Citrate

70

**Nordic Naturals Ultimate Omega 2X Teen**



**Synthetic Ingredients:**

Gelatin
Glycerin

71

**Nordic Naturals Children's Eye Health Gummies**



**Synthetic Ingredients:**

Xylitol
Sorbitol
Gelatin
Sodium Citrate
Malic Acid

**Nordic Naturals Ultimate Omega Xtra**



**Synthetic Ingredients:**

Gelatin
Glycerin

**Nordic Naturals Vitamin D3 5000**



**Synthetic Ingredients:**

Gelatin
Glycerin

**Nordic Naturals Omega-3D**



**Synthetic Ingredients:**

Gelatin
Glycerin

**Nordic Naturals Vitamin D3 Gummies**



**Synthetic Ingredients:**

Pectin
Citric Acid
Sodium Citrate Dihydrate

**Nordic Naturals Omega Curcumin**



**Synthetic Ingredients:**

Gelatin
Glycerin
Stearic Acid
Soy Lecithin
Maltodextrin

**Nordic Naturals Zero Sugar Curcumin Gummies**



**Synthetic Ingredients:**

Citric Acid
Stearic Acid
Pectin
Soy Lecithin
Maltodextrin
Sodium Citrate

78

**Nordic Naturals Nordic Immune Daily Defense**



**Synthetic Ingredients:**

Vitamin C (as Ascorbic Acid)
Gelatin
Glycerin
Organic Maltodextrin

7.   Defendant's representations that the Products are natural, are false, misleading, and deceptive because the Products contain multiple ingredients that are, as explained below, synthetic.

   **a.** **Gelatin** is a synthetic ingredient that is commercially processed using hydrolysis. See 9 C.F.R. §94.20.

   **b.** **Soy Lecithin** is a phospholipid that is widely used as an emulsifier in food industries.  Soy lecithin comprises of phosphatidylcholine, phosphatidylethanolamine, phosphatidylinositol, phosphatidic acid, other minor phospholipids, glycolipid, and neutral lipids.[2]  It is derived from GMO's and/or GE seeds in which DNA splicing has been used to place genes from another source into a plant.  Soy lecithin is heavily processed to remove the natural bean flavor so that the finished "soy" product no longer tastes like soy.  The soy is further refined through unnatural processes using chemical additives.  Soy lecithin is commonly refined through the use of a volatile, synthetic solvent called hexane, which is processed from petroleum.  *See* 40 C.F.R. 799.2155.

   **c.** **Maltodextrin** is recognized as a synthetic by federal regulations.  Maltodextrin is a saccharide polymer that is prepared as a white powder or concentrated solution by partial hydrolysis of corn starch, potato starch, or rice starch using acids and enzymes.  (72 Fed. Reg. 62149, 62166 (proposed Nov. 2, 2007); 21 C.F.R. § 184.1444).  Maltodextrin is primarily used as a carrier or bulking agent.  It is a synthetic factory-produced texturizer that is created by complex processing that

---

[2] http://www.davidpublishing.com/davidpublishing/Upfile/3/4/2013/2013030471047201.pdf

does not occur in nature.  To produce maltodextrin, acids and/or enzymes are applied in sequence to a starch to produce partial hydrolysis (saccharification).  The acids or enzymes convert or depolymerize starch to glucose or maltose molecules.  Once maltose is high enough for maltodextrin, the acids or enzymes are neutralized, removed, or deactivated.  (57 Fed. Reg. 23989 (proposed June 5, 1992)).  *See also Maltodextrins*, GMO COMPASS, Dec. 10, 2008, available at http://www.gmo-compass.org/eng/database/ingredients/148.maltodextrins.html

d.  **Ascorbic Acid** is a chemical preservative and is synthetic.  *See* 21 C.F.R. § 182.3013.

e.  **Betacarotene** (CAS Reg. No. 7235-40-7) has the molecular formula C40H56. It is synthesized by saponification of vitamin A acetate.  The resulting alcohol is either reacted to form vitamin A Wittig reagent or oxidized to vitamin A aldehyde.  Vitamin A Wittig reagent and vitamin A aldehyde are reacted together to form betacarotene.  *See* 21 C.F.R. § 184.1245.

f.  **Riboflavin** (C17H20N4O6, CAS Reg. No. 83885) occurs as yellow to orange yellow needles that are crystallized from 2N acetic acid, alcohol, water, or pyridine.  It may be prepared by chemical synthesis, biosynthetically by the organism Eremothecium ashbyii, or isolated from natural sources.  21CFR § 184.1695.  Further, as set forth in 21 CFR § 73.450, riboflavin is a color additive. Riboflavin is synthetic.

g. **Niacin** (C6H5NO2, CAS Reg. No. 59-67-6) is the chemical 3-pyridinecarboxylic acid (nicotinic acid). It is a non-hygroscopic, stable, white, crystalline solid that sublimes without decomposition at about 230 deg. C. It is soluble in water and alcohol. It is insoluble in ether. 21CFR § 184.1530. Niacin is synthetic.

h. **Thiamine Mononitrate** (C12H17N5O4S, CAS Reg. No. 532-43-4) is the mononitrate salt of thiamine. It occurs as white crystals or a white crystalline powder and is prepared from thiamine hydrochloride by dissolving the hydrochloride salt in alkaline solution followed by precipitation of the nitrate half-salt with a stoichiometric amount of nitric acid." (21 C.F.R. § 184.1878). Thiamine mononitrate is synthetic, and is chemically distinct from thiamine. (47 Fed. Reg. 47438; 21 C.F.R. § 184.1878). The amount of nitrates added to processed and preserved foods over the past several decades has exponentially increased. The nitrates present in thiamine mononitrate can cause health problems. "Exposure to higher levels of nitrates or nitrites has been associated with increased incidence of cancer in adults, and possible increased incidence of brain tumors, leukemia, and nasopharyngeal (nose and throat) tumors in children[.]" (internal citations omitted). Some studies have linked nitrate exposure in children to increased incidence of childhood diabetes, recurrent diarrhea, and recurrent respiratory tract infections. (*Id*. at 3). Other reported effects of chronic exposure reported in adults include frequent urination and spleen hemorrhaging. (*Id*. at 3). "Health effects that were significantly associated

82

with nitrate or nitrite exposure during pregnancy include increased incidence of intrauterine growth retardation, cardiac defects, central nervous system defects, Sudden Infant Death Syndrome (SIDS), and miscarriage." (*Id*. at 4 (internal citations omitted)). Research has also connected the increased use of nitrates and nitrites in western societies with increased rates of cognitive impairment, Alzheimer's disease, and brain insulin resistance.

i. **Microcrystalline Cellulose** is a chemically modified form of naturally occurring cellulose. The hydrolysis process breaks the beta -1,4 glycosidic bonds causing a complete structural and functional change from its native form. Therefore, it is classified as a synthetic additive.[3]

j. **Citric Acid** is (2-hydroxy-propane-1, 2,3-tricarboxylic acid) is a synthetic substance. While the chemical's name has the word "citric" in it, citric acid is no longer extracted from the citrus fruit but industrially manufactured by fermenting certain genetically mutant strains of the black mold fungus, *Aspergillus niger*.

k. **Pectin (Trisodium Citrate)** is the sodium salt of citric acid synthesized by reacting sodium carbonate with citric acid, and is often used as an anticoagulant or blood thinner. It is a recognized synthetic chemical under federal regulations. *See* 7 C.F.R. §205.605(b). It is sometimes used in food as a preservative or to provide a tart flavor in drinks and sauces.

---

[3] https://foodadditives.net/anticaking-agent/microcrystalline-cellulose/

83

**l.  Sodium Citrate** is the sodium salt of citric acid synthesized by reacting sodium carbonate with citric acid, and is often used as an anticoagulant or blood thinner. It is a recognized synthetic chemical under federal regulations.  *See* 7 C.F.R. §205.605(b).

**m. Folic Acid** is the chemical N -[4-<(2-amino-1,4-dihydro-4-oxo-6-pteridinyl)methyl]amino]benzoyl]-L -glutamic acid.  21CFR172.345.  Folic acid is synthetic.

**n.  Silica** is also known as Silicon Dioxide and is an anticaking agent.  *See* 21 C.F.R. §172.480.

**o.  Potassium Chloride** is a white, odorless solid prepared from source minerals by fractional crystallization or flotation.  It is soluble in water and glycerol and has a saline taste at low concentration levels.  *See* 21 C.F.R. § 184.1622.

**p.  Stearic Acid** is a mixture of variable proportions of glyceryl monostearate, glyceryl monopalmitate, and glyceryl esters of fatty acids present in commercial stearic acid.  It is recognized by federal regulations as synthetic.  *See* 7 C.F.R. § 205.605(b).

**q.  Silicon Dioxide** is an anticaking agent.  *See* 21 C.F.R. § 172.480.

**r.  Sorbitol** is a type of sugar alcohol used as a thickener and a skin conditioning agent.[4]

---

[4] http://www.ewg.org/skindeep/ingredient/706239/SORBITOL/

84

**s.  Malic Acid** is the common name for 1-hydroxy-1, 2-ethanedicarboxylic acid. L (+) malic acid, referred to as L-malic acid, occurs naturally in various foods. Racemic DL-malic acid does not occur naturally.  It is made commercially by hydration of fumaric acid or maleic acid, and is therefore synthetic.  *See* 21 C.F.R. §184.1069.

**t.  Xylitol** is a synthetic ingredient. It is in fact is a sweetening agent derived from the crushed fibers of sugar cane in birch wood and/or corn through a harsh multi-step chemical reaction that involves the use of sulfuric acid, calcium oxide, phosphoric acid, and active charcoal.  Typical production of xylitol begins from a plant product xylan, which is hydrolyzed into xylose and catalytically hydrogenated into xylitol, thought a comprehensive chemical process.   Moreover, commercial production of xylitol often requires the use of genetically modified corn, which cannot be described as natural.

**u.  Magnesium Stearate** is the magnesium salt of stearic acid.  It is produced as a white precipitate by the addition of an aqueous solution of magnesium chloride to an aqueous solution of sodium stearate derived from stearic acid.  *See* 21 CFR § 184.1440.  Stearic acid occurs naturally as a glyceride in tallow and other animal or vegetable fats and oils and is a principal constituent of most commercially hydrogenated fats.  It is produced commercially from hydrolyzed tallow derived from edible sources or from hydrolyzed, completely hydrogenated vegetable oil derived from edible sources, and is therefore a synthetic.  *See* 21 CFR § 184.1090.

v. **Glycerin** is a factory-produced texturizer that is created by complex processing. It is recognized by federal regulations as synthetic. *See* 7 C.F.R. § 205.605(b). It is commonly used as a filler and thickening agent. It requires multiple processing steps in an industrial environment to create glycerin, and therefore it cannot be described as "natural." A technical evaluation report compiled by the USDA AMS Agricultural Analytics Division for the USDA National Organic Program explains that glycerin is "produced by a hydrolysis of fats and oils" and is listed in the USDA Organic Program's National List as a "synthetic nonagricultural (nonorganic) substance." The same report lists several methods of producing glycerin, each of which involve numerous steps that include the use of high temperatures, pressure, and purification to get an end product.

| Processes for producing glycerin by hydrolysis of fats and oils[5] | |
|---|---|
| Lemmens Fryer's Process | Oil or fat is subjected in an autoclave to the conjoint action of heat and pressure (about 100 PSI) in the presence of an emulsifying and accelerating agent, e.g. zinc oxide or hydroxide (sodium hydroxide can be substituted) for about eight hours. The strong solution of glycerin formed is withdrawn and replaced by a quantity of hot, clean, and preferably distilled water equal to about one third to one fourth of the weight of the original charge of oil or fat and treatment continued for an additional four hours. The dilute glycerin obtained from the latter part of the process is drawn off and used for the initial treatment of the further charge of oil or fat. |
| Budde and Robertson's Process | The oils or fats are heated and mechanically agitated with water and sulphuric acid gas, under pressure in a closed vessel or autoclave. The advantage claimed for the process are that the contents of the vessel are free from foreign matter introduced by reagents and need |

---

[5] https://www.ams.usda.gov/sites/default/files/media/Glycerin%20Petition%20to%20remove%20TR%202013.pdf

| | no purification; that the liberated glycerin is in the form of a pure and concentrated solution; that no permanent emulsion is formed and that the fatty acids are not discolored. |
|---|---|
| Ittner's Process | Coconut oil is kept in an autoclave in the presence of water at 70 atmospheres pressure and 225-245oC temperature and split into fatty acids and glycerin, both being soluble under these conditions in water. The glycerin solution separates in the bottom of the autoclave. The aqueous solution contains at the end of the splitting process more than 30 percent glycerin. |
| Continuous High-Pressure Hydrolysis | In this process a constant flow of fat is maintained flowing upward through an autoclave column tower against a downward counterflow of water at a pressure of 600 PSI maintained at temperature of 480-495oF. Under these conditions, the fat is almost completely miscible in water and the hydrolysis take place in a very short time. The liberated fatty acids, washed free of glycerin by the downward percolating water, leave the top of the column and pass through a flash tank while the liberated glycerin dissolves in the downward flow of water and is discharged from the bottom of the tower into the sweet-water storage tank. |

8.     Whether Defendant's labeling of the Products as natural is deceptive is judged by whether it would deceive or mislead a reasonable person.  To assist in ascertaining what a reasonable consumer believes the term natural means, one can look to the regulatory agencies for their guidance.

9.     In 2013, the United States Department of Agriculture ("USDA") issued a Draft Guidance Decision Tree for Classification of Materials as Synthetic or Nonsynthetic (Natural).  In accordance with this decision tree, a substance is natural—as opposed to synthetic—if: (a) it is manufactured, produced, or extracted from a natural source (i.e. naturally occurring mineral or biological matter); (b) it has not undergone a chemical change (i.e. a process whereby a substance is transformed into one or more other distinct substances) so that it is chemically or structurally

87

different than how it naturally occurs in the source material; or (c) the chemical change was created by a naturally occurring biological process such as composting, fermentation, or enzymatic digestion or by heating or burning biological matter. **(Exhibit A).**

10.    Congress has defined "synthetic" to mean "a substance that is formulated or manufactured by a chemical process or by a process that chemically changes a substance extracted from naturally occurring plants, animals, or mineral sources . . . ." 7 U.S.C. § 6502 (21).

11.    Consumers lack the meaningful ability to test or independently ascertain or verify whether a product is natural, especially at the point of sale. Consumers would not know the true nature of the ingredients merely by reading the ingredients label.

12.    Discovering that the ingredients are not natural and are actually synthetic requires a scientific investigation and knowledge of chemistry beyond that of the average consumer. This is why, even though the ingredients listed above are identified on the back of the Products' packaging in the ingredients listed, the reasonable consumer would not understand – nor are they expected to understand - that these ingredients are synthetic.

13.    Moreover, the reasonable consumer is not expected or required to scour the ingredients list on the back of the Products in order to confirm or debunk Defendant's prominent claims, representations, and warranties that the Products are natural.

14.    Defendant did not disclose that the above listed ingredients are synthetic ingredients. A reasonable consumer understands Defendant's "Natural" claims to mean that the Products are natural and do not contain synthetic ingredients.

88

15.     Defendant has thus violated, *inter alia*, NY General Business Law § 392-b by: a) putting upon an article of merchandise, bottle, wrapper, package, label, or other thing containing or covering such an article, or with which such an article is intended to be sold, or is sold, a false description or other indication of or respecting the kind of such article or any part thereof; and b) selling or offering for sale an article which, to its knowledge, is falsely described or indicated upon any such package or vessel containing the same, or label thereupon, in any of the particulars specified.

16.     Consumers rely on label representations and information in making purchasing decisions.

17.     The marketing of the Products as "Natural" in a prominent location on the labels of all of the Products, throughout the Class Period, evidences Defendant's awareness that natural claims are material to consumers.

18.     Defendant's deceptive representations and omissions are material in that a reasonable person would attach importance to such information and would be induced to act upon such information in making purchase decisions.

19.     Plaintiff and the Class Members reasonably relied to their detriment on Defendant's misleading representations and omissions.

20.     Defendant's false, misleading, and deceptive misrepresentations and omissions are likely to continue to deceive and mislead reasonable consumers and the general public, as they have already deceived and misled Plaintiff and the Class Members.

21.     In making the false, misleading, and deceptive representations and omissions described herein, Defendant knew and intended that consumers would pay a premium for Products labeled as being "Natural" over comparable products not so labeled.

22.     As an immediate, direct, and proximate result of Defendant's false, misleading, and deceptive representations and omissions, Defendant injured Plaintiff and the Class Members in that they:

     **a.**     Paid a sum of money for Products that were not what Defendant represented;

     **b.**     Paid a premium price for Products that were not what Defendant represented;

     **c.**     Were deprived of the benefit of the bargain because the Products they purchased were different from what Defendant warranted;

     **d.**     Were deprived of the benefit of the bargain because the Products they purchased had less value than what Defendant represented;

     **e.**     Ingested a substance that was of a different quality than what Defendant promised; and

     **f.**     Were denied the benefit of the beneficial properties of the natural supplement Defendant promised.

23.     Had Defendant not made the false, misleading, and deceptive representations and omissions, Plaintiff and the Class Members would not have been willing to pay the same amount for the Products they purchased.

24.     Plaintiff and the Class Members paid for Products that are natural but received Products that are not natural.  The Products Plaintiff and the Class Members received were worth less than the Products for which they paid.

25.     Plaintiff and the Class Members all paid money for the Products; however, Plaintiff and the Class Members did not obtain the full value of the advertised Products due to Defendant's misrepresentations and omissions.  Plaintiff and the Class Members purchased, purchased more of, and/or paid more for the Products than they would have had they known the truth about the Products.  Consequently, Plaintiff and the Class Members have suffered injury in fact and lost money as a result of Defendant's wrongful conduct.

### JURISDICTION AND VENUE

26.     This Court has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. section 1332(d) in that: (1) this is a class action involving more than 100 class members; (2) Plaintiff is a citizen of the state of New York and Defendant Nordic Naturals is a citizen of the state of California; and (3) the amount in controversy is in excess of $5,000,000, exclusive of interests and costs.

27.     This Court has personal jurisdiction over Defendant because Defendant conducts and transacts business in the state of New York, contracts to supply goods within the state of New York, and supplies goods within the state of New York.

28.     Venue is proper because Plaintiff and many Class Members reside in the Eastern District of New York, and throughout the state of New York.  A substantial part of the events or omissions giving rise to the Classes' claims occurred in this district.

## PARTIES

**Plaintiff**

29.     Plaintiff is an individual consumer who, at all times material hereto, was a citizen of New York State.  Plaintiff purchased Defendant's Nordic Naturals Omega 3 Gummies for her personal use on August 24, 2021 for a purchase price of $19.51 on Amazon.com.   Plaintiff purchased the Product in the state of New York and had the product shipped to her home in the state of New York.  The Product purchased by the Plaintiff is substantially and sufficiently similar to the Products that Plaintiff did not purchase (i.e. each of Defendant's Products set forth herein in paragraph 1).

30.     Had Defendant not made the false, misleading, and deceptive representation that the Products were "Natural," Plaintiff would not have been willing to pay the same amount, and, consequently, she would not have been willing to purchase the product.  Plaintiff purchased, purchased more of, and/or paid more for, the Product than she would have had she known the truth about the Product.  The Product Plaintiff received was worth less than the product for which she paid.  Plaintiff was injured in fact and lost money as a result of Defendant's improper conduct.  Plaintiff would purchase the Products again if the ingredients were changed so that they were "Natural," as represented by Defendant.

**Defendant**

31.     Defendant Nordic Naturals, Inc. is a corporation with its principal place of business in Watsonville, California.   Defendant manufactures, markets, advertises, and distributes the

Products throughout the United States. Defendant created and/or authorized the false, misleading, and deceptive advertisements, packaging, and labeling for the Products.

## CLASS ALLEGATIONS

32.     Plaintiff brings this matter on behalf of herself and those similarly situated. As detailed at length in this Complaint, Defendant orchestrated deceptive marketing and labeling practices. Defendant's customers were uniformly impacted by and exposed to this misconduct. Accordingly, this Complaint is uniquely situated for class-wide resolution.

33.     The Class is defined as all consumers who purchased the Products anywhere in the United States during the Class Period (the "Class").

34.     Plaintiff also seeks certification, to the extent necessary or appropriate, of a subclass of individuals who purchased the Products in the state of New York at any time during the Class Period (the "New York Subclass").

35.     The Class and New York Subclass shall be referred to collectively throughout the Complaint as the Class.

36.     The Class is properly brought and should be maintained as a class action under Rule 23(a), satisfying the class action prerequisites of numerosity, commonality, typicality, and adequacy because:

37.     <u>Numerosity</u>: Class Members are so numerous that joinder of all members is impracticable. Plaintiff believes that there are thousands of consumers who are Class Members described above who have been damaged by Defendant's deceptive and misleading practices.

38.     <u>Commonality</u>: The questions of law and fact common to the Class Members which predominate over any questions which may affect individual Class Members include, but are not limited to:

    a.     Whether Defendant is responsible for the conduct alleged herein which was uniformly directed at all consumers who purchased the Products;

    b.     Whether Defendant's misconduct set forth in this Complaint demonstrates that Defendant has engaged in unfair, fraudulent, or unlawful business practices with respect to the advertising, marketing, and sale of their Products;

    c.     Whether Defendant made false and/or misleading statements to the Class and the public concerning the contents of its Products;

    d.     Whether Defendant's false and misleading statements concerning its Products were likely to deceive the public; and

    e.     Whether Plaintiff and the Class are entitled to money damages under the same causes of action as the other Class Members?

39.     <u>Typicality</u>: Plaintiff is a member of the Class.  Plaintiff's claims are typical of the claims of each Class Member in that every member of the Class was susceptible to the same deceptive, misleading conduct and purchased Defendant's Products.  Plaintiff is entitled to relief under the same causes of action as the other Class Members.

40.     <u>Adequacy</u>: Plaintiff is an adequate Class representative because her interests do not conflict with the interests of the Class Members she seeks to represent, her consumer fraud claims are common to all members of the Class and she has a strong interest in vindicating her rights, she

has retained counsel competent and experienced in complex class action litigation, and counsel intends to vigorously prosecute this action.

41.    Predominance: Pursuant to Rule 23(b)(3), the common issues of law and fact identified above predominate over any other questions affecting only individual members of the Class.   The Class issues fully predominate over any individual issue because no inquiry into individual conduct is necessary; all that is required is a narrow focus on Defendant's deceptive and misleading marketing and labeling practices.

42.    Superiority: A class action is superior to the other available methods for the fair and efficient adjudication of this controversy because:

    a.   The joinder of thousands of individual Class Members is impracticable, cumbersome, unduly burdensome, and a waste of judicial and/or litigation resources;

    b.   The individual claims of the Class Members may be relatively modest compared with the expense of litigating the claim, thereby making it impracticable, unduly burdensome, and expensive—if not totally impossible—to justify individual actions;

    c.   When Defendant's liability has been adjudicated, all Class Members' claims can be determined by the Court and administered efficiently in a manner far less burdensome and expensive than if it were attempted through filing, discovery, and trial of all individual cases;

d.  This class action will promote orderly, efficient, expeditious, and appropriate adjudication and administration of Class claims;

e.  Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action;

f.  This class action will assure uniformity of decisions among Class Members;

g.  The Class is readily definable and prosecution of this action as a class action will eliminate the possibility of repetitious litigation;

h.  Class Members' interests in individually controlling the prosecution of separate actions is outweighed by their interest in efficient resolution by single class action; and

i.  It would be desirable to concentrate in this single venue the litigation of all plaintiffs who were induced by Defendant's uniform false advertising to purchase its Products as "Natural."

43.  Accordingly, this Class is properly brought and should be maintained as a class action under Rule 23(b)(3) because questions of law or fact common to Class Members predominate over any questions affecting only individual members, and because a class action is superior to other available methods for fairly and efficiently adjudicating this controversy.

## FIRST CAUSE OF ACTION
## VIOLATION OF NEW YORK GBL § 349
### (On Behalf of Plaintiff and New York Subclass Members)

44.     Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

45.     New York General Business Law Section 349 ("GBL § 349") declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in this state . . ."

46.     There is no adequate remedy at law.

47.     Defendant misleadingly, inaccurately, and deceptively advertise and market their Products to consumers.

48.     Defendant's improper consumer-oriented conduct—including labeling and advertising the Products as being "Natural" —is misleading in a material way in that it, *inter alia*, induced Plaintiff and the New York Subclass Members to purchase and pay a premium for Defendant's Products and to use the Products when they otherwise would not have. Defendant made its untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

49.     Plaintiff and the New York Subclass Members have been injured inasmuch as they paid a premium for products that were—contrary to Defendant's representations— not natural. Accordingly, Plaintiff and the New York Subclass Members received less than what they bargained and/or paid for.

97

50.     Defendant's advertising and Products' packaging and labeling induced Plaintiff and the New York Subclass Members to buy Defendant's Products and to pay a premium price for them.

51.     Defendant's deceptive and misleading practices constitute a deceptive act and practice in the conduct of business in violation of New York General Business Law §349(a) and Plaintiff and the New York Subclass Members have been damaged thereby.

52.     As a result of Defendant's recurring, "unlawful" deceptive acts and practices, Plaintiff and the New York Subclass Members are entitled to monetary, statutory, compensatory, treble and punitive damages, restitution, and disgorgement of all moneys obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

**SECOND CAUSE OF ACTION**
**VIOLATION OF NEW YORK GBL § 350**
**(On Behalf of Plaintiff and the New York Subclass Members)**

53.     Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

54.     N.Y. Gen. Bus. Law § 350 provides, in part, as follows:

> False advertising in the conduct of any business, trade, or commerce or in the furnishing of any service in this state is hereby declared unlawful.

55.     N.Y. Gen. Bus. Law § 350a(1) provides, in part, as follows:

> The term 'false advertising, including labeling, of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect. In determining whether any advertising is misleading, there shall be taken into account (among other things) not only representations made by statement, word, design, device, sound or any combination

thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity or employment to which the advertising relates under the conditions proscribed in said advertisement, or under such conditions as are customary or usual . . .

56.     Defendant's labeling and advertisements contain untrue and materially misleading statements concerning Defendant's Products inasmuch as they misrepresent that the Products are "Natural."

57.     Plaintiff and the New York Subclass Members have been injured inasmuch as they relied upon the labeling, packaging, and advertising and paid a premium for the Products which were—contrary to Defendant's representations—not natural.  Accordingly, Plaintiff and the New York Subclass Members received less than what they bargained and/or paid for.

58.     Defendant's advertising, packaging, and Products' labeling induced Plaintiff and the New York Subclass Members to buy Defendant's Products.

59.     Defendant made its untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

60.     Defendant's conduct constitutes multiple, separate violations of N.Y. Gen. Bus. Law § 350.

61.     Defendant made the material misrepresentations described in this Complaint in Defendant's advertising and on the Products' packaging and labeling.

62.     Defendant's material misrepresentations were substantially uniform in content, presentation, and impact upon consumers at large.  Moreover, all consumers purchasing the Products were and continue to be exposed to Defendant's material misrepresentations.

63.     As a result of Defendant's recurring, "unlawful" deceptive acts and practices, Plaintiff and New York Subclass Members are entitled to monetary, statutory, compensatory, treble and punitive damages, restitution, and disgorgement of all moneys obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

### THIRD CAUSE OF ACTION
### BREACH OF EXPRESS WARRANTY
**(On Behalf of Plaintiff and All Class Members)**

64.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

65.     Defendant provided Plaintiff and Class Members with an express warranty in the form of written affirmations of fact promising and representing that the Products are "Natural."

66.     The above affirmations of fact were not couched as "belief" or "opinion," and were not "generalized statements of quality not capable of proof or disproof."

67.     These affirmations of fact became part of the basis for the bargain and were material to Plaintiff's and Class Members' transactions.

68.     Plaintiff and Class Members reasonably relied upon Defendant's affirmations of fact and justifiably acted in ignorance of the material facts omitted or concealed when they decided to buy Defendant's Products.

69.     Within a reasonable time after knowing of Defendant's breach, Plaintiff, on behalf of herself and Class Members, placed Defendant on notice of its breach, giving Defendant an opportunity to cure its breach, which it refused to do.  More specifically, on or about September 21, 2021, Plaintiff -- by way of counsel -- sent a letter via overnight mail to Defendant along with

100

a Draft Complaint (which included a breach of express warranty cause of action and which was materially and substantively similar to the Complaint that was ultimately filed).  The letter indicated, among other things, that Defendant was engaging in deceptive acts and practices by falsely warranting that its Products were "Natural," when in fact they were not "Natural."  The letter also indicated that the Draft Complaint or a version thereof would be filed if Defendant did not cure its breach within 30 days.  Defendant received the letter and Draft Complaint and retained counsel, who responded to the letter and Draft Complaint.

70.    Defendants thereby breached the following state warranty laws:

      a.      Code of Ala. § 7-2-313;

      b.      Alaska Stat. § 45.02.313;

      c.      A.R.S. § 47-2313;

      d.      A.C.A. § 4-2-313;

      e.      Cal. Comm. Code § 2313;

      f.      Colo. Rev. Stat. § 4-2-313;

      g.      Conn. Gen. Stat. § 42a-2-313;

      h.      6 Del. C. § 2-313;

      i.      D.C. Code § 28:2-313;

      j.      Fla. Stat. § 672.313;

      k.      O.C.G.A. § 11-2-313;

      l.      H.R.S. § 490:2-313;

      m.      Idaho Code § 28-2-313;

101

n.      810 I.L.C.S. 5/2-313;

o.      Ind. Code § 26-1-2-313;

p.      Iowa Code § 554.2313;

q.      K.S.A. § 84-2-313;

r.      K.R.S. § 355.2-313;

s.      11 M.R.S. § 2-313;

t.      Md. Commercial Law Code Ann. § 2-313;

u.      106 Mass. Gen. Laws Ann. § 2-313;

v.      M.C.L.S. § 440.2313;

w.      Minn. Stat. § 336.2-313;

x.      Miss. Code Ann. § 75-2-313;

y.      R.S. Mo. § 400.2-313;

z.      Mont. Code Anno. § 30-2-313;

aa.     Neb. Rev. Stat. § 2-313;

bb.     Nev. Rev. Stat. Ann. § 104.2313;

cc.     R.S.A. 382-A:2-313;

dd.     N.J. Stat. Ann. § 12A:2-313;

ee.     N.M. Stat. Ann. § 55-2-313;

ff.     N.Y. U.C.C. Law § 2-313;

gg.     N.C. Gen. Stat. § 25-2-313;

hh.     N.D. Cent. Code § 41-02-30;

102

ii.      II. O.R.C. Ann. § 1302.26;

jj.      12A Okl. St. § 2-313;

kk.    Or. Rev. Stat. § 72-3130;

ll.      13 Pa. Rev. Stat. § 72-3130;

mm.   R.I. Gen. Laws § 6A-2-313;

nn.    S.C. Code Ann. § 36-2-313;

oo.    S.D. Codified Laws, § 57A-2-313;

pp.    Tenn. Code Ann. § 47-2-313;

qq.    Tex. Bus. & Com. Code § 2.313;

rr.      Utah Code Ann. § 70A-2-313;

ss.     9A V.S.A. § 2-313;

tt.      Va. Code Ann. § 59.1-504.2;

uu.    Wash. Rev. Code Ann. § 6A.2-313;

vv.    W. Va. Code § 46-2-313;

ww.  Wis. Stat. § 402.313; and

xx.    Wyo. Stat. § 34.1-2-313.

71.    Defendant breached the express warranty because the Products are not "Natural" because they contain synthetic ingredients.

72.    As a direct and proximate result of Defendant's breach of the express warranty, Plaintiff and Class Members were damaged in the amount of the price they paid for the Products, in an amount to be proven at trial.

103

## JURY DEMAND

Plaintiff demands a trial by jury on all issues.

**WHEREFORE**, Plaintiff, on behalf of herself and the Class, prays for judgment as follows:

(a) Declaring this action to be a proper class action and certifying Plaintiff as the representative of the Class under Rule 23 of the FRCP;

(b) Enjoining Defendant from continuing its unlawful practices described herein;

(c) Awarding monetary damages and treble damages;

(d) Awarding statutory damages of $50 per transaction, and treble damages for knowing and willful violations, pursuant to N.Y. GBL § 349;

(e) Awarding statutory damages of $500 per transaction pursuant to N.Y. GBL § 350;

(f) Awarding punitive damages;

(g) Awarding Plaintiff and Class Members their costs and expenses incurred in this action, including reasonable allowance of fees for Plaintiff's attorneys and experts, and reimbursement of Plaintiff's expenses; and

(h) Granting such other and further relief as the Court may deem just and proper.

Dated: May 31, 2022

THE SULTZER LAW GROUP P.C.

Jason P. Sultzer /s/

By: _____

Jason P. Sultzer, Esq.
Joseph Lipari, Esq.
Daniel Markowitz, Esq.
85 Civic Center Plaza, Suite 200

104

Poughkeepsie, NY 12601
Tel: (845) 483-7100
Fax: (888) 749-7747
sultzerj@thesultzerlawgroup.com
liparij@thesultzerlawgroup.com
markowitzd@thesultzerlawgroup.com

Nick Suciu III*
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN PLLC**
6905 Telegraph Rd., Suite 115
Bloomfield Hills, MI 48301
Telephone: (313) 303-3472
Email: nicksuciu@milberg.com

Gary M. Klinger*
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Phone: 866.252.0878
Email: gklinger@milberg.com

Zoe Aaron*
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN PLLC**
405 E. 50th Street
New York, NY 10023
Telephone: (212) 594-5300
Fax: (865) 522-0049
Email: zaaron@milberg.com

*Pro Hac Vice Forthcoming*

*Counsel for Plaintiff and the Class*

# EXHIBIT "A"



United States Department of Agriculture
Agricultural Marketing Service
National Organic Program

1400 Independence Avenue SW.
Room 2646-South Building
Washington, DC 20250

NOP 5033-1
Effective Date: TBD
Page 1 of 3

# Draft Guidance
## Decision Tree for Classification of Materials as Synthetic or Nonsynthetic

Underlined terms defined on page 2





United States Department of Agriculture
Agricultural Marketing Service
National Organic Program

1400 Independence Avenue SW.
Room 2646-South Building
Washington, DC 20250

NOP 5033-1
Effective Date: TBD
Page 2 of 3

## Definitions (bolded terms in 7 CFR 205.2)

**Agricultural inputs.** All substances or materials used in the production or handling of organic agricultural products.

**Agricultural product.** Any agricultural commodity or product, whether raw or processed, including any commodity or product derived from livestock, that is marketed in the United States for human or livestock consumption.

**Allowed synthetic.** A substance that is included on the National List of synthetic substances allowed for use in organic production or handling.

*Chemical change.* A process (i.e. chemical reaction) whereby a substance is transformed into one or more other distinct substances.

*Extract.* To separate, withdraw, or obtain one or more constituents of an organism, substance, or mixture by use of solvents (dissolution), acid-base extraction, or mechanical or physical methods.

*Formulate.* To combine different materials according to a recipe or formula.

*Generic.* The common and familiar non-proprietary name.

*Manufacture.* To make a substance from raw materials.

*Natural source.* Naturally occurring mineral or biological matter.

*Naturally occurring biological process.* A process that occurs due to the action of biological organisms or subcomponents of biological organisms, such as enzymes. Examples of naturally occurring biological processes include, but are not limited to, fermentation, composting, manure production, enzymatic processes, and anaerobic digestion.

**Nonagricultural substance.** A substance that is not a product of agriculture, such as a mineral or a bacterial culture, that is used as an ingredient in an agricultural product. For the purposes of this part, a nonagricultural ingredient also includes any substance, such as gums, citric acid, or pectin, that is extracted from, isolated from, or a fraction of an agricultural product so that the identity of the agricultural product is unrecognizable in the extract, isolate, or fraction.

**Nonsynthetic (natural).** A substance that is derived from mineral, plant, or animal matter and does not undergo a synthetic process as defined in section 6502(21) of the Act (7 U.S.C. 6502(21)). For the purposes of this part, nonsynthetic is used as a synonym for natural as the term is used in the Act.

*Substance.* A generic type of material, such as an element, molecular species, or chemical compound, that possesses a distinct identity (e.g. having a separate Chemical Abstracts Service



United States Department of Agriculture
Agricultural Marketing Service
National Organic Program

1400 Independence Avenue SW.
Room 2646-South Building
Washington, DC 20250

NOP 5033-1
Effective Date: TBD
Page 3 of 3

(CAS) number, Codex International Numbering System (INS) number, or FDA or other agency standard of identity).

**Synthetic.** A substance that is formulated or manufactured by a chemical process or by a process that chemically changes a substance extracted from naturally occurring plant, animal, or mineral sources, except that such term shall not apply to substances created by naturally occurring biological processes.

**Table 1. Classification examples of inputs:**

| Substance | Classification | Explanation |
|---|---|---|
| Ash (burned wood) | Nonsynthetic | Substance is created by burning biological matter. |
| Calcium carbonate (limestone) | Nonsynthetic | Substance is produced from a natural source (mined mineral) and does not undergo chemical change. |
| Calcium oxide (quicklime) | Synthetic | Substance is produced from a natural source (mined mineral), but undergoes chemical change caused by heating the mineral. |
| Citric acid | Nonsynthetic | Substance is created from a naturally occurring biological process (microbial fermentation of carbohydrate substances). |
| Enzymes, without synthetic additional ingredients | Nonsynthetic | Substance is extracted from a natural source and is not formulated with synthetic ingredients |
| Gibberellic acid | Nonsynthetic | Substance is extracted from a natural source without further chemical change |
| Liquid fish products – pH adjusted with phosphoric acid | Synthetic | Substance is derived from a natural source, but is treated with synthetic acids for pH adjustment. |
| Molasses | Nonsynthetic | Substance is derived from a natural source and chemical change is due to heating or naturally occurring biological processes. |
| Newspaper | Synthetic | Substance is manufactured via a chemical process. |
| Raw manure | Nonsynthetic | Substance is from a natural source and used without further processing. |
| Rosemary oil | Nonsynthetic | Substance is extracted from a natural source. |

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Eastern District of New York

| | |
|---|---|
| Natalie Orrico, individually and on behalf of all others similarly situated | ) ) ) ) |
| _Plaintiff(s)_ | ) ) |
| v. | ) ) |
| Nordic Naturals, Inc. | ) ) ) ) |
| _Defendant(s)_ | ) |

Civil Action No.

## SUMMONS IN A CIVIL ACTION

To: _(Defendant's name and address)_  Nordic Naturals, Inc.
111 Jennings Drive
Watsonville, CA 95076

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

| | |
|---|---|
| The Sultzer Law Group P.C. | Milberg Coleman Bryson Phillips |
| Jason P. Sultzer, Esq. | Grossman  PLLC |
| 85 Civic Center Plaza, Suite 200 | Nick Suciu III, Esq. |
| Poughkeepsie, NY 12601 | 6905 Telegraph Road, Suite 115 |
| | Bloomfield Hills, MI 48301 |

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

DOUGLAS C. PALMER
_CLERK OF COURT_

Date: _____        _____

_Signature of Clerk or Deputy Clerk_

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.

**PROOF OF SERVICE**
*(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❏ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❏ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❏ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

❏ I returned the summons unexecuted because _____ ; or

❏ Other *(specify):*



My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.


Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

JS 44 (Rev. 4-29-21)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

**I. (a) PLAINTIFFS**
Natalie Orrico, individually and on behalf of all others similarly situated

**DEFENDANTS**
Nordic Naturals, Inc.

**(b)** County of Residence of First Listed Plaintiff  Nassau
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
The Sultzer Law Group P.C.      Jason P. Sultzer, Esq.
85 Civic Center Plaza, Suite 200     (845) 483-7100
Poughkeepsie, NY 12601

Attorneys *(If Known)*

**II. BASIS OF JURISDICTION** *(Place an "X" in One Box Only)*

- [ ] 1  U.S. Government Plaintiff
- [ ] 3  Federal Question *(U.S. Government Not a Party)*
- [ ] 2  U.S. Government Defendant
- [x] 4  Diversity *(Indicate Citizenship of Parties in Item III)*

**III. CITIZENSHIP OF PRINCIPAL PARTIES** *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [x] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [x] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

**IV. NATURE OF SUIT** *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 422 Appeal 28 USC 158 | [ ] 375 False Claims Act |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 365 Personal Injury - | [ ] 690 Other | [ ] 423 Withdrawal 28 USC 157 | [ ] 376 Qui Tam (31 USC 3729(a)) |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability | Product Liability | | | [ ] 400 State Reapportionment |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & | [ ] 367 Health Care/ Pharmaceutical Personal Injury | | **PROPERTY RIGHTS** | [ ] 410 Antitrust |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | Slander | Product Liability | | [ ] 820 Copyrights | [ ] 430 Banks and Banking |
| [ ] 151 Medicare Act | [ ] 330 Federal Employers' Liability | [ ] 368 Asbestos Personal Injury Product Liability | | [ ] 830 Patent | [ ] 450 Commerce |
| [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans) | [ ] 340 Marine | | | [ ] 835 Patent - Abbreviated New Drug Application | [ ] 460 Deportation |
| | [ ] 345 Marine Product Liability | **PERSONAL PROPERTY** | | [ ] 840 Trademark | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 350 Motor Vehicle | [x] 370 Other Fraud | **LABOR** | [ ] 880 Defend Trade Secrets Act of 2016 | [ ] 480 Consumer Credit (15 USC 1681 or 1692) |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle Product Liability | [ ] 371 Truth in Lending | [ ] 710 Fair Labor Standards Act | | [ ] 485 Telephone Consumer Protection Act |
| [ ] 190 Other Contract | [ ] 360 Other Personal Injury | [ ] 380 Other Personal Property Damage | [ ] 720 Labor/Management Relations | **SOCIAL SECURITY** | [ ] 490 Cable/Sat TV |
| [ ] 195 Contract Product Liability | [ ] 362 Personal Injury - Medical Malpractice | [ ] 385 Property Damage Product Liability | [ ] 740 Railway Labor Act | [ ] 861 HIA (1395ff) | [ ] 850 Securities/Commodities/ Exchange |
| [ ] 196 Franchise | | | [ ] 751 Family and Medical Leave Act | [ ] 862 Black Lung (923) | [ ] 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | [ ] 790 Other Labor Litigation | [ ] 863 DIWC/DIWW (405(g)) | [ ] 891 Agricultural Acts |
| [ ] 210 Land Condemnation | [ ] 440 Other Civil Rights | **Habeas Corpus:** | [ ] 791 Employee Retirement Income Security Act | [ ] 864 SSID Title XVI | [ ] 893 Environmental Matters |
| [ ] 220 Foreclosure | [ ] 441 Voting | [ ] 463 Alien Detainee | | [ ] 865 RSI (405(g)) | [ ] 895 Freedom of Information Act |
| [ ] 230 Rent Lease & Ejectment | [ ] 442 Employment | [ ] 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** | [ ] 896 Arbitration |
| [ ] 240 Torts to Land | [ ] 443 Housing/ Accommodations | [ ] 530 General | | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| [ ] 245 Tort Product Liability | [ ] 445 Amer. w/Disabilities - Employment | [ ] 535 Death Penalty | **IMMIGRATION** | [ ] 871 IRS—Third Party 26 USC 7609 | [ ] 950 Constitutionality of State Statutes |
| [ ] 290 All Other Real Property | [ ] 446 Amer. w/Disabilities - Other | **Other:** | [ ] 462 Naturalization Application | | |
| | [ ] 448 Education | [ ] 540 Mandamus & Other | [ ] 465 Other Immigration Actions | | |
| | | [ ] 550 Civil Rights | | | |
| | | [ ] 555 Prison Condition | | | |
| | | [ ] 560 Civil Detainee - Conditions of Confinement | | | |

**V. ORIGIN** *(Place an "X" in One Box Only)*
- [x] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

**VI. CAUSE OF ACTION**
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. § 1332(d)(2)
Brief description of cause:
Neg. & Int., Unjust Enrichment

**VII. REQUESTED IN COMPLAINT:**
[x] CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.
DEMAND $ 5,000,000.00
CHECK YES only if demanded in complaint:
JURY DEMAND: [x] Yes  [ ] No

**VIII. RELATED CASE(S) IF ANY**  *(See instructions):*
JUDGE _____   DOCKET NUMBER _____

DATE
5/31/2022

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

# CERTIFICATION OF ARBITRATION ELIGIBILITY

Local Arbitration Rule 83.7 provides that with certain exceptions, actions seeking money damages only in an amount not in excess of $150,000, exclusive of interest and costs, are eligible for compulsory arbitration. The amount of damages is presumed to be below the threshold amount unless a certification to the contrary is filed.

Case is Eligible for Arbitration ☐

I, _Jason P Sultzer_____, counsel for _____Plaintiff and The Class_____, do hereby certify that the above captioned civil action is ineligible for compulsory arbitration for the following reason(s):

☑ monetary damages sought are in excess of $150,000, exclusive of interest and costs,

☑ the complaint seeks injunctive relief,

☐ the matter is otherwise ineligible for the following reason

## DISCLOSURE STATEMENT - FEDERAL RULES CIVIL PROCEDURE 7.1

Identify any parent corporation and any publicly held corporation that owns 10% or more or its stocks:

## RELATED CASE STATEMENT (Section VIII on the Front of this Form)

Please list all cases that are arguably related pursuant to Division of Business Rule 50.3.1 in Section VIII on the front of this form. Rule 50.3.1 (a) provides that "A civil case is "related" to another civil case for purposes of this guideline when, because of the similarity of facts and legal issues or because the cases arise from the same transactions or events, a substantial saving of judicial resources is likely to result from assigning both cases to the same judge and magistrate judge." Rule 50.3.1 (b) provides that " A civil case shall not be deemed "related" to another civil case merely because the civil case: (A) involves identical legal issues, or (B) involves the same parties." Rule 50.3.1 (c) further provides that "Presumptively, and subject to the power of a judge to determine otherwise pursuant to paragraph (d), civil cases shall not be deemed to be "related" unless both cases are still pending before the court."

## NY-E DIVISION OF BUSINESS RULE 50.1(d)(2)

1.) Is the civil action being filed in the Eastern District removed from a New York State Court located in Nassau or Suffolk County? ☐ Yes ☑ No

2.) If you answered "no" above:
a) Did the events or omissions giving rise to the claim or claims, or a substantial part thereof, occur in Nassau or Suffolk County? ☐ Yes ☑ No

b) Did the events or omissions giving rise to the claim or claims, or a substantial part thereof, occur in the Eastern District? ☑ Yes ☐ No

c) If this is a Fair Debt Collection Practice Act case, specify the County in which the offending communication was received: .

If your answer to question 2 (b) is "No," does the defendant (or a majority of the defendants, if there is more than one) reside in Nassau or Suffolk County, or, in an interpleader action, does the claimant (or a majority of the claimants, if there is more than one) reside in Nassau or Suffolk County? ☐ Yes ☐ No
*(Note: A corporation shall be considered a resident of the County in which it has the most significant contacts).*

## BAR ADMISSION

I am currently admitted in the Eastern District of New York and currently a member in good standing of the bar of this court.

☑ Yes ☐ No

Are you currently the subject of any disciplinary action (s) in this or any other state or federal court?

☐ Yes (If yes, please explain ☑ No

I certify the accuracy of all information provided above.

**Signature**: _____

Last Modified: 11/27/2017

**Attachment C**



Search Amazon  

# View order details

|  |  |
|---|---|
| Order date | Aug 24, 2021 |
| Order # | 111-1200294-5313833 |
| Order total | $19.51 (1 item) |

# Shipment details

FREE Prime Delivery

## Delivered

Delivery Estimate

**Thursday, August 26, 2021 by 10pm**

 **Nordic Naturals Omega 3 Gummies (60)** $19.51

Qty: 1

Sold By: recommerce

# Payment information

**Payment Method**
Amazon.com Visa Signature ending in 2971

Earned 5% Back with your Amazon Prime Rewards Visa Signature card. See terms and conditions. ›



   0