UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF NEW YORK (BROOKLYN)

NATALIE ORRICO, individually and on behalf of all others similarly situated,

Case No. 1:22-CV-03195-NRM-PCG

Plaintiff,

Brooklyn, New York
March 12, 2026

v.

NORDIC NATURALS, INC.,

Defendant.

TRANSCRIPT OF STATUS CONFERENCE HEARING
BEFORE THE HONORABLE PEGGY CROSS-GOLDENBERG
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

| | |
|---|---|
| For the Plaintiff: | Joseph Lipari, Esq.<br>Daniel H. Markowitz, Esq.<br>Sultzer & Lipari, PLLC<br>85 Civic Center Plaza<br>Suite 200<br>Poughkeepsie, NY 12601 |
| For the Defendant: | Andrew J. Marino, Esq.<br>Caroline E. Oks, Esq.<br>FBT Gibbons, LLP<br>One Gateway Center<br>Newark, NJ 07102-5310 |
| Also Appearing: | Nick Suciu, III |
| Clerk: | Unknown |
| Court Recorder: | Electronic Sound Recording |
| Transcription Service: | Chris Hwang<br>Abba Reporting<br>PO Box 223282<br>Chantilly, Virginia  20153<br>(518) 302-6772 |

Proceedings recorded by electronic sound recording; transcript produced by transcription service.

(Call to order)

THE CLERK:  Civil cause for a status conference, docket number 22-CV-3195, Orrico v. Nordic Naturals, Inc.  Will the parties -- before I ask the parties to state their appearance for the record, the parties are asked to state their name each time they speak.  Speak one at a time and stay muted when they are not speaking.

The parties can utilize *6 to mute and unmute as needed.  Now may I ask the parties to please state their appearance for the record starting with the Plaintiff?

MR. LIPARI:  Good morning, Your Honor, Joseph Lipari on behalf of Natalie Orrico.

THE COURT:  Good morning.

MR. MARKOWITZ:  Good morning, Daniel Markowitz on behalf of the Plaintiff Natalie Orrico.

THE COURT:  Good morning.

MR. SUCIU:  Good morning, Your Honor, Nick Suciu on behalf of Plaintiff.

THE COURT:  Good morning.

MR. SUCIU:  Good morning.

MR. MARINO:  Good morning, Your Honor, this is Andrew Marino from FBT Gibbons on behalf of the Defendant Nordic Naturals, Inc.

THE COURT:  Good morning.

MS. OKS:  And good morning, Your Honor, this is

Caroline Oks from FBT Gibbons on behalf of the Defendant as well.

THE COURT: Okay, good morning, everyone. I think we got everyone. I just -- I'm pulling up the docket sheet. I just have a question.

Mr. Suciu, did I say that right?

MR. SUCIU: Suciu, Your Honor, yeah, I will make an appearance. I apologize.

THE COURT: Okay, I just wanted to make sure. And are you at the same firm as Mr. Lipari and Ms. Markowitz?

MR. SUCIU: No, I'm with Bryson, Harris, Suciu, Demay.

THE COURT: Okay, so you'll file a notice of appearance after we finish this proceeding?

MR. SUCIU: Correct.

THE COURT: Okay, thank you.

MR. SUCIU: Sorry.

THE COURT: I'm sorry, go ahead? Did -- were --

MR. SUCIU: Nothing Your Honor, I just apologized.

THE COURT: Oh, that's okay.

All right, so we are here today to discuss status of expert discovery and the next steps in this case. I have your letters. I have Judge Pollak's order on the issue of expert discovery from -- that she issued last year that the parties have different interpretations of.

So what I would like to do is start just with a summary from each side about where you see the issue, what you are looking for from me, and what you think the next step in this case should be.

So I'll start with somebody on behalf of the Plaintiff?

MR. LIPARI:  Thank you, Your Honor.  Thank you this is Joseph Lipari on behalf of the Plaintiff Orrico.

THE COURT:  Sorry, Mr. Lipari, you're cutting in and out.

MR. LIPARI:  Okay, hopefully this is better, sorry, Your Honor.  How's that?

THE COURT:  It is better.  Thank you.

MR. LIPARI:  Terrific, okay.  So on behalf of the Plaintiff, Your Honor, as we said in our most recent correspondence to the Court, February 20th, 2026, the previous magistrate judge did not deny our motion.  Rather, she denied it in part and granted it in part.

And the order, as we characterized it, and I think any reasonable interpretation suggests, is essentially a middle path.

The middle path is it's set forth in the order.  And the magistrate recognized that at the certification stage, there should be a preliminary analysis in order to support the methodologies and conclusions of the experts.

The magistrate judge indicated that at least some expert discovery should be completed at this time, and then, indicated that there should be expert reports and expert depositions would be held in abeyance.

I think that, again, the context and any reasonable interpretation in the order suggests that the magistrate judge didn't find -- did in fact find a middle path, which would enable us to as an initial matter set forth what those methodologies would be, the proposed methodologies, and then, enable us to as needed, supplement after a certification motion.

So the other side Defendant indicates that, well, they should be able to move for summary judgment now. As we point out in our February 20th letter, if they move now, that would only apply to Natalie Orrico individually. It would not apply classwide. In other words, it wouldn't be a classwide motion for summary judgment.

And that would be a waste because Natalie Orrico individually has already testified that she was deceived, that the term naturals was material to her purchase, and that in her estimation, naturals meant 100 percent natural.

Now the -- some of the case law that is cited by the magistrate judge in her December order includes two 2nd Circuit cases, Authors Guild and Schweizer (phonetic).

And you know, notably, they indicate that, well, it's

not always a foregone conclusion that certification has to go before summary judgment. Sometimes you can hold a certification motion in abeyance and you can brief summary judgment first.

But importantly, those cases simply support our position, right? In Authors Guild, for instance, the 2nd Circuit indicated that, well, in this case, summary judgment could precede certification.

And that is because the Defendant in that case, Google, had a fair use affirmative defense. It would be a complete bar to litigation. So under those circumstances, it was appropriate to go for summary judgment first.

Then there's the Schweizer case, Schweizer v. Transunion. That's another case that was cited by the magistrate judge in her December order.

In that case, you know, once again, the Court said, you know, we can move forward with summary judgment before we get to certification.

And the reason was the Plaintiff never moved for certification first as an initial matter, but also, the individual claim could be disposed of that was in connection with a debt collection letter. And the Court said that the debt collection that the Plaintiff received would not violative of the statute. So summary judgment motion was appropriate and it applied solely to those individual Plaintiffs.

Here, what the Defendant seems to be suggesting is that the Court should not allow Plaintiffs to file a certification motion, but should immediately go to the summary judgment phase and do it on a classwide basis. And as we indicated in the letter, there's really no authority for that.

Now to the extent that there are varying interpretations of the magistrate judge's December order, we think that the order should be interpreted in a manner consistent with 2nd Circuit case law.

And as we indicated in our prior briefing in and the February 20th letter, 2nd Circuit case law is fairly clear that at the certification stage, Plaintiff merely needs to come forward with a damages model that's consistent with the liability theory. And experts are not required to actually perform the analysis, but simply need to come forward with a proposal of their methodologies. And that's what we've done here, Your Honor.

So, in terms of what we want, what we want is the ability to move forward with certification with the ability to supplement post certification. And when I say supplement post certification, I mean, enabled by our experts to actually conduct their analysis.

So we disclosed two experts. One was a damages expert, who would opine on price premium. And the other was a survey expert, who would conduct the survey for various

purposes, including to enable our price premium expert to come up with a price premium.

So we would ask that we'd be able to supplement that post certification so that they can run their methodologies or run the studies, and thereafter, we would move on to the summary judgment phase.

If Defendant wants to move forward with summary judgment now, for the reasons I just stated, you know, it would be a waste of time that would apply solely to the individual Orrico. It wouldn't be the classwide summary judge motion. Thank you.

THE COURT: Thank you. I just want to ask you a couple questions. So you -- your -- I think what you said was your position is that at the class certification stage, all Plaintiffs need to come up with is a damages model that is consistent with liability, correct?

MR. LIPARI: Your Honor, that is part of it. According to Price v. L'Oreal USA, it's at the class certification stage, a plaintiff's damages model must be consistent with its liability theory. And at the class certification stage, materiality must be determined on an objective standard and there must be a demonstration that subject to classwide proof.

However, in that same case and in other cases in the 2nd Circuit, for purposes of determining materiality, it would

be sufficient to come forward with an affidavit from the Plaintiff indicating that the purchase was material to them.

Moreover, it would be sufficient to come forward with expert declarations. And it's not even, you know, strictly required, but it would be sufficient to come forward with expert declarations as to that materiality prong.

But a Plaintiff need not run full fledged studies and do a survey analysis at that stage in order for certification to be successful.

THE COURT: Okay, so one thing that I think is unclear from some of the terms that you're using, like supplement and -- well, what additional expert testimony or reports you would anticipate after the class certification stage. And so, I'm wondering what you can tell me to sort of define those terms better?

And really what I mean by that is, is it your position that what you have provided to the Defendants is the universe of what you would rely on regarding experts at the class certification stage?

MR. LIPARI: Your Honor, that's a great question and the answer is yes. We have provided the universe of what we would rely on at the class certification stage.

THE COURT: Okay.

MR. LIPARI: And when I refer -- and when I refer Your Honor to supplementation, just to be clear and define the

term, I'm simply referring to the -- so we're not talking about some sort of like thumbnail, two or three page disclosure. I realize that the expert disclosures are not before Your Honor, but they are very detailed and comprehensive.

I believe, you know, they run in the 40, 50 pages each, something like that. So they're very, very comprehensive in terms of laying out the methodology, the approach, et cetera.

The supplementation, as I refer to it, simply running the analysis. So, in other words, running the analysis such that the price premium can specifically be ascertained. And by that, I simply mean plugging in the numbers.

And by plugging in the numbers, that'll -- so means reliance upon the third expert, who actually runs the survey, the survey design and methodology and the parameter of the survey.

THE COURT: Sorry, Mr. Lipari. You're cutting out again. Just go back a couple sentences. I couldn't quite hear you.

MR. LIPARI: Oh, sure. Sure. So I was explaining that the -- so the damages expert would run the analysis to come up with a price premium, but would also be relying in part on the survey expert, who would run the survey.

And just to be clear, that survey expert report that we already disclosed, it laid out the design, the parameters,

the methodology.  It's very comprehensive in terms of what it would look like and what it would entail.

So to the extent for supplementation it's simply, you know, plugging it in and running the analysis consistent with exactly how it was described in our papers --

THE COURT:  Okay, so --

MR. LIPARI:  -- or our expert disclosures.

THE COURT:  Okay, so your February 2nd expert disclosures, when you said they were preliminary in nature, and that you reserved the right to supplement with final reports, the reports that you provided on February 2nd are like complete and final to the extent they describe the methodology regarding price premium and survey, right?

And what you mean by supplement with final reports is actually implementing that methodology and running the numbers. Is that what you're saying?

MR. LIPARI:  Yes, Your Honor.

THE COURT:  Okay.  Okay, I think I have your position.  Is there anything you want to add before I turn to counsel for the Defendants?

MR. LIPARI:  Well, Your Honor, I'll just say this as a point of clarification, you know, just so that there's no misunderstanding.  How Your Honor characterized it a moment ago, I said yes and that is correct.

To the extent that running those numbers and running

the survey requires the expert to actually affirmatively opine based upon those figures or whatever it is that they've run, we would do that also.

So it's not simply a matter of, okay, the number is 40. It's the number is 40, and then, here are the corresponding opinions. So I just wanted to be clear about that.

THE COURT: Right, okay. And as you said, I haven't seen what you provided in February. So I, you know, wherever we land on this issue, I, you know, I can't say whether it's sufficient or insufficient, you know, to you know support or survive summary judgment, right?

I'm not -- this is not about the merits of what's in the expert reports. But for example, if the expert on price premium says -- like explains the methodology, is there a sort of if then in these preliminary reports that you provided, meaning if the numbers show X, Y, and Z, then it means there was deception or is there no sort of indication of what their opinions might be depending on the numbers?

MR. LIPARI: No, no. There isn't an indication, Your Honor. I'm simply saying, you know, I don't want to be confined to, okay, we're simply plugging it in without any corresponding opinions.

But they are very comprehensive. And as you characterized the sort of if then, there are references to

that, Your Honor.  Again, I know we're sort of unfortunately speaking in the abstract because --

THE COURT:  Yes.

MR. LIPARI:  -- the reports aren't before Your Honor, but I mean, for instance, I mean, I'm looking at the price premium expert.

And you know, with -- let's see, without the appendix and without the exhibits, we're talking about a 50-page report.  So these are comprehensive, Your Honor.  This is not just a thumbnail sketch.

THE COURT:  Okay, so hypothetically, if you were responding to a motion for summary judgment or you were moving for class certification, you would rely on these reports to say we've alleged the deception or we've alleged the materiality.

And if the numbers show X, then that, you know, then we went on Y.  Like is that what's -- how it's laid out?

MR. LIPARI:  Well, Your Honor, I would just say it this way, okay?

THE COURT:  Uh-huh.

MR. LIPARI:  Based upon on these reports, we would be prepared to move for certification now.

With respect to summary judgment, if the Plaintiff wants to take -- rather if the Defendant wants to take the extraordinary step of moving for summary judgment now, that summary judgment motion as we've explained and the case law

supports it, would only apply -- not -- it wouldn't apply classwide.  It would only apply to Orrico.

THE COURT:  Okay.

MR. LIPARI:  And only her individually.  To the extent we're talking about materiality, we go to her deposition.

THE COURT:  Right.

MR. LIPARI:  Okay, where she already testified about that.  Or Your Honor, we go to a motion to dismiss order here, right, or the order on the motion to dismiss where the Court already said give -- and this is a quote, indeed, given that a reasonable consumer would likely conclude that the products were natural based on Defendant's labeling them as naturals, the Court similarly concludes that Plaintiff's (indiscernible) satisfy that the breach of express warranty, too.

So my point, Your Honor, is that's what we would be dealing with.

THE COURT:  Right.

MR. LIPARI:  These expert reports would not necessarily even come into play because we're dealing with the individual Plaintiff, not any kind of a classwide summary judgment.

THE COURT:  Okay.

MR. LIPARI:  To the extent that we're doing a -- to the extent that we're doing a classwide summary judgment,

that's a different animal.

THE COURT: Right.

MR. LIPARI: And that's when -- and that's when, Your Honor, we would have to supplement such that the experts would have to put in, you know, something additional where they actually run the methodology, they run the analysis, they implement it.

THE COURT: Okay, so -- and you know, one of the main questions I had in reading the papers was, as I said, like what you meant by supplement, what you meant by preliminary.

And so, but I -- that last sentence that you just said, so your -- you would be prepared to move for class certification with these expert reports. And --

MR. LIPARI: Yes.

THE COURT: -- it wouldn't be until after, if a class is certified, that you would move to the implementation of the methodologies? Is that right?

MR. LIPARI: Correct. Yes, Your Honor, correct.

THE COURT: Okay. So I think I have your position. If the -- and actually, I think we might have lost one of your colleagues or maybe they came into your office and joined you, but if the Plaintiff's counsel can go on mute and I'll turn to whoever wants to address these issues for the defense.

And I guess I would ask you to sort of start with this question of where you see the case going? Are you

prepared to move for summary judgment against the individual Plaintiff or would we move to the class certification motion stage?

MR. MARINO: Sure, Your Honor. So this is Andrew Marino from FBT Gibbons on behalf the Defendant. I will directly answer that question, but let me just step back briefly and say if the Court has not read docket entries 64 and 65, which were our letters that precipitated Judge Pollak's order, I think those shed important context.

We're not writing on a blank slate in this case. There have been at least two fairly significant and lengthy naturals, quote, unquote litigations in the Southern District in recent years, the Delacore case and the In re: Kind case, which became Bustamante in the 2nd Circuit. We are -- and those cases both ended in success for the Defendants.

So we're trying to match those outcomes, but we -- what we are trying to avoid and what the purpose of our dispute before Judge Pollak was, was to avoid what happened in both of those cases, which is there's fact discovery, there's a motion for class certification after fact disclosure that gets granted.

Then we move to expert disclosure. And then, we do further briefing, summary judgment, Daubert motions, and class B certification.

So we were trying to just have one round of class

certification briefing, not class cert. briefing which gets granted and then later on Class B certification. We really wanted to make the process efficient. That's what we argued for before Judge Pollak. That is why the --

THE COURT: So let me -- and I understand that. And I think probably, you know, any court would appreciate that attempt to avoid -- like that attempt to promote judicial efficiency.

But let me get right to that point though. In those cases, did they have at the class certification stage, were there expert reports laying out the methodology in the same we have here?

MR. MARINO: There were I believe affidavits from experts, perhaps a partial report like this, that said this is the survey we're going to run. I believe in both cases, they have not actually run a survey.

THE COURT: I mean, because it's conceivable, right, that in this like if then posture, that an expert would say if we run these reports or we run these surveys and we find out X, then there is deception, right?

But we don't know what the reports are going to show until they're run. And so, the class could be certified and then it could come back that actually, no, that we didn't get X, we got, you know, A. And A equals B. So now, you know, the litigation isn't going to succeed.

And to me, that does -- that's not judicial inefficiency, right? That is -- like it would be equally as inefficient I think to have to frontload all of that before we know if there's going to be a class certified anyway.

MR. MARINO: So I want to make two points in response.

THE COURT: Sure.

MR. MARINO: One is, and this is germane to something we said in our letter, which is there is no, you know, potential evidence of deception, right? What the -- what these preliminary quote unquote reports are targeting is the Rule 23 factors commonality, predominance.

They do not go to deception. I think that's what we said in our letter, which would be sort of the substantive GBL claim element that we would -- one of the elements that we would target on summary judgment. There's no evidence of deception.

And I just wanted to emphasize that because --

THE COURT: Okay.

MR. MARINO: -- I think I heard Plaintiff's counsel say a couple times there is evidence in the record of materiality and of deception.

There isn't. As we said in our letter and as the Southern District and the 2nd Circuit said in the Kind case and the Delacore case, right, the -- under the GBL, you need expert

testimony to show materiality and to show deception even as to a single Plaintiff.

That's why it's an objective statute. That's why like California, like Florida, like Illinois, the New York GBL is such an attractive target for Plaintiffs in class actions, because its objective, and so, it's very -- it's not based in a lot of its elements on the individual purchaser.

And so, you can sort of take the whole class and apply a lot of the same evidence. That's how the argument goes. Obviously, not conceding that.

THE COURT: Okay, so let me stop you there. You're saying that if you proceeded to a summary judgment motion just against the individual Plaintiff, even with her testimony as to materiality, that the Defendants would -- could prevail because the Plaintiffs didn't have an expert on that point? Is that your position?

MR. MARINO: That is. And we say that at docket entry 65, pages 2 to 3.

THE COURT: Yeah.

MR. MARINO: The Delacore case held that in order for naturals -- in order to show that use of naturals deceptive, you need expert testimony.

THE COURT: So your position is you are prepared to move -- to go to summary judgment against the individual Plaintiff at this point? That's what you see the next step?

MR. MARINO:  That is, yes, that is what we requested in our letter.  We believe because they are not going to introduce expert testimony as to deception, right, as to the reasonable consumer standard.

If they're not going to do -- introduce expert testimony as to materiality, if they don't have concrete evidence as to a price premium, this case would be ripe for summary judgment.  That is our sort of -- that's what we're leading with, yes.

THE COURT:  So why wouldn't the -- I mean, why wouldn't her for example on the price premium point, right, the -- her testimony that, you know, there was a premium.

And again, I -- this is all hypothetical in the sense that I haven't seen the reports, I haven't seen any testimony.  So I don't want my questions to be -- to imply that I think, you know, something meets the standard or doesn't meet the standard.  I'm just trying to nail down the parties' position.

So her testimony related to price premium for herself, combined with the damages expert's opinion on price premium that if X is true, then there is, you know, there was a price premium based on the term naturals, your position is that would not be enough because the expert would actually have had to run a report a -- to run a survey?

MR. MARINO:  Yes, the expert would definitely have had to run a survey in order to generate evidence that could

potentially support a price premium.

Now I think we would be champing at the bit to move for a Daubert preclusion, but yes, the -- as it stands now, our position is there's no evidence in the record that that could support a finding of a price premium. Her testimony would not be sufficient.

We think that's something else we said in our letter at docket entry 65. There's a case, I think it's L'Oreal, I think it's Price against L'Oreal where the case is de-certified after the conjoint survey was excluded. And then, once it was excluded, there was just no evidence period of a price premium.

So that's why our position was this is sort of pre-certification or -- yeah, pre-certification versus post certification summary judgment standard. It's just not -- fundamentally does not seem correct to us.

I mean, we would be, even post certification, we would be comfortable moving for summary judgment against the Plaintiff in her individual capacity.

And then, once there's no named Plaintiff, you know, the class would be de-certified as a matter of course. So it doesn't -- it's not a huge difference to us. It's just to us the cleanest way to resolve this case.

But again, what we were really -- what we were really trying to avoid is there's -- if Plaintiff's motion for class certification on this sort of preliminary basis is granted,

right, then same courts say after class certification is granted early in the case is it's only ever a tentative decision. It is never final, right? It's not subject to law of the case. It's not preclusive. It's always subject to a re-evaluation after evidence comes in.

And so, what we saw in the Delacore case, what we saw in the Kind case, there's expert testimony that comes in and it's either insufficient in and of itself, right, or it gets Dauberted in whole or in part, or a motion for summary judgment gets granted in whole or in part.

And all of a sudden, the sort of hypothetical or preliminary or tentative experts' underpinning of the decision granting certification is, you know, the rug is pulled out from under the decision.

THE COURT: Right.

MR. MARINO: And they get de-certified. So we just wanted one round of briefing. We thought it would be clean if it's -- and if it's simultaneous with SJ and with Daubert, all of the issues are sort of presented to Judge Morrison. They're tied in a little bow. It's a clean set of documents that can easily be reviewed.

We just -- we really did not want to waste the time that this sort of course of action has led to. And we think Judge Pollak's order acknowledged that. At page 8 and page 9, she acknowledges that expert testimony is going to be

necessary.

She -- her order nowhere, nowhere bifurcates this case between certification and merits. It does not order a round of -- two rounds of expert discovery.

I mean, what has ended up happening, Your Honor, is this has ended up being more expensive. Plaintiff's initial position as set forth in their letter, and we had oral argument before Judge Pollak, but their initial position was we just want, you know, these little affidavits from our experts setting forth what they're going to do.

And now, it's evolved from expert -- from affidavits to ostensibly, you know, full but preliminary expert reports, which we may or may not have to respond to. So it's even more expensive than what they had previously asked for in the first place.

So this just can't, just a reasonable reading of the order, this just can't be what Judge Pollak would have intended.

THE COURT: I mean, whatever Judge Pollak intended, I'm the judge now.

MR. MARINO: Right.

THE COURT: And I have to say that I think both -- like both ways are equally inefficient if you say it all has to be done up front, or it all gets to be done, you know, after the certification.

Like I understand your point that, you know, and I've reviewed the Kind litigation and, but I understand that I think the phrase you used was like pulling the rug out, you know, once the evidence comes in. And then, you know, the case gets dismissed why that feels inefficient, but I think to frontload it all is also inefficient.

And my reading of Judge Pollak's opinion and the, you know, briefing that led up to it, is this kind of middle of the road thing.

It's true she didn't rigidly bifurcate the expert process, but she also did not say this is it, right? I mean, she talked about, well, first of all, she held the depositions in abeyance, right? And she talked about preliminary analysis and how it didn't -- it wasn't efficient to wait until after class certification.

And so, moving forward with at least some expert discovery at this time was appropriate in her view. And I -- to me, that is this kind of middle ground of we don't want to do it all or nothing either way because that's what's inefficient.

MR. MARINO: So -- sorry.

THE COURT: And I just -- I want to be clear that I'm, you know, you heard my questions to Plaintiff that even though, you know, if we call these preliminary, that can mean different things.

I'm hearing Plaintiff to say these reports are like final for this stage. And they're what we would rely on in our class certification motion.

If that was the next step in this case, right, that the Plaintiff was going to move for class certification, I have two questions for you, Mr. Marino.

The first is would the Defendants be prepared to initiate the briefing on that now or would you want response -- time to put in a responsive expert report? That's my first question.

And my second question is, you know, you mentioned presenting it all to Judge Morrison with a neat little bow. Do you -- are you proposing to brief all three of those things, class certification, summary judgment, and Daubert based on where we are now?

MR. MARINO: So, for your first question, we would respectfully request an extension of our time to respond. We would need to evaluate a little further with our experts what we would say in response.

THE COURT: That --

MR. MARINO: And the reason for that is there's going to be essentially two rounds of expert briefing. We just need to think tactically and specifically and jurisprudentially about what to present now, and what to respond to in our next round, and what to hold back.

You know, we would still -- we would like to -- I would have to think about Daubert motions, but if these are just preliminary, maybe and maybe not. And then, you know, it might be best to sort of confer internally and discuss that further.

We would like to move for summary judgment as soon as possible, but we may need to just term -- if that's the way the Court is going to go, we may need to discuss with our experts just what is possible and the best way forward.

THE COURT: Okay, I mean, I understand that this, you know, the back and forth and the time you all are waiting to speak with me, you know, like ran your I forget you had 60 days or whatever to respond.

So, in terms of that, if you need time to confer with your client and internally and with your experts, you know, I -- an extension of time on that, I, you know, that makes perfect sense to me.

So why don't you -- this is where I think I want to leave it for today. I have your I think very well stated positions from both sides. And I would like you to confer with your clients. And let me know if the case -- if the case is proceeding to a class certification motion as the next step, you know, what do Defendants need before that can happen?

So meaning, you know, how many time do you need to put in your expert reports? I assume that the parties, and I

heard Plaintiff say they're ready to move, would be prepared to move or litigate, I'm sorry, the class question on, you know, on the expert papers that you wouldn't need expert depositions. But if I'm wrong about that, you'll tell me.

And then, if you can answer that second question, Mr. Marino, if you know, if we're proceeding with briefing on the class certification motion, do you want to brief anything else simultaneously?

MR. MARINO: Understood, Your Honor. And so, let me just clarify what I said earlier, which is --

THE COURT: Please --

MR. MARINO: -- you know, we would be happy to move for summary judgment. I just anticipate Plaintiff's counsel saying they would then want to introduce further expert testimony and but that -- I -- their position my complicate our position is all I'm saying, but we would be happy to move for expert -- for summary judgment today.

THE COURT: Okay, well, I -- let me ask Mr. Lipari that question, right? Because I think I got a clear answer that they would not be seeking to introduce any additional expert testimony with respect to briefing a class certification motion.

And I also heard him I thought to say that he didn't think they would need any additional expert testimony if the case proceeded to summary judgment briefing against the

individual Plaintiff.

Mr. Lipari, did I get that correct?

MR. LIPARI: Well, Your Honor, if the motion for summary judgment is limited to summary judgment as to individual Plaintiff, then I don't believe that we would need anything beyond the testimony and affidavits and what we have already put in.

In other words, if it's limited to the individual, then we could proceed. And I'm guided by what I think has been mischaracterized, which is that Delacore case, right? Contrary to what Defendant said in that certification motion, the court said as follows.

Defendants argue that plaintiffs cannot satisfy the materiality requirement because the term natural is defined differently by different consumers.

But the court is satisfied that at this stage of the litigation, plaintiffs have offered sufficient evidence that the natural claim is material.

Plaintiffs write in an affidavit, testified that she would not have purchased the deodorant if it hadn't stated natural, et cetera, et cetera. And plaintiff's experts have offered evidence by way of affidavit.

So, Your Honor, I mean, we would obviously be ready to proceed at certification with what we have on an individual summary judgment motion. And that's all it would be individual

at this stage, you know, we could proceed as we are.  However, we think it would be a waste of time.

THE COURT:  Okay.

MR. LIPARI:  And candidly, I would not want to limit myself if we're talking about a summary judgment motion because I don't know exactly what the parameters of that would be.  I mean, it's because up to Defendant -- Defendant's motion.

THE COURT:  Right.  Well, okay, so that's -- and I'm not going to hold either -- well, I'm not going to hold you to that answer or ask you for a final answer on that yet.  You know, think about it.

And I guess what I would like to know then from Plaintiff is if the case proceeds, if we brief multiple things simultaneously, so if you're moving for class certification and the Defendants are moving for summary judgment, can we proceed with briefing on both of those or would you be asking for additional experts in order to proceed with that motion?  So in order to respond to that motion?

Because I think that, you know, that's part of the problem with the labels preliminary and supplement.  And I understand Defendant's position that, you know, there was a deadline.

And if now you're saying we're going to introduce a new expert on a new issue, that to me is very different than saying we've put in these if then expert reports that our final

sort of as far as they go.

And then, there will be a -- an additional report that implements that methodology. Right, those to me, those are two different things.

And so, I think, again, you know, a middle road thing Defendants are correct that, you know, that Judge Pollak wasn't giving you, you know, endless ability to add new experts on new topics down the road. You know, there was a deadline.

But if you're telling me you're not seeking to add any new experts on any topics, I think the idea of supplementing the experts you have, once they actually run their methodology, to me, that's a different thing.

MR. LIPARI: Yeah, Your Honor, and we're on the same page about that one. I'm agreeing with, you know, that latter part of what you said.

Our position is that we would simply supplement with the existing reports existing experts we have. We don't, you know, we don't anticipate adding others.

But again, the most we think efficient way to move forward. And frankly, look, we're using the word efficient. The other side was using the word efficient and what they really meant is a manner that sort of like contravene 2nd Circuit case law and stacks the deck against them.

THE COURT: Right.

MR. LIPARI: When I use efficient, I'm talking about

consistent with 2nd Circuit case law would be certification and then thereafter, we could proceeding to summary judgment so that there's no question about, you know, the opportunity to supplement the existing reports we already have.

THE COURT: Okay.

MS. OKS: Your Honor, this is Carol Oks for the Defendant. I'm sorry that -- to interject, but this is spiraling a little bit in terms of whether Plaintiff is going to be naming a new expert after the deadline to do so has passed. I heard Mr. Lipari say that he doesn't anticipate adding any others.

The time to do that has passed for the order. So I think that there needs to be a very clear understanding today about whether they are barred from naming additional experts going forward.

THE COURT: The -- right, I understand your point, Ms. Oks. And I think I clarified with Mr. Lipari that at -- they are prepared to move for class certification with the experts that they have. Is that correct, Mr. Lipari?

MR. LIPARI: Yes, Your Honor.

THE COURT: Okay, and what I want to know from the Defendants is if that is the next step, do you need time with experts and will you be introducing expert reports as contemplated in Judge Pollak's December order?

MS. OKS: Your Honor --

THE COURT: I also want to know from Defendants whether you would ask for a schedule to brief other motions simultaneously. And I'm happy to give as Mr. Marino said, you all time to put your heads together to decide how you want to answer those questions.

MS. OKS: Thank you, Your Honor. And I don't want to repeat what Mr. Marino said or I agree and appreciate the additional time.

The issue is not just experts related to class certification. The issue is the experts for the entire case. And what I don't want to happen, and what Judge Pollak didn't order, and what I don't think Your Honor is suggesting is that we get through class certification and then Plaintiffs say, well, now we need to name an additional expert on a merits issue and we need additional time for that.

That's not what any case suggests. That's not what the order suggests. And I'm -- I don't want to put words in Plaintiff's mouth, but I just want to make sure that we are all very much on the same page as to the order of operation.

THE COURT: Look, I'm not going to issue an oral order that that's black and white. I think given the -- Judge Pollak's I think clear intent, but you know, I understand why the parties have been able to take this order and take different positions, moving forward with at least some expert discovery.

I'm not prepared to make a statement like you're asking, Ms. Oks. So I've told you what I want. We can -- we'll put up a minute entry on the docket that re-states my questions to the parties, so you know exactly what I'm looking for from you.

And I -- you know, this is something that's like on the top of everybody's mind. And so, I don't know that it will take that long for you to answer these questions that I've posed.

If I ask you for a status report in a week or two, Mr. Marino, what do you think makes sense for you and your client?

MR. MARINO: We could get you an update in a week, Your Honor.

THE COURT: Okay, does it make sense for me to get separate letters from each of you or do you want to meet and confer and propose a briefing schedule to me on, you know, whatever motions you're going to request a briefing schedule on?

MR. LIPARI: Your Honor, I would say this. This is Joe Lipari. Your Honor, I would say this. As to certification briefing, we could probably meet and confer on that.

I think given that there are different positions as to whether or not it's appropriate to move forward with those other motions, I don't necessarily think it would be helpful to

meet and confer simply because we would take the position that there's obviously no reason to move forward with Daubert and summary judgment, right?

So we wouldn't want to necessarily enter into a briefing schedule for motions we don't think should go forward. But as to certification, Your Honor, we're happy to meet and confer on a briefing schedule.

THE COURT: Okay, Mr. Marino, does that make sense for you?

MR. MARINO: Yes.

THE COURT: If I get -- just get separate letters? I'm not going to ask you to agree on a schedule if you don't agree even on the motions or what comes next.

MR. MARINO: No, of course, that makes sense on our end.

THE COURT: Okay. Okay. So that's what I want. And I, you know, I don't want to let this linger, so I appreciate you getting back to us quickly.

And if we need to get back on the phone after I get your letters in a week, we can do that, you know, at some point, you know, in the couple days following your letters. And then, we'll know what the next steps are.

MR. LIPARI: Thank you, Your Honor.

MS. OKS: Thank you, Your Honor.

THE COURT: Okay, well, thank you for your time. And

I will speak with you all again I'm sure.

MR. LIPARI: Thank you, have a good day, Your Honor.

MR. MARINO: Thank you.

THE COURT: Okay, take care.

MS. OKS: Thanks, Your Honor.

THE COURT: Okay, bye bye.

MR. MARINO: Bye.

(Proceedings concluded)

**CERTIFICATE**

I, Chris Hwang, court approved transcriber, certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter.

/s/ *Chris Hwang*
_____     March 16, 2026

Chris Hwang                  Date

Court Reporter